2014-1762, -1795

# United States Court of Appeals
# for the Federal Circuit

NORDOCK, INC.,

*Plaintiff – Appellant,*

*v.*

SYSTEMS INC, DBA POWERAMP, DBA DLM Inc, DBA McGuire,

*Defendant – Cross - Appellant.*

*Appeal from the United States District Court from the Eastern District of Wisconsin in Case No.11-CV-0118, Judge Rudolph T. Randa.*

## BRIEF FOR DEFENDANT – APPELLEE – CROSS-APPELLANT

PHILIP P. MANN
TIMOTHY J. BILLICK
MANN LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, Washington 98101
(206) 436-0900

JOHN WHITAKER
WHITAKER LAW GROUP
1218  Third Avenue, Suite 1809
Seattle, Washington 98101
(206) 436-8500

*Attorneys for Defendant-Cross-Appellant*
*SYSTEMS INC.*

January 21, 2015

# CERTIFICATE OF INTEREST

Counsel for Defendant – Cross-Appellant SYSTEMS, INC., certifies the following:

1.    The full name of every party or amicus represented by me is:

Systems, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Systems Inc.

3.    The parent companies, subsidiaries (except wholly-owned subsidiaries), and affiliates that have issued shares to the public, of the party or amicus represented by me are:

None

4.    The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Philip P. Mann
Timothy Billick
MANN LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, WA 98101
206-436-0900

John Whitaker
WHITAKER LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, WA 98101
206-436-8500

i

# TABLE OF CONTENTS

I.    STATEMENT OF RELATED CASES.................................................1

II.   APPELLATE JURISDICTIONAL STATEMENT....................................2

III.  STATEMENT OF THE ISSUES................................................3

    A.    Nordock's Appeal.................................................3

    B.    System's Cross Appeal.............................................3

IV.   INTRODUCTION......................................................4

V.    STATEMENT OF THE CASE..........................................6

VI.   STATEMENT OF THE RELEVANT FACTS................................9

VII.  SUMMARY OF THE ARGUMENT.....................................15

VIII. ARGUMENT...............................................................18

    A.    Standard of Review..............................................18

    B.    Applicable Legal Standards......................................18

    C.    More Than Substantial Evidence Was Presented At Trial To Support The Jury's Damages Award...........................21

        1.    The Jury Did, In Fact, Compensate Nordock For The Alleged Infringement.............................................21

        2.    The Damages Awarded By The Jury Fall Within The Range Established By The Competing Experts.................23

        3.    Substantial Evidence Was Provided At Trial To Support The Jury's Damage Award........................................24

        4.    The Jury's Damage Award Actually Exceeds Mr. Bero's Estimate.................................................25

        5.    Mr. Bero's Opinion Was Well Supported And Properly

Received.......................................................................27

D.    The Jury Clearly And Properly Credited Mr. Bero's Testimony
      Over That Of Dr. Smith..................................................32

   1.    Nordock Had Ample Opportunity To Cross-Examine Mr. Bero
         And, In Fact, Did So...............................................33

   2.    Mr. Bero Correctly Calculated Profits Based On The "Article
         Of Manufacture" Claimed In The "754 Design Patent............34

   3.    Mr. Bero Properly Relied On The Actual Article Of
         Manufacture Claimed In The '754 Design Patent..................38

   4.    Dr. Smith Never Even Reviewed The '754 Design Patent In
         Suit, Much Less Calculate Systems' Profits On The Actual
         Article Of Manufacture To Which The Design Was Applied…40

   5.    Based On The Trial Testimony Of The Opposing Experts, The
         Jury Was Free To Discount The Opinion Of Dr. Smith And
         Adopt That Of Mr. Bero............................................43

E.    Nordock Has Waived Any Objections It Might Have Had To The
      Court's Jury Instructions...............................................45

F.    Nordock Has Waived Any Challenge To The Closing Argument
      Delivered By Systems' Counsel.......................................48

G.    The District Court Erred By Declining To Rule the '754 Design
      Patent Invalid As A Matter Of Law..................................48

   1.    The '754 Design Patent Is Invalid As Purely Functional........49

   2.    Prosecution History Shapes The Scope Of The '754 Design
         Patent...................................................................52

   3.    The '754 Design Patent Is Purely Functional.....................53

      (a)    The '754 Design Patent Itself Admits That It Is Primarily
             Functional..........................................................53

      (b)    Prosecution History Estoppel Bars The "Ornamental" Claim

55

    (c)    Nordock's Own Advertising Touts The Functionality Of The '754 Design Patent...............................................................56

    (d)    Nordock's Own Witnesses Admit The Lug Hinge/Header Plate Design Is Functional....................................................57

    4.    The Availability of Alternatives Does Not Eliminate Functionality.............................................................................59

    5.    The Overwhelming Weight Of The Evidence Proves The '754 Design Patent Is Invalid As Being Functional.........................61

IX.    Nordock Failed To Prove That Systems' 6 1/2 Foot Dock Leveler Infringes...........................................................................61

    A.    No Evidence Regarding Systems' 6 1/2 Foot Dock Leveler Was Presented At Trial........................................................63

X.    CONCLUSION.....................................................................66

## TABLE OF AUTHORITIES

### TABLE OF CASES

*ABM Mktg., Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 543 (7th Cir. 2003) ..............................................................................19

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016-17 (Fed. Cir. 2006)........................................................20

*Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006)........................................................59

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................................43

*Australia Vision Servs. v. Diopitcs Medical Prods.*, 29 F.Supp.2d 1152 (C.D. Cal., 1998)........................................................52

*Berry Sterling Corp. v. Prescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir.

1997)................................................................................................56

*Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)
........................................................................................................18

*Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1580 (Fed.
Cir. 1992)........................................................................................20

*Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 578 (6th Cir.1987) 43

*Coal Resources, Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 775 (6th
Cir. 1989)........................................................................................44

*Contessa Food Products v. Conagra Inc.*, 282 F.3d 1370, 1381 (Fed. Cir.
2002)................................................................................................62

*Cybor Corp. v. FAS Technologies., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998)
........................................................................................................21

*Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761,
770 (7th Cir. 2013)............................................................................19

*Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999)............52

*Frazier v. Boyle*, 206 F.R.D. 480, 491-92 (E.D. Wis. 2002)............................19

*Johnson & Johnston Associates, Inc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed.
Cir. 2002)........................................................................................55

*King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006)................................20

*La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1410
(7th Cir. 1984)................................................................................62

*Miksis v. Howard*, 106 F.3d 754, 757 (7th Cir. 1997)................................20

*Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)................................19

*Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437 (Fed. Cir. 1998)..............39

*Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).......................18

*Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449, 450 (7th Cir. 1991).....62

*Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)..................................................................................................21

*PHG Technologies v. St. John Companies, Inc.*, 469 F.3d 1361, 1366-1367 (Fed. Cir. 2006).......................................................................51, 59

*Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238 (Fed. Cir. 1986) ..................................................................................................51

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010)...............49

*Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002).............59

*Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 798 (Fed. Cir. 2010) ..................................................................................................18

*United States v. Brown*, 7 F.3d 648, 655 (7th Cir. 1993)................................44

*United States v. Jackson*, 688 F.2d 1121, 1126 (7th Cir. 1982).....................43

*United States v. Mansoori*, 304 F.3d 635, 654 (7th Cir. 2002), *cert. denied* 538 U.S. 967 (2003)...........................................................................43

*United States v. Serafino*, 281 F.3d 327, 330-331 (1st Cir. 2002)..................44

*United States v. Stormer*, 938 F.2d 759, 762 (7th Cir. 1991).......................43

*United States v. Towns*, 913 F .2d 434, 445 (7th Cir. 1990)..........................43

*United States v. White*, 639 F.3d 331 (7th Cir. 2011)....................................43

*Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012). ..................................................................................................18

# TABLE OF STATUTES

28 U.S.C. § 1338(a)..........................................................................2

28 U.S.C. § 1295(a)..........................................................................2

Fed. R. App. P. 4..............................................................................2

Fed. R. Civ. P. 59(a).........................................................................19

## I.    STATEMENT OF RELATED CASES

Counsel is unaware of any other appeal in or from the same civil action or proceeding as this matter that was previously before this or any other appellate court.

There are no other cases known to counsel pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## II.    APPELLATE JURISDICTIONAL STATEMENT

(a)    Jurisdiction in the District Court was based upon 28 U.S.C. § 1338(a).

(b)    This Court's jurisdiction is based on 28 U.S.C. § 1295(a), this being an appeal from a final decision of a District Court having jurisdiction under 28 U.S.C. § 1338(a).

(c)    This appeal is timely under Fed. R. App. P. 4. A final judgment was entered by the District Court on July 31, 2014. A timely Notice of Appeal to this Court was filed on August 19, 2014, and a timely Notice of Cross-Appeal to this Court was filed on August 29, 2014.

# III.   STATEMENT OF THE ISSUES

## A.   NORDOCK'S APPEAL

The Statement of The Issues offered by Plaintiff/Appellant Nordock, Inc. ("Nordock") is misleading. Indeed, Nordock's Statement glosses over the fact that this action was tried to a jury – a jury that resolved key factual issues in favor of Defendant/Cross-Appellant, Systems, Inc. ("Systems"). A more accurate statement of the only actual issue presented in Nordock's appeal is as follow:

1.   Was "substantial evidence" presented at trial to support the jury's award of $46,825 to Nordock for infringement of Nordock's U.S. Design Patent No. D579,754 ("the '754 Design Patent")?

## B.   SYSTEM'S CROSS APPEAL

2.   Is the '754 Design Patent invalid as a matter of law because it discloses nothing except purely functional elements?

3.   Was "substantial evidence" presented at trial to support the jury's finding that the Systems 6 1/2 foot hydraulic dock leveler infringed the '754 Design Patent?

3

## IV.   INTRODUCTION

This case comes to this Court following a six-day jury trial conducted between March 18-26, 2013 before a twelve person jury in the District Court for the Eastern District of Wisconsin. In the proceedings below, Appellant Nordock claimed that six separate models of "dock levelers" manufactured and sold by Systems infringed Nordock's '754 Design Patent. In a form of "split decision," the jury found that three separately sized "mechanical" style dock levelers accused of infringement did *not* infringe the '754 Design Patent, but that three separately sized "hydraulic" style dock levelers did infringe that patent. Clearly discounting the opinion of Nordock's damages expert Dr. Stan Smith that an appropriate damages award would be in excess of $22,000,000, the jury awarded Nordock $46,825 as compensation for the infringement it found. This figure is squarely within the range that Systems' own damages expert Richard Bero testified at trial would be appropriate if infringement were found.

Dissatisfied with the jury's monetary award, Nordock appeals to this Court seeking a second bite of the damages apple.

Because substantial evidence was presented at trial to support the damages award returned by the jury, Nordock's appeal is not well taken, and the District Court correctly denied Nordock's post-trial motion seeking a new trial on damages. Accordingly, that aspect of the District Court's judgment should be affirmed, and a new trial on damages should not be ordered.

The District Court did err, however, in two respects that are the subject of Systems' cross-appeal.

First, the District Court erred by failing to hold, as a matter of law, that the design patent at issue in this case is invalid as being directed to purely functional features present in a purely functional and utilitarian dock leveler.

Second, the District Court erred in failing to set aside the jury's determination that one of the subject accused dock levelers, (referred to herein and elsewhere as the "6 1/2 foot hydraulic dock leveler") infringed the subject design patent. At trial, no evidence concerning how the 6 1/2 foot leveler actually appears was presented. Indeed, the 6 1/2 foot hydraulic leveler was never shown to the jury, whether by

way of actual sample, photograph, drawing or otherwise. Instead, the jury was shown two **_different_** levelers and was asked to mentally interpolate between them to form a mental impression (*i.e.*, a guess) as to how such a leveler **_might_** look.  Based on such a guess, the jury was asked to then determine whether such an imaginary leveler had the same appearance as the leveler shown in the subject design patent.

Because no evidence, substantial or otherwise, was presented to the jury regarding the actual appearance of the 6 1/2 foot leveler, and because appearance is of critical importance in determining whether a design patent is infringed, the jury's finding of infringement as to the 6 1/2 foot leveler should be reversed.

## V.   STATEMENT OF THE CASE

Nordock's Statement of the Case emphasizes the irrelevant while ignoring the important. Accordingly, Systems supplements the Statement of the Case with the following:

Appellant Nordock brought this action for design patent infringement in the Eastern District of Wisconsin on January 28, 2011.

On May 11, 2011 Systems counterclaimed for a declaratory judgment of non-infringement and patent invalidity.

On December 20, 2012, the parties filed cross motions for summary judgment as to various issues. In its motion, Systems sought, among other things, summary judgment that the '754 Design Patent was invalid as being directed to purely functional, as opposed to "ornamental," features.

On January 30, 2013, and prior to ruling on the pending motions for summary judgment, the District Court conducted a claim construction hearing wherein the parties set forth their respective positions as to what "ornamental design," if any, is shown and claimed in the '754 Design Patent.

On February 26, 2013, the District Court issued an omnibus order that, *inter alia,* addressed the various issues raised in the cross-motions for summary judgment and construed the claim of the '754 Design Patent. (A3903-3967). Among other things, that Order denied Systems' motion that the '754 Design Patent be declared invalid as being directed to functional, not ornamental, features.

The case was tried to a twelve person jury in the District Court for the Eastern District of Wisconsin, the Honorable Rudolph T. Randa presiding. Trial began on March 18, 2013, and closing arguments were made to the jury on March 25, 2013.

During the trial, Nordock and Systems each called an expert witness to address the issue of what damages should be awarded if infringement was found. Dr. Stan V. Smith testified on behalf of Nordock, while Mr. Richard F. Bero testified on behalf of Systems.

At both the conclusion of Nordock's case in chief and at the conclusion of all trial testimony, Systems made timely oral motions for judgment as a matter of law that, among other things, the '754 Design Patent is invalid as being functional, and that no infringement could be found with respect to System's 6 1/2 foot hydraulic dock leveler as no evidence concerning that leveler was presented at trial. The District Court denied these motions and allowed the case to go to the jury. Systems orally renewed each of these motions following the jury verdict.

On March 26, 2013 the jury rendered a verdict that some, but not all of the Systems products at issue infringed the subject '754 Design

Patent. The jury also rendered a verdict that "$46,825" was the "total amount of money...Nordock [is] entitled to receive from Systems for Systems' infringement" of the '754 Design Patent.

Following the jury verdict, Nordock moved that the damages award of $46,825 be set aside and that a new trial be granted with respect to damages. Systems opposed that motion and moved that the finding of infringement with respect to the 6 1/2 foot hydraulic dock leveler be set aside, given that no actual picture, sample or other image of such a leveler was ever presented at trial. The District Court denied both motions holding that substantial evidence was presented at trial sufficient to uphold the jury verdict in all respects. Following the District Court's denial of all post-trial motions, Nordock filed the instant appeal with this court. Systems thereafter filed its instant cross-appeal.

## VI.   STATEMENT OF THE RELEVANT FACTS

Nordock and Systems are competitors in the field of manufacturing, selling, and distributing dock levelers. Dock levelers are mechanical devices installed at loading docks in warehouses and

9

similar facilities and function to "bridge the gap" between a high-bed truck trailer and a loading dock at which the truck is to be loaded or unloaded. As so used, dock levelers permit forklifts and similar vehicles to transition between the facility and the truck trailer to facilitate loading and unloading the truck.

The '754 Design Patent at issue issued on November 4, 2008 based on a design patent application filed May 31, 2007. (A6321). The '754 Design Patent ultimately claims priority to a utility patent application originally filed December 23, 2002. (A6321). In the originally filed utility patent application, Nordock attempted to obtain utility patent claims covering a so-called "lug hinge" structure that pivotally connects a "lip" to the "front header plate" of a dock leveler. (A2175-A2177). Figure 1 of the '745 Design Patent, reproduced below, provides a general perspective view of such a "lug hinge" structure located at the front end of a dock leveler.



FIG. 1

(A6322).

Throughout the parent patent application filed December 23, 2002, the structural and mechanical advantages of the "lug hinge" structure are touted and emphasized. For example, in its originally filed utility patent application upon which Nordock based the later filed '754 Design Patent, Nordock states:

> A still further problem with [existing] dock levelers is the integrity and durability of the hinge that joins the lip plate to the deck frame. This connection is a ***critical part*** of the leveler as it must withstand

11

> concentrated stresses as the fork lift and the load it is carrying traverse from the building to the trailer, or visa versa. Conventional dock leveler designs, weld a tubular hinge to the lip plate and to the header plate. The header plate is welded to the deck plate and deck support beams. The concentrated stresses on the tubular hinge traditionally result in stress cracks in the plates and their welds. A second design uses lip plate lugs to lessen these stresses. In lieu of a header plate, cooperating lugs are also welded to the support beams and deck plate. A problem with this design is that the unsupported front edge of the deck plate is more easily bent and dished between the support beams. (emphasis added).

> (A2225-A2226).

In that same utility patent application, Nordock further said of its

own "lug hinge" structure:

> A still further advantage of the [Nordock] dock leveler is its solid and durable attachment of the lip to the deck and deck frame. A header plate is used to support the front edge of the deck plate across its full width. This header plate is combined with a lip plate lug type hinges *to reduce the concentrated stresses on the tubular hinge to provide a longer structural life for the dock leveler*. (emphasis added).

> (A2225-A2226).

After several years of prosecution and unsuccessful attempts to

secure utility patent claims covering the "lug hinge" structure, Nordock

12

switched gears and sought to obtain design patent coverage for the structure instead. At no point prior to May 31, 2007 had Nordock ever indicated it considered the appearance of the "lug hinge" structure "ornamental."

Nordock's own marketing materials tout the structural and operational advantages of the "lug hinge" structure. For example, Nordock's marketing materials claim that the "lug hinge" structure, "ensures maximum strength" and is "self-cleaning." (A2245-A2246). Nowhere in its materials does Nordock claim that the appearance of the "lug hinge" structure is of concern.

In its case, Nordock claimed that various dock levelers manufactured and sold by Systems infringed the '754 Design Patent. In particular, Nordock alleged that three different sizes of mechanically operated dock levelers, and three different sizes of hydraulically operated dock levelers, incorporated the supposed "ornamental design" claimed in the '754 Design Patent. The sizes are based on the width of the levelers, which are available in nominal widths of 6 feet, 6 1/2 feet, and 7 feet.

At trial, Nordock called its damages expert Dr. Stan V. Smith to testify regarding the compensation Nordock should receive if infringement were found. Dr. Smith's testimony was bizarre on its face, and there is little surprise that the jury found it unpersuasive. Indeed, prior to trial, the District Court properly struck Dr. Smith's opinion regarding a "reasonable royalty" and precluded Dr. Smith from testifying as to a reasonable royalty at trial. (A4228-30). During trial, Dr. Smith, despite the Court's prior order, did testify as to a reasonable royalty, resulting in the Court thereafter instructing the jury to disregard the testimony. (A5989-90).

Systems' damages expert Mr. Richard F. Bero testified as to the proper measure of damages should infringement be found, and calculated such damages on both a "reasonable royalty" and "defendant's profits" basis. As to a reasonable royalty, Mr. Bero, unlike Dr. Smith, did a proper legal analysis and properly took into account the various factors required under *Georgia Pacific* and *Panduit.* With respect to a reasonable royalty, Mr. Bero testified that, assuming infringement was found with respect to all of the dock levelers accused

of infringement (*i.e.*, the mechanical as well as hydraulic levelers), a reasonable royalty based on the number of units sold by Systems would be $91,650. With respect to Systems' profits, Mr. Bero testified that such profits would be no greater than $91,650 and provided ample testimony to explain his opinion in that regard. (A5458-A5573).

At trial, Nordock made no objections whatsoever with regard to the instructions adopted by the District Court and delivered to the jury. In particular, Nordock made no objection to the instructions the District Court adopted concerning Defendant's profits as a measure of damages for design patent infringement. (A4538-4541). Similarly, Nordock made no objection to the jury verdict form adopted by the District Court and provided to the jury. Nor did Nordock make any objection to the closing argument delivered by Systems' trial counsel at the conclusion of the case.

## VII.  SUMMARY OF THE ARGUMENT

The jury's award of $46,825 as "the total amount of money...Nordock is entitled to receive" in the case below is supported by substantial evidence and should not be disturbed. Accordingly, the

15

District Court properly denied Nordock's motion for a new trial on damages.

Dr. Smith's testimony at trial was incredible on its face and the jury properly discounted his testimony in its entirety. Dr. Smith revealed during cross-examination that he was unfamiliar with the legally proper standards applicable in patent cases, that he did not perform the necessary steps in formulating a proper opinion, and provided an opinion regarding reasonable royalties despite the District Court's prior order *in limine* barring just such testimony. This resulted in the self-inflicted indignity of having the District Court properly instruct the jury to disregard Dr. Smith's testimony. Given such damage to his credibility, the jury was perfectly free to disregard Dr. Smith's testimony in its entirety.

In contrast to Dr. Smith, Mr. Bero's testimony and opinion regarding damages were amply supported by evidence and credible reasoning. Accordingly, the jury properly relied on Mr. Bero's testimony in reaching its verdict. Nordock had a full and fair opportunity to cross-examine Mr. Bero as to any purported deficiency in his opinion or direct

testimony, and Mr. Bero emerged from such cross-examination unscathed. Accordingly, the jury was free to adopt Mr. Bero's opinions and conclusions over those of Dr. Smith. Again, the District Court did not err in declining to grant Nordock another opportunity to prove its case.

Nordock failed to make timely objections to the relevant jury instructions, to the verdict form provided to the jury, or to any supposed improprieties in the closing argument delivered by Systems' trial counsel. Accordingly, Nordock's challenges in these regards are untimely, waived and legally frivolous.

As to Systems' cross-appeal, the jury's verdict is inconsistent with the facts and evidence presented at trial. The overwhelming weight of the evidence demonstrates that nothing about the '754 Design Patent is ornamental, and it should be held invalid as purely (or at least primarily) functional.

Finally, Nordock failed to present any evidence whatsoever regarding Systems' 6 1/2 foot dock leveler. Accordingly, Nordock failed

to prove infringement and the jury's verdict cannot be sustained as there is a complete absence of any evidence on this point.

## VIII. ARGUMENT

### A.    STANDARD OF REVIEW

This Court reviews the denial of a Rule 59 motion for a new trial on an abuse of discretion standard. *Whitserve, LLC v. Computer Packages, Inc.,* 694 F.3d 10, 26 (Fed. Cir. 2012). In doing so, this Court applies the relevant regional circuit law, in this case that of the Seventh Circuit. *Silicon Graphics, Inc. v. ATI Techs., Inc.,* 607 F.3d 784, 798 (Fed. Cir. 2010).

### B.    APPLICABLE LEGAL STANDARDS

In the Seventh Circuit, a party seeking a new trial under Rule 59, "must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Blue v. Hartford Life & Accident Ins. Co.,* 698 F.3d 587, 598 (7th Cir. 2012) (internal quotation marks omitted). The Seventh Circuit has defined "manifest error" as "the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v.*

*Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted).

As noted by the District Court below, a Rule 59(e) motion "is not a fresh opportunity to present evidence that could have been presented earlier." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.,* 733 F.3d 761, 770 (7th Cir. 2013). In other words, Rule 59(e) "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996).

Rule 59(e) permits a court to amend a judgment. However, it is not a proper vehicle through which to amend the answers provided by a jury on a verdict form because the verdict form is not part of the judgment entered by the Clerk of Court. *See, Frazier v. Boyle,* 206 F.R.D. 480, 491-92 (E.D. Wis. 2002).

"Rule 59(a), in a bit of a circular way, allows new trials in cases where new trials have been traditionally allowed at law." *ABM Mktg., Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 543 (7th Cir. 2003) (citing Fed. R. Civ. P. 59(a)). A "motion for a new trial should succeed only if

the verdict is against the manifest weight of the evidence." *Id.* at 545 (quotation and citation omitted); *see also*, *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016-17 (Fed. Cir. 2006).

To satisfy this standard, the movant must demonstrate that no rational jury could have rendered a verdict against it. *See*, *King v. Harrington,* 447 F.3d 531, 534 (7th Cir. 2006). When making this evaluation, the Court views the evidence in a light most favorable to the non-movant and cannot re-weigh the evidence or make credibility determinations. *Id.* The Court will sustain the verdict where a reasonable basis exists to support the jury's verdict. *Id.* "A new trial may be granted only if the jury's verdict is against the manifest weight of the evidence," *id.*, or if the trial was "unfair to the moving party." *Miksis v. Howard,* 106 F.3d 754, 757 (7th Cir. 1997).

With respect to overturning a jury verdict awarding damages in a patent case, this Court has held that such an award, "must be upheld unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork."

*Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1580 (Fed. Cir. 1992).

On appeal from a judgment denying a motion for JMOL of invalidity, this Court uses the standards used by the District Court in ruling on the motion. *See, Cybor Corp. v. FAS Technologies., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*). To prevail on a motion for JMOL following a jury trial, a party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984) (citation omitted).

## C.    MORE THAN SUBSTANTIAL EVIDENCE WAS PRESENTED AT TRIAL TO SUPPORT THE JURY'S DAMAGES AWARD

### 1.    The Jury Did, In Fact, Compensate Nordock For The Alleged Infringement

The thrust of Nordock's argument is that it was somehow short-changed by the jury that heard its case. The simple fact, however, is that Nordock had its day in court, had ample opportunity to present its evidence and arguments to the jury, had ample opportunity to cross-

examine Systems' damages expert Mr. Bero and even succeeded in persuading the jury that approximately twenty percent of the accused products infringed its design patent.

Nordock hangs its entire appellate hat on the hook that the jury entered the amount "0" in the space on the verdict form pertaining to Systems' profits. (A5504). This ignores that the very same jury entered the amount, "$46,825" in the space asking, "What total amount of money is Nordock entitled to receive from Systems for Systems' infringement on the products that you answered 'Yes' to in Question 1." (A5503). This question is not broken down by the particular methodology used to make the calculation and goes to the very heart of what the jury was called upon to decide, namely, the compensation to be awarded Nordock for the infringement the jury determined. Where, as here, the total compensation awarded by the jury falls squarely within the range established by the trial testimony and exhibits of both testifying damages experts, the award, almost by definition, is supported by "substantial evidence" and should not be disturbed.

Nordock's principal complaint is that the jury believed Mr. Bero, not Dr. Smith. It is elementary law that factual determinations, such as the credibility of testifying witnesses, is solely the province of the jury and are not to be set aside merely because a reviewing judge might harbor some disagreement.

### 2. The Damages Awarded By The Jury Fall Within The Range Established By The Competing Experts

At trial, both parties called respective damages experts to render opinions regarding damages. Indeed, damages testimony occupied a significant portion of the trial itself.

System's damages expert Mr. Bero ultimately opined that a reasonable royalty under the subject patent would be $15 per unit, while Systems' profits would, in fact, be less than $15. (A6714). Based on these figures, Mr. Bero testified that, if all 6110 accused dock levelers were found to infringe, Nordock's award should be $91,650, under either measure of damages. Given the 1457 units that the jury found to infringe, Mr. Bero's testimony and opinion supported a damage award to Nordock of $21,855, again under either measure.

In stark contrast to Mr. Bero, Nordock's damages expert Dr. Smith opined that an appropriate award would be over $22,012,097. (A6426). This figure reached by Dr. Smith greatly exceeded, by almost a factor of two, Systems' ***overall gross revenues*** for sales of the 6110 accused levelers. (A5544, A6685).

Ultimately the jury awarded Nordock $46,825 with respect to the 1457 (out of 6110 accused) units it found to infringe. Clearly, the jury found Mr. Bero's testimony and opinion more credible than those of Dr. Smith, and the amount awarded by the jury is not outside the range of the testimony it heard and the evidence it considered.

### 3. Substantial Evidence Was Provided At Trial To Support The Jury's Damage Award

At trial, Systems' damages expert Mr. Bero testified for nearly four hours on both direct and cross examination. During his testimony, he addressed three principal approaches for awarding damages should infringement be found. (A5460-5571). In addition, Mr. Bero prepared a series of slides (A6680-6717) that summarized his testimony and opinions and that were received into evidence with no objection.

First, Mr. Bero testified that lost profits were not applicable (A5471-2). In particular, Mr. Bero testified that "Nordock has not established in any way, shape or form that it has actually incurred lost profits in this matter." (A5471).

Second, Mr. Bero testified that "royalty damages are the proper form of damages." (A5472). In particular, Mr. Bero testified that "a reasonable royalty in an amount of $15 per allegedly infringing dock leveler is the proper form of damages." (A5472).

Finally, and with respect to Systems' profits as a measure of damages, Mr. Bero testified that, "[I]t's my opinion, that based on -- as an alternative form of damages, the profits associated with the lip and hinge plate -- the ornamental design of the lip and hinge plate is approximately $15 or less per dock leveler." (A5472).

### 4.    The Jury's Damage Award Actually *Exceeds* Mr. Bero's Estimate

At trial, Mr. Bero testified that, should infringement be found with respect to all of the accused levelers, Nordock's lost profits would be zero, while a reasonable royalty would be $15 per unit. (A6680). Given that 6,110 dock levelers of both mechanical and hydraulic

25

operation were accused of infringement, Mr. Bero testified that, at a reasonable royalty of $15 per unit, the overall award would be $91,650 if infringement were found as to all of the accused products. (A6714).

Mr. Bero also testified that, because the profit on the dock leveler "front end" to which the design was applied was *less* than $15 per unit, under an award of Systems' profits, the overall award would be no more than $91,650, assuming all of the accused products infringed. (A6714).

At trial, however, the jury did not find that all of the accused products infringed. Instead, the jury found infringement only with respect to the "hydraulic" style levelers and not with respect to the far more popular "mechanical" style levelers. In other words, only 1457 out of 6110 accused levelers were found to infringe. Accordingly, applying $15 per unit to these 1457 units results in damages of $21,855.

Given that the jury actually awarded Nordock *more* than what Mr. Bero's testimony established would be an appropriate damages amount as to the products actually found to infringe, the jury award falls between the lower limit established by Mr. Bero and the upper limit testified to by Dr. Smith. It is simply untrue that the verdict is

somehow outside the range established by the sworn testimony and received exhibits of the experts involved.

### 5. Mr. Bero's Opinion Was Well Supported And Properly Received

Systems' damages expert Mr. Bero is a well-respected, highly experienced expert in the field of patent damages. Indeed, at trial, no objection was made regarding Mr. Bero's right and ability to testify as an expert, and his qualifications to serve as an expert were thoroughly explored and brought out before the court and jury. (A5460-66).

After outlining his conclusions regarding damages, *i.e.*, that lost profits were unavailable and that $15 per infringing unit was appropriate whether under a reasonable royalty or defendant's profits analysis (A5471-72), Mr. Bero testified extensively as to how each of his conclusions and opinions was reached.

With respect to lost profits, Mr. Bero presented six slides (A6699-A6705) outlining why Dr. Smith's report and testimony were unreliable and why lost profits would not be available to Nordock. In particular, Mr. Bero testified that the "Entire Market Value Rule" was an appropriate consideration in determining lost profits and required that,

in order to obtain lost profits on the entire dock leveler, Nordock would need to establish that, "the patented feature creates the basis for customer demand or substantially creates the value of the component parts." (A5503). Mr. Bero testified that Dr. Smith made no attempt to do this and even, "Dr. Smith said something along the lines of it doesn't apply to his analysis." (A5503).

Continuing, Mr. Bero pointed out that considerable evidence existed to show that the purported "ornamental design of a lip and hinge plate" was not, and could not be the basis for customer demand:

> Okay. So with the Entire Market Value Rule in mind, we look at the basis for customer demand, and in this case how does it apply? Well we know that the lip and hinge plates represent just one of many dock leveler components and features. Is it the reason customers are buying? Well, if it was, I would presume that there would be an awful lot more customers that were actually buying it in the market.
>
> The second item is "Dock levelers with patented ornamental lip and hinge design represent a minimal portion of the market," which is basically what I just said.
>
> And the third item is they're "primarily sold for usefulness." I think we saw that in the video and Mr. Pilgrim talked about it yesterday.

>We also heard that from some of the Nordock folks,
>including Mr. Gleason and some of the others. People
>are buying dock levelers so they can use them. They
>want to be a bridge. I think Mr. Ward originally was
>the one that talked about it being a bridge.
>
>And certainly Systems sells far more dock levelers
>without the lug hinges than they do with the lug hinge.
>So is it the basis for customers demanding that
>particular product, or is it one of the many other
>factors that go into play? And so that's -- you know,
>from a damages perspective that's relevant. It's very
>important, in fact. (A5504-5).

Testifying still further, Mr. Bero pointed out the many reasons

other than the purported "ornamental design" that people would choose

the Systems dock leveler over that of Nordock:

>Why are customers buying? Quality of materials;
>quality of welding; strength of the bridge; the
>warranty; the entirety of the dock leveler; all of the
>components; the workmanship; the availability;
>serviceability; salesman knowledge; durability;
>reliability; clean -- you know, it's gotta be clean; the
>paint; and, of course, the price, that's an important
>factor to consider as well. I'm sure I didn't get all of
>them, but those are some that I jotted down as I was
>going through listening this week. (A5505-6).

Reaching his conclusion that lost profits were unavailable to

Nordock, Mr. Bero concluded:

>Of course, understand that Nordock's position it's the

> look of the front end that is the reason -- in order for them to get lost profits damages it has to be the reason, the basis for -- lost profits damages on the entire dock leveler, it has to be the reason and the basis for customer demand of the entire dock leveler. And we haven't seen that. At least I haven't. (A5506).

Summarizing his position with respect to lost profits, Mr. Bero presented a slide (A6702) outlining in detail why such profits were unavailable to Nordock and testified extensively thereto. (A5507-11). Such reasons included Nordock's failure to show (1) demand for the patented product (A5507), (2) lack of non-infringing substitutes (A5508), (3) Nordock's capacity and capability to meet the market demand for the sales made by Systems (A5509) and (4) Nordock's failure to quantify the lost profits (A5510-14).

With respect to both a reasonable royalty and Systems' profits Mr. Bero presented an additional ten slides (A6705-6714) and testified extensively regarding them. (A5514-27). First Mr. Bero testified that a proper reasonable royalty assessment begins with a "hypothetical negotiation." (A5514-15). He further testified as to the three approaches commonly used to obtain a royalty rate, namely the "income approach," the "market approach" and the "cost approach." (A5515-17).

Using the cost approach, Mr. Bero concluded that the cost savings to Systems in using the lug style hinge would be, according to a weighted average, $2.13. (A5518).

Using the income approach, Mr. Bero concluded that "the additional profitability provided by this particular lug hinge...in 2004 was about $4.84." (A5518). Taking into account the passage of time and updating the figure to 2012, Mr. Bero testified that the cost savings would be, "well, a maximum of $13 in 2012." (A5519)

With respect to the market approach, Mr. Bero was unable to locate any existing, comparable prices and therefore could not use this as a basis of calculation. (A5519).

Taking all these factors into account, Mr. Bero testified that "[t]he starting point that I use is $5 per unit in this hypothetical negotiation." (A5519). Continuing, Mr. Bero testified, "Then what we have to do is we have to take into account additional considerations, qualitative considerations that come from -- or largely come from a case from 1970 called *Georgia-Pacific*. They're referred to as the *Georgia-Pacific* factors." (A5519-20). Taking such considerations into account, Mr. Bero

31

concluded that a hypothetical negotiation conducted in 2008 when the '754 Design Patent issued would have resulted in a royalty of $15 per unit. (A5521-25)

With respect to Systems purported profits, Mr. Bero testified that these would be *less* than $15 per unit. (A5526). Accordingly, the overall figure he reached if infringement were found as to *all* of the accused levelers would be $91,650, whether calculated on a reasonable royalty basis *or* a profits basis. (A5526).

Based on the foregoing, ample evidence was presented at trial to support the jury's award of $46,825 as total compensation to Nordock for the partial infringement that the jury found. Indeed, and as noted above, given that only roughly 20% of the accused levelers were found to be infringing, the jury's award is actually *more* generous than the figure that would result from Mr. Bero's testimony and opinion, *i.e.*, $21,855 based on $15 per unit as applied to 1457 infringing units.

## D.    THE JURY CLEARLY AND PROPERLY CREDITED MR. BERO'S TESTIMONY OVER THAT OF DR. SMITH

Given the widely divergent views of the damages experts called by the parties, it is clear that the jury favored the opinion of Systems'

expert Mr. Bero over that offered by Nordock's expert Dr. Smith. Nothing unfair, untoward or otherwise improper took place in this regard, and the jury was free, as it was charged, to make credibility determinations and elect whose testimony was more persuasive.

### 1. Nordock Had Ample Opportunity To Cross-Examine Mr. Bero And, In Fact, Did So

The purpose of a trial is, in part, to test the soundness of witnesses' testimony and find any weaknesses therein. Nordock, of course, was given a more than fair opportunity to cross-examine Mr. Bero and definitely took advantage of that opportunity.

For reasons that are not clear, Nordock mostly sought to attack Mr. Bero on pre-trial procedural matters, such as irrelevant discovery disputes and responses to subpoenas, rather than the substance of his testimony. (A5545-49). Nevertheless, Nordock cross-examined Mr. Bero for nearly one hour and never succeeded in forcing any change in Mr. Bero's testimony, opinions or conclusions. At all times Mr. Bero continued to express the opinions he stated during his direct testimony and successfully deflected any attempts by Nordock to make him change his testimony, opinions and conclusions.

### 2.    Mr. Bero Correctly Calculated Profits Based On The "Article Of Manufacture" Claimed In The "754 Design Patent

During his direct examination, Mr. Bero properly noted that the '754 Design Patent includes a single claim reading, "The ornamental design of a lip and hinge plate for a dock leveler, as shown and described." (A60). Indeed, during cross-examination, Mr. Bero was asked:

> Q.    Now, is this case about a lug? Is this a design patent case for a lug?

> A.    Well, it's a design patent case for an ornamental design of a lip and hinge plate which I understand incorporates a lug. (A5536).

Despite Nordock's counsel's attempts to get Mr. Bero to testify to the contrary, Mr. Bero continued to correctly note that the article of manufacture to which the "ornamental features" of the '754 design is applied is not a dock leveler, but, rather, only a lip and hinge plate:

> Q.    Okay. I just want to be clear because you're showing slides that say the "patented lug hinge," and we're actually talking about the lip and header plate for a dock leveler, correct?

> A.    Yeah, absolutely --

Q.    It's the whole thing. You're clear on that, right?

A.    Well, you asked me multiple questions. When you say "the  whole thing," are you referring to --

Q.    The whole front end design.

A.    It's the lip and hinge plate. The ornamental design of the   lip and hinge plate.

Q.    The front end design.

A.    Yeah, but when you say "the whole thing" I want to make clear we're not talking about the whole dock leveler. (A5537)

Continuing the attack, Nordock's counsel on cross examination tried to trip up Mr. Bero by asking about another design patent case Mr. Bero had been involved with wherein a design patent directed to a drill bill (6659-61) was involved:

Q.    Now, you rendered a damages report in this case, didn't you? Regarding the drill bit, didn't you?

A.    I provided two damages reports in this case, yes. (A5539).

In response to further questioning regarding that prior case, Mr. Bero testified:

A.    In that case — I think this is what you're getting at — is I quantified the defendant's profits on the entire drill bit in that case. Because as you can see here, it says

35

> the 'ornamental design for a drill bit.' That's a
> whole product. (A5540)(emphasis supplied).

On redirect, Mr. Bero was asked the obvious question Nordock's

counsel was apparently afraid to, namely, *why* Mr. Bero testified that

profits were recoverable on the entire drill bit in the earlier case while,

in the instant case, profits on the entire dock leveler were not. Mr. Bero

answered clearly and succinctly:

Q.    Okay, Mr. Bero, Mr. Sokol asked you why in respect to
       [the drill bit] case it was your opinion that damages
       should be awarded on the entire -- profits on the entire
       drill bit.

A.    Well, the reason was because it says in the claim, it's
       says "the ornamental design for a drill bit." It's
       different than  --so -- well, the drill bit was sold.
       **That's the product that was    sold.    There's   a
       picture, you can see the drill  bit. It's  the  whole
       drill bit.**

       **And that's different than the case we have here**
       where we have -- I don't know if you can put it up there
       -- but an ornamental design of a lip hinge plate and it
       says "for a dock leveler." I understand it, is the lip and
       hinge plate. **It doesn't cover an entire dock leveler.
       It's just a part of the product. So that's a big
       difference** in those two cases.

Q.    And were you present in the courtroom when it's been
       repeatedly pointed out that what we see in dotted lines
       here are not considered part of what is supposedly

patented here?

A.    Yes.

Q.    So, in other words, the lip and hinge plate, which is actually covered by this ornamental patent, does not include what you see here in the dotted lines?

A.    Well, again, I'm not a technical expert but that's my understanding.

Q.    Okay. I'm going to page through the drawings of this entire ornamental patent which is the subject of this lawsuit. Do you see an entire dock leveler there?

A.    No.

Q.    Do you see an entire dock leveler here?

A.    No.

Q.    Do you see an entire dock leveler there?

A.    No.

Q.    Do you see an entire dock leveler there?

A.    No.

Q.    Okay. Are there any figures in this patent that you're aware of that show an entire dock leveler?

A.    No. (A5562-64)(emphasis supplied).

### 3.    Mr. Bero Properly Relied On The Actual Article Of Manufacture Claimed In The '754 Design Patent

Nordock repeatedly claims that it is entitled to Systems' profits on the *entire* dock leveler sold by Systems, rather than on the "lip and hinge plate" actually shown and described in the '754 Design Patent. In each and every case cited by Nordock, wherein profits were awarded, the design patent showed the entire article to which the design was applied and for which profits were determined.

Here, a simple examination of the figures in the '754 Design Patent show two clear things: First, an entire dock leveler is never shown in any of the figures. Second, the small portion of a dock leveler that is shown is shown in dotted lines, indicating that does not form part of the "article of manufacture" to which the design is applied and to which 35 U.S.C. §289 authorizes profits. Indeed, the '754 Design Patent expressly states:

> The deck and deck frame **shown in broken lines** in FIGS. 1 and 3-7, the drive brackets shown in FIGS. 1-5, the drive bar opening shown in FIGS. 1-3, and the assist spring mounting bracket shown in FIG. 1 represent environmental structure in order to show the claim in a condition of use and **form no part of the claimed design.** (A6321)(emphasis supplied).

Indeed, during his direct testimony and cross-examination, Mr. Bero relied on these important facts to distinguish the other cases in which he rendered opinions and to explain how he determined Systems' profits.

The authority cited by Nordock is inapposite. In *Nike, Inc. v. Wal-Mart Stores, Inc.,* 138 F.3d 1437 (Fed. Cir. 1998) the parties were in agreement that the "infringing products" (i.e., that the "article of manufacture" to which the patented design was applied) were shoes, and the only damages dispute was with respect to what deductions should be made against gross revenues. The infringer never claimed that relevant article of manufacture was other than the shoes themselves. Here, by the clear language, figures and disclaimer of the '754 Design Patent itself, the article of manufacture is the "lip and hinge plate," ***not*** the entire dock leveler.

Under Nordock's view of §289, the holder of a design patent on, for example, a hub cap for a car would be entitled to profits on an ***entire*** automobile should an infringing hub cap be included in a sale. Under Nordock's view, the holder of a design patent on an architectural window would be entitled to the profit on an ***entire*** residential or commercial property in which the window is installed.

Significantly, at trial, Nordock never presented any testimony contrary to that presented by Mr. Bero, nor did Nordock otherwise challenge Mr. Bero's testimony in this regard.

### 4. Dr. Smith Never Even Reviewed The '754 Design Patent In Suit, Much Less Calculate Systems' Profits On The Actual Article Of Manufacture To Which The Design Was Applied

Unlike Mr. Bero who actually read the '754 Design Patent at issue and took into critical account what the patent actually covered, Dr. Smith testified that he could not even be bothered to look at the patent:

Q.   Could you take a look at [Exhibit 18 – Copy of '754 Design Patent]?

A.   What about it?

Q.   Go ahead and open it up.

A.   Yes.

Q.   Is that Nordock's patent on its lug hinge -- lug and hinge plate design?

A.   ***This is the first time I've seen this,*** so why don't you tell me what it is? (A6027-8)(emphasis supplied).

Nor was this any slip of the tongue or momentary lapse. Days later, during rebuttal cross examination, Dr. Smith *confirmed* that he

neither reviewed the '754 Design Patent nor made a profits calculation

on what it actually covered:

> Q.    Thank you. Dr. Smith. Do you recall when Mr. Whitaker cross-examined you on Wednesday and showed you Plaintiff's Exhibit 18? That's the patent in suit?

> A.    And what does this have to do with –

> *** [Evasive answers and colloquy with the Court omitted] ***

> Q.    Okay. You recall that this is the patent in suit?

> A.    I thought there were several patents. And I haven't paid  attention to patent numbers.

>     *** [Objections and colloquy with Court omitted] ***

> Q.    Have you paid any attention to the patent in this case?

> A.    I understood there were several patents. Aren't there more Exhibits there? I was shown three Exhibits.

> Q.    Are you aware that none of those patents have been raised as a basis of the lawsuit?

> A.    All I am telling you is that there are three patents on that  table, am I right? And I have not paid attention to the patent claims...

> Q.    Okay, fair enough. Now, you were supposedly calculating damages on patents in this case, and you do not even know, by your own testimony, which patents are in the case. You do not know whether it's this patent?

*** [Objections and colloquy with Court omitted] ***

Q.   Mr. Whitaker showed you [the '754 Design Patent]?

A.   Yes.

Q.   Asked if you had seen this before. You said, quote, this is the first I've seen it. And that was Wednesday of last week.

A.   Correct.

Q.   You confirm that testimony?

A.   Yes. (A6065-68).

Finally, during rebuttal cross-examination, Dr. Smith confirmed that he made no attempt to consider profits on what the '754 Design Patent actually covered but, instead, looked at the entire dock leveler:

Q.   The jury has seen this many times. We all know what it covers. Your answer is that you did not calculate profits, System' profits, on what is actually covered by this patent. That's your testimony?

A.   Not on the patent. On the leveler. (A6608-9)

The undeniable truth is that, unlike Mr. Bero who made a proper analysis of the relevant issues and made a proper calculation as to damages, Dr. Smith had never even seen the '754 Design Patent until cross-examination at trial. Significantly, he purported to calculate

42

System's profits based on an entire dock leveler, rather than the actual article of manufacture, namely a "lip and hinge plate" to which the supposed "ornamental design" is applied.

### 5. Based On The Trial Testimony Of The Opposing Experts, The Jury Was Free To Discount The Opinion Of Dr. Smith And Adopt That Of Mr. Bero

It is axiomatic that the jury is free to disregard the testimony of a witness based on a lack of credibility. *See,* Jury Instructions, page 16, "Testimony of Witnesses (Deciding What To Believe)." (A4515). See also *United States v. White*, 639 F.3d 331 (7th Cir. 2011) ("The jury was free to believe or disregard [the witness's] testimony" citing *United States v. Jackson*, 688 F.2d 1121, 1126 (7th Cir. 1982); *United States v. Towns*, 913 F .2d 434, 445 (7th Cir. 1990); *United States v. Stormer*, 938 F.2d 759, 762 (7th Cir. 1991); *Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 578 (6th Cir.1987) ("credibility determinations ... are jury functions"), *cert. Denied*, 486 U.S. 1033 (1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

The fact that Nordock offered Dr. Smith as a supposed expert does not change that rule. *See, United States v. Mansoori*, 304 F.3d 635, 654

(7th Cir. 2002), *cert. denied* 538 U.S. 967 (2003) (approving instruction to jury that "the fact an expert has given an opinion does not mean that it is binding upon you"); *United States v. Serafino*, 281 F.3d 327, 330-331 (1st Cir. 2002) (court mitigated "whatever special aura the jury might otherwise have attached to the term 'expert'" by instructing that expert testimony should be considered just like other testimony); *United States v. Brown*, 7 F.3d 648, 655 (7th Cir. 1993) (recognizing that in close case danger of unfair prejudice may be heightened by "aura of special reliability" of expert testimony, but concluding that instruction to jury that expert opinion was not binding and that jury should consider expert opinion in light of all evidence mitigated any danger of unfair prejudice); *Coal Resources, Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 775 (6th Cir. 1989) (no error in failing to give jury instruction regarding speculative testimony by expert witness where jury was instructed that it must decide how much weight and credibility to give to expert opinion).

Here, there were ample grounds for the jury to disregard the testimony of Dr. Smith and accept the opinion of Mr. Bero. Unlike Dr.

Smith, Mr. Bero provided a careful analysis of the deficiencies in Dr. Smith's opinion and presented them to the jury. (A6704-4, 5527-31). Indeed, Dr. Smith discredited himself and destroyed his own credibility by attempting to testify regarding reasonable royalties despite the District Court's prior ruling that his opinion in this regard was "unreliable" and should be excluded. (A4228-30). This resulted in the jury being expressly instructed to disregard Dr. Smith's testimony in this regard. (A5989-90).

If one thing is clear it is that the jury did ***not*** believe Dr. Smith. A simple review of the jury's verdict form (A5402-05) reveals that the jury rejected everything that Dr. Smith said, and disregarded (as it was free to do) all of Dr. Smith's testimony. Nordock has no one to blame but itself. Nordock should certainly not be rewarded with a new trial based on the incredible and disbelieved testimony of its own witness.

## E. NORDOCK HAS WAIVED ANY OBJECTIONS IT MIGHT HAVE HAD TO THE COURT'S JURY INSTRUCTIONS

Nordock makes the claim that the District Court somehow failed to follow its own instructions regarding damages, and that the

instructions somehow compelled the jury (and District Court) to award Nordock Systems' profits. Again, the actual facts show otherwise.

Aside from the fact that the jury, not the District Court, made the determination as to what damages should be awarded, Nordock ignores that the very first damages instruction given to the jury expressly provides the jury with the option of awarding a reasonable royalty *or* Systems' profits.

In particular, the instruction entitled, "Design Patent Damages – Burden Of Proof," expressly states, "As compensatory damages, Nordock may prove either its own lost profits, or a reasonable royalty for the design patent. Nordock is not entitled to recover both compensatory damages and Systems' profits on the same sale." (A4538). Under the plain language of this instruction, the jury had the option of awarding either a reasonable royalty or Systems' profits, but not both.

Given that the jury unequivocally elected to award Nordock a "reasonable royalty" (i.e., "compensatory damages"), the instruction expressly barred the jury from also awarding "Systems' profits on the

same sale." Thus, the jury's election to award Nordock "reasonable royalties" necessarily precluded the jury from awarding "Systems' profits." The District Court did not abuse its discretion in upholding a jury verdict that is fully consistent with the instructions actually given.

Significantly, Nordock never voiced an objection to this instruction given to the jury. Indeed, while reviewing the proposed instruction in open court, Nordock's counsel stated "That would be acceptable," "That's fine," and "That's fine for us" when this instruction was discussed and adopted by the court. (A6080-83).

Given Nordock's failure to make any formal objection to this instruction before it was read to the jury, Nordock is barred from now complaining that the jury adhered to the instruction as delivered.

Similarly, Nordock never objected to what it now claims are "conflicting jury instructions." Again, Nordock's failure to raise a timely objection, namely *before* the instructions were given to the jury, waives any claim at this late date that there was a problem with the instructions. Again, Nordock cannot rely on its own failure to take

timely action as a basis for seeking another chance before a different jury.

## F. NORDOCK HAS WAIVED ANY CHALLENGE TO THE CLOSING ARGUMENT DELIVERED BY SYSTEMS' COUNSEL

Nordock complains that the closing argument delivered by Systems' counsel was somehow improper and tainted the outcome of the trial. A simple review of the transcript indicates that at no time, either during or after delivery of the argument, did Nordock voice any objection to the argument or request that the argument be stricken. As with Nordock's failure to object to the jury instructions, any argument or claim based on supposed improprieties in Systems' closing argument is waived.

## G. THE DISTRICT COURT ERRED BY DECLINING TO RULE THE '754 DESIGN PATENT INVALID AS A MATTER OF LAW

The District Court should have entered Judgment as a Matter Of Law in favor of Systems that the '754 Design Patent is invalid. For the reasons that follow, the jury's verdict that the '754 Design Patent

discloses any ornamentation is simply not supported by substantial evidence.

Both at the close of Nordock's evidence and again at the close of trial, Systems moved for JMOL of invalidity of the '754 Design Patent as being purely functional. Substantial evidence was presented during trial that nothing claimed by the '754 Design Patent is ornamental, and indeed every individual feature was purely functional as well as the design as a whole. The '754 Design Patent is invalid at least because every aspect of the '754 Design Patent is purely or at least primarily functional and therefore it contains no protectable ornamental features.

## 1.    The '754 Design Patent Is Invalid As Purely Functional

A design patent protects only ornamental features. "[W]hen the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010). Functional features cannot be protected with a design patent. "In determining whether a design is primarily functional, the purposes of the particular elements of the

design necessarily must be considered." *Id.* at 240. *Richardson* establishes the framework for a proper legal analysis of the claim of a design patent that must be undertaken when determining what the claim covers.

The claim of the '754 Design Patent must be construed to exclude any functional elements. *Richardson*, 597 F.3d at 1288. The '754 Design Patent includes at least two elements that are purely functional and should be excluded from the claim. In fact, the '754 Design Patent includes ***only*** two material elements, both of which are purely functional. Figure 1 of the '754 Design Patent is reproduced below and shows that the claimed design, illustrated in solid line, includes only two elements: A so-called "lug hinge" and a "header plate." Practically every other element of the entire figure is illustrated in dashed line, which eliminates those elements from the claim.

(Figure 1 of the '754 Design Patent (annotated). (A0100).



As was demonstrated by uncontroverted evidence at trial, those two elements are purely functional, which leaves no protectable content in the design. Accordingly, the '754 Design Patent is invalid as purely functional and non-ornamental. "If the patented design is primarily functional rather than ornamental, the patent is invalid." *PHG Technologies v. St. John Companies, Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006); *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238 (Fed. Cir. 1986).

### 2.    Prosecution History Shapes The Scope Of The '754 Design Patent

Prosecution history estoppel applies with equal force to a design patent as a utility patent. *Australia Vision Servs. v. Diopitcs Medical Prods.*, 29 F.Supp.2d 1152 (C.D. Cal., 1998); *see also*, 1 CHISUM, DONALD S., CHISUM ON PATENTS § 1.04[4], n. 2 (1998) ("[F]ile Wrapper estoppel applies to design patents in determining infringement."). The '754 Design Patent was filed as a divisional application claiming priority to U.S. Utility Patent Application No. 10/328,279, filed on December 23, 2002, and which ultimately issued as U.S. Utility Patent No. 6,834,409. (A0098).

In addition, the prosecution history of an earlier patent applies with equal force to subsequently issued child patents. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999). Accordingly, representations made to the U.S. Patent Office during the prosecution of Nordock's 6,834,409 patent ("the '409 Patent") apply equally to the scope of the '754 Design Patent.

### 3.    The '754 Design Patent Is Purely Functional

As analyzed in careful detail in the Expert Report of Adam Brookman, the lug hinge and header plate design is a purely functional component that serves the purpose of allowing the horizontal deck plate to pivot or swivel with respect to the header plate, which is a necessary function of all dock levelers. (A2221-A2275). Everything about the appearance of Nordock's design is driven by function, and there is no added creativity to support any ornamental protection. Accordingly, the lug hinge and header plate design is purely functional and cannot support patentability of the claim of the '754 Design Patent.

### (a)    The '754 Design Patent Itself Admits That It Is Primarily Functional

The scope of the claim of the '754 Design Patent is tempered by Nordock's representations made during the prosecution of the parent of the '754 Design Patent, the '409 Patent. In the '409 Patent, Nordock admits that the lug hinge and header plate design is functional. For example, Nordock represents that with conventional dock levelers "[t]he connection [of the lip plate to the deck frame] is a ***critical part of the leveler*** as it must withstand concentrated stresses as the fork lift and

the load it is carrying traverse from the building to the trailer, or visa versa." '409 Patent, at col. 2, lines 51-56 (emphasis added) (A2083, A2065-A2090). More specifically, Nordock represented that

> a [prior art dock leveler] design uses lip plate lugs to lessen these stresses. In lieu of a header plate, cooperating lugs are also welded to the support beams and deck plate. A problem with this design is that the unsupported front edge of the deck plate is more easily bent and dished between the support beams.

'409 Patent, at col. 2, lines 60-65. (A2083)(emphasis added).

Nordock purported to overcome those problems in the prior art by providing "a ***durable*** combined lip lug and header plate hinge construction." '409 Patent, at col. 3, lines 15-16 (emphasis added) (A2084). Nordock went on to state:

> A still further advantage of the dock leveler is its solid and durable attachment of the lip to the deck and deck frame. A header plate is used to support the front edge of the deck plate across its full width. This ***header plate*** is combined with a ***lip plate lug type hinges to reduce the concentrated stresses on the tubular hinge to provide a longer structural life for the dock leveler***.

'409 Patent at col. 4, lines 26-32. (A2084)(emphasis added).

### (b)   Prosecution History Estoppel Bars The "Ornamental" Claim

Nordock is estopped from relying on the "lug hinge" shown in the drawings of the '754 Design Patent as a patentable feature. As stated earlier, the '754 Design Patent issued from originally-filed utility patent application number 10/328,279 ("the '279 Application"). However, in divisional application number 11/179,941, Nordock attempted to seek utility patent protection on precisely its lug hinge and header plate design. More specifically, in the '941 Application, Nordock presented to the Patent Office a set of utility patent claims that sought to protect "a dock leveler comprising . . . a header plate . . . a set of header lugs . . . [and] a set of lip lugs." (A2131). The Patent Office refused to grant Nordock utility patent protection on those elements and cited substantial prior art in opposition. (A2093-A2097).

After having insisted that its lug hinge and header plate design was not only functional, but far superior to existing designs, Nordock apparently declined to push its position in the utility patent and allowed it to go abandoned, thus forever dedicating the lug hinge and header plate design to the public. (A2091-A2092). *See*, *Johnson &*

*Johnston Associates, Inc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002)(failure to claim disclosed subject matter dedicates it to the public).

By dedicating the utilitarian functions of the lug hinge and header plate design to the public, Nordock is estopped from trying to recapture protection over those elements by improperly extending design patent protection far beyond its intention. In other words, Nordock cannot improperly secure utility-like patent protection over functional components for which it was unable to obtain a utility patent by merely filing a design patent and claiming that the elements are ornamental. For at least this additional reason, all the essential elements of the '754 Design Patent are not properly protectable as ornamental design, and the '754 Design Patent is invalid.

### (c)   Nordock's Own Advertising Touts The Functionality Of The '754 Design Patent

Touting the specific utility of design features in advertising is one of the earmarks of functionality. See *Berry Sterling Corp. v. Prescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997). As set forth thoroughly in the Brookman Report, Nordock advertises that its

"[e]xclusive lip lug and header plate design ensures ***maximum strength and durability***." (A2230-A2231)(emphasis supplied). Also, on its Web site, Nordock advertises that the lug hinge design is "***self cleaning***," "does not allow debris to collect in this ***critical area***," and "provides the ***strongest*** front hinge and deck support." (A2230-A2231) (emphasis supplied). In fact, Nordock does not apparently ***ever*** refer to the ornamental features of its lug hinge design anywhere except in this litigation.

Nordock cannot have it both ways. Either its lug hinge and header plate design is entirely functional, as it has repeatedly and consistently represented to the world, or it is merely window dressing, as it is attempting to assert in this case. This Court is correct to examine Nordock's advertising, as it is the best indication of Nordock's true intention, unaltered by the self-serving motivations of litigation.

### (d)   Nordock's Own Witnesses Admit The Lug Hinge/Header Plate Design Is Functional

Practically every witness who provided testimony, including Nordock's own inventor, stated that the lug hinge and header plate design is driven purely by function and cost. For example, Mr. Adam

Brookman, Systems' technical expert, testified at length that the '754 Design Patent was purely functional. (A5965-66, A5972).

In addition, and perhaps most compellingly, Mr. Denis Gleason, Nordock's own CEO, was presented with a copy of Figure 1 of the '754 Design Patent and asked to identify any ornamental features. Mr. Gleason was unable to do so, and instead indicated that every single element of the '754 Design Patent was purely functional. For example, at the claim construction hearing held in this matter, Mr. Gleason was unable to identify even a single aspect of the '754 Design Patent that was ornamental. (A4284-A4341). And again at trial, when presented with Figure 1 of the '754 Design Patent, Mr. Gleason was asked which of the disclosed features was functional and Mr. Gleason was forced to admit that every single feature shown in the figures of the '754 Design Patent was functional. See Trial Exhibits 1042, 1044. (included in the Addendum to this brief at pages 1-2).

Accordingly, all the witnesses admitted that the lug hinge and header plate design, individually and collectively, is limited to purely functional elements driven by performance, not ornamentation.

### 4. The Availability of Alternatives Does Not Eliminate Functionality

Although one factor to consider in the functionality analysis is the availability of alternative designs, this Court has cautioned that a full inquiry with respect to alleged alternative designs includes a determination as to whether the alleged "alternative designs would adversely affect the utility of the specified article," such that they are not truly "alternatives" within the meaning of the law. *PHG Technologies v. St. John Companies, Inc*., 469 F.3d 1361, 1367 (Fed. Cir. 2006)(citing *Rosco, Inc. v. Mirror Lite Co*., 304 F.3d 1373, 1378 (Fed. Cir. 2002)). An element is "functional 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *Amini Innovation Corp. v. Anthony California, Inc*., 439 F.3d 1365, 1371 (Fed. Cir. 2006).

For example, at trial Mr. Edward McGuire, Systems' CEO, was questioned about the decisions to use the header plate and the lug hinge rather than other alternatives. Mr. McGuire testified that the lower cost of the using the header plate and the lug hinges make those decisions necessary. More specifically, Mr. McGuire testified as follows:

59

Q.   And what would be the advantage of [using the header plate and lug hinge]?

A.   Well, number one, it would be -- it would be a lot easier, easier in many aspects from an engineering standpoint. Again, if you take that -- if you take the front header off you're going to have to test that product probably, you know, two, three years because you're changing the whole dynamics of the platform. A lot of testing.

So we eliminated that issue. From a manufacturing standpoint we always had built a platform with a front header. And our people on the manufacturing floor knew how to do it. And they felt very confident in doing it. And we decided to go ahead with it.

Q.   What advantage, if any, would you get by switching from the piano-style hinge to the header with lugs?

A.   Couple advantages. One, it helped our throughput. What I mean by throughput is, we could make -- at that time some of the people in the meeting felt that, you know, we possibly could get one or two dock levelers more a week.

Q.   Would that save you money?

A.   Well, if you get one dock leveler a week that's 52 dock levelers more a year. And that definitely saves you money.

(A5796, A5788-A5798)

Accordingly, the availability of possible alternative designs to the one depicted in the '754 Design Patent does not, of itself, render the

design ornamental. For example, the use of **_glue_** to adhere two objects together rather than **_tape_** does not make the glue ornamental. Nor does it make the two objects ornamental. Alternatives that are the product of cost rather than functional compromises are not driven by ornamental features.

### 5. The Overwhelming Weight Of The Evidence Proves The '754 Design Patent Is Invalid As Being Functional

As set out above, the overwhelming weight of the evidence proves that the '754 Design Patent is invalid as purely functional. All of the evidence presented to the jury proves that the patent is invalid, and no evidence presented contradicts that conclusion. Accordingly, the '754 Design Patent should be held invalid as a matter of law.

### IX. Nordock Failed To Prove That Systems' 6 1/2 Foot Dock Leveler Infringes The '754 Design Patent

Nordock failed to put forth any evidence at all, certainly not substantial evidence, that Systems' 6 1/2 foot dock leveler infringes the '754 Design Patent. Accordingly, the District Court erred by denying Systems' motion for JMOL of non-infringement of the 6 1/2 foot dock leveler.

A jury verdict must be supported by substantial evidence. *Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449, 450 (7th Cir. 1991)(citing *La Montagne v. American Convenience Products, Inc*., 750 F.2d 1405, 1410 (7th Cir. 1984)). A mere scintilla of evidence will not suffice to support a jury verdict. *Id*. This matter concerns the alleged infringement of a ***design*** patent, which, of course, protects "the ornamental design" shown in the figures of the patent. Under the applicable "ordinary observer" test, the jury ***must*** perform an actual visual comparison of all of the figures of the design patent ***to the accused product.*** "The overall features of the top, side and underside of the accused products must be compared with the patented design as a whole as depicted in all of the drawing figures to determine infringement." *Contessa Food Products v. Conagra Inc.*, 282 F.3d 1370, 1381 (Fed. Cir. 2002). In the absence of ***any*** evidence regarding what the 6 1/2 foot dock leveler looks like, a finding of infringement simply cannot stand.

## A.    NO EVIDENCE REGARDING SYSTEMS' 6 1/2 FOOT DOCK LEVELER WAS PRESENTED AT TRIAL

At trial, Nordock presented *zero* evidence regarding the 6 1/2 foot dock leveler. The Court need not parse the record to determine whether the evidence Nordock presented rises to the level of "substantial." Regardless of how much evidence is required to reach "substantial," *zero* clearly does not qualify. Nordock did not present even one picture of a 6 1/2 foot dock leveler. At no time did Nordock present any evidence at all that the jury could have used to conduct the requisite comparison to all the drawings of the '754 Design Patent.

At trial, Nordock's technical expert Professor Steven C. Visser testified as to the infringement analysis contained in his report. However, Prof. Visser admitted that he did not review *any* actual Systems dock leveler in preparing his report and instead relied on Systems' own sales brochures. (A0346). In addition, Prof. Visser admitted that the sales brochures he *did* review contained only pictures of the 6 foot and 7 foot dock levelers. Importantly, they did not depict the 6 1/2 foot dock leveler. (A0350). Prof. Visser never testified that he

even saw (much less analyzed) an actual 6 1/2 foot Systems dock leveler either in person or in picture.

By the close of Nordock's case, Nordock had presented absolutely no evidence regarding Systems' 6 1/2 foot dock leveler. Indeed, when Systems' Vice President Mike Pilgrim later took the stand and testified, he was asked that specific question:

> Q:   Have you been here for the whole trial?
>
> A:   Yes.
>
> Q.   Have you seen anyone show during the course of this trial a 6 1/2 foot version of either a hydraulic or a mechanical dock leveler?
>
> A.   No, I haven't.

(A5910).

Then, when Mr. Pilgrim was asked whether the 6 1/2 foot dock leveler appears similar to either Systems' 6 foot or its 7 foot dock levelers, he stated emphatically that it did not. More specifically, he testified as follows:

> Q:   Do these – the hydraulic and mechanical dock levelers with lugs, does the six-foot, the 6 1/2 foot and the seven-foot all look the same?

A:    Not at all.

(5909-A5910).

Mr. Pilgrim then testified extensively about the differences in construction which make the dock levelers all look different. For example, instead of having paired-legs as claimed in the '754 Design Patent, the 6 1/2 foot Systems' dock leveler uses single lugs that are attached to the lip. (A5910). Accordingly, the jury could not possibly have found infringement of a dock leveler which it had never seen and which the only testimony conclusively establishes looks different than the '754 Design Patent drawings.

Nordock argued to the District Court that there was trial testimony to the effect that the middle six foot portion of the 6', 6 1/2 and 7' wide levelers is the same. However, the testimony that Nordock relies on is that of Denis Gleason, Nordock's CEO, testifying about Nordock's **own** dock levelers, **not** Systems' dock levelers. (A5621-A5623). Mr. Gleason was even explicit: "Well, briefly ***how we make dock levelers*** is we first . . ." (A5621)(emphasis added). Nothing in Mr. Gleason's testimony ever discussed how ***Systems***' makes dock levelers.

As a point of fact, Mr. Pilgrim testified to several ways in which Systems' designed its 6 1/2 foot dock leveler to look different than its 6 and 7 foot dock levelers. In short, how Nordock makes its dock levelers is completely irrelevant to the question of whether Systems' 6 1/2 foot dock leveler infringes.

Again, the simple fact is that Nordock offered no evidence whatsoever regarding what the Systems 6 1/2 foot dock leveler looks like. Accordingly, there is simply no evidence to support the jury's finding of infringement as to the 6 1/2 foot dock leveler. Because there is *no* evidence whatsoever to support the jury's finding of infringement as to the 6 1/2 foot hydraulic dock leveler, that finding by the jury must be set aside.

## X.    CONCLUSION

For the foregoing reasons, Nordock's appeal is without factual or legal basis, and this Court should deny Nordock's requested relief. Systems respectfully requests that this Court enter the following relief in Systems favor: (1) that Nordock's motion for a new trial be denied, (2) that the '754 Design Patent be declared invalid as a matter of law, and

(3) that the finding of infringement with respect to Systems' 6 1/2 foot

dock leveler be reversed.

Dated: January 21, 2014          Respectfully submitted

Philip P. Mann
Timothy J. Billick
MANN LAW GROUP
John Whitaker
WHITAKER LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, Washington 98101
(206) 436-0900
*phil@mannlawgroup.com*
*john@wlawgrp.com*

Attorney for Defendant-Cross-
Appellent Systems, Inc.

# ADDENDUM



FIG. 1

DEFENDANT'S EXHIBIT
1042
Blumberg No. 5114

## CERTIFICATE OF SERVICE
## United States Court of Appeals
## for the Federal Circuit

No. 2013-1680

————————————————————————————————————

NORDOCK, INC.

      Plaintiff – Appellant,

      v.

SYSTEMS INC.,

      Defendant – Appellee – Cross-Appellant.

————————————————————————————————————

    I, Anne K. Smart, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

    On the date indicated below, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.

    I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

    Dated: January 21, 2014           */s/  Anne K. Smart*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

This brief contains **11,962** words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule of Appellate Procedure 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using LibreOffice in a 14 point "Century Schoolbook" font.

Dated: January 21, 2014          Respectfully submitted,

_/s/ Philip P. Mann_
Philip P. Mann
MANN LAW GROUP
1218 Third Avenue, Suite 1809
Seattle, WA 98101
(206) 436-0900
phil@mannlawgroup.com

Attorney for Appellee-Cross-Appellant Systems, Inc.