# United States Court of Appeals
# for the Federal Circuit

———————————

**NORDOCK, INC.,**
*Plaintiff-Appellant*

**v.**

**SYSTEMS INC., DBA POWERAMP, DBA DLM INC.,
DBA MCGUIRE,**
*Defendant-Cross-Appellant*

———————————

2014-1762, -1795

———————————

Appeals from the United States District Court for the Eastern District of Wisconsin in No. 2:11-cv-00118-RTR, Chief Judge Rudolph T. Randa.

———————————

Decided: September 29, 2015

———————————

JEFFREY SCOTT SOKOL, Sokol Law Office, Milwaukee, WI, argued for plaintiff-appellant.

PHILIP P. MANN, Mann Law Group, Seattle, WA, argued for defendant-cross-appellant. Also represented by TIMOTHY JOHN BILLICK, I; JOHN WHITAKER, Whitaker Law Group, Seattle, WA.

———————————

Before O'MALLEY, REYNA, and CHEN, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Nordock, Inc. ("Nordock") filed suit against Systems, Inc. ("Systems") in the United States District Court for the Eastern District of Wisconsin alleging infringement of U.S. Design Patent No. D579,754 ("the D'754 Patent"), which claims the ornamental design of a lip and hinge plate for a dock leveler. A jury found that Systems' hydraulic dock levelers infringe the D'754 Patent, and that the patent is not invalid. The district court entered judgment awarding Nordock $46,825 in damages as a reasonable royalty.

Both parties filed post-trial motions to amend the judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure. Specifically, Nordock filed a motion to amend the judgment regarding damages, or in the alternative, for a new trial. Systems also sought to amend the judgment, arguing that there was insufficient evidence to support the jury's finding of infringement with respect to Systems' 6 ½ foot dock levelers. The district court denied both motions. *Nordock, Inc. v. Sys., Inc.*, No. 11-C-118, 2014 WL 3786277 (E.D. Wis. July 31, 2014) ("*Rule 59 Decision*").

Nordock appeals the district court's decision denying its request for a new trial on damages. Systems cross-appeals from the court's decisions denying its oral motion for judgment as a matter of law ("JMOL") as to validity of the D'754 Patent and denying its post-trial Rule 59(e) motion. Because we find that the district court erred in its assessment of design patent damages under 35 U.S.C. § 289, we vacate the damages award and remand for a new trial on damages. With respect to Systems' cross-appeal, we affirm the district court's decisions: (1) denying Systems' motion for JMOL as to the validity of the D'754 Patent; and (2) denying Systems' Rule 59(e) motion with respect to the 6 ½ foot dock levelers. Accordingly, we

affirm in part, vacate in part, and remand for further proceedings.

## BACKGROUND

Nordock and Systems are rivals in the loading dock device industry. *Nordock Inc. v. Sys. Inc.*, 927 F. Supp. 2d 577, 582 (E.D. Wis. 2013). "Both companies design, manufacture, and sell dock levelers which are mechanical devices used to create a bridge between loading dock surfaces and the surfaces of truck load beds." *Id.*

On December 23, 2002, Denis Gleason, the President of Nordock, filed U.S. Patent Application No. 10/328,279 ("the '279 Application"), which ultimately issued as U.S. Patent No. 6,834,409 ("the '409 Patent"). The '409 Patent shows a dock leveler with a deck lift assembly that "has a durable combined lip lug and header plate hinge construction." '409 Patent, col. 3, ll. 15-16. Although Nordock applied for utility patent protection for the "lug hinge design," it abandoned prosecution after the application was rejected over the prior art. *Nordock,* 927 F. Supp. 2d at 588.

## A. The D'754 Patent

The D'754 Patent—entitled "Lip and Hinge Plate for a Dock Leveler"—was filed as a divisional application claiming priority to the '279 Application. As noted, the D'754 Patent claims the ornamental design of a lip and hinge plate for a dock leveler, as shown and described therein. Figure 1, shown below, provides a general perspective view of the front end of the leveler as claimed:



The D'754 Patent states that Figure 1 "is a perspective view showing the lip and hinge plate for a dock leveler with the lip extended, and the hinge plate secured to a deck frame shown in broken lines."

### B. Systems' Accused Devices

Systems has manufactured and sold dock levelers since the 1960s. *Nordock*, 927 F. Supp. 2d at 594. For approximately 40 years, Systems made its levelers with a "piano style" hinge. *Id.* Systems' President—Edward McGuire—testified that Systems moved to using a header plate and lug style hinge design "for cost reasons," and began selling the accused levelers in October 2005. *Id.*

In its complaint, Nordock accused three different sizes of Systems' mechanically operated dock levelers ("LMP" and "LMD"), and three different sizes of hydraulically operated dock levelers ("LHP" and "LHD") of infringing the D'754 Patent. The sizes are based on the width of the levelers, which are available in widths of 6 feet, 6 ½ feet,

and 7 feet. According to Systems' expert—Richard F. Bero—Systems' average sale price for an LHP/LHD leveler is $2,516, and its operating profit per unit is $433. Joint Appendix ("J.A.") 6552. Its average sale price for an LMP/LMD leveler is $1,840, with an operating profit per unit of $215. *Id.*

## C. Procedural History

On January 28, 2011, Nordock filed suit against Systems alleging that it infringes the D'754 Patent by making, offering for sale, and selling hydraulic and mechanical dock levelers incorporating the claimed lip lug and hinge plate design. Nordock further alleged that the infringement is willful.

Systems filed an Answer and Counterclaim for declaratory judgment of non-infringement and invalidity. In its counterclaim, Systems alleged that the D'754 Patent is not infringed and is invalid for failure to comply with the standards of patentability and enforceability set forth in 35 U.S.C. §§ 102, 103, and 112. Systems also asserted a number of affirmative defenses, including laches, estoppel, and unclean hands.

### 1. Cross-Motions for Summary Judgment

The parties filed cross-motions for summary judgment in September 2012. Specifically, Nordock moved for summary judgment as to validity and enforceability of the D'754 Patent. In that motion, Nordock argued that the design has sufficient ornamentation, the D'754 Patent is not barred by the claims of related utility patent applications, the design is valid under 35 U.S.C. §§ 102, 103, and 112, and enforcement is not barred by reason of laches, estoppel, or unclean hands. *Nordock*, 927 F. Supp. 2d at 589.

For its part, Systems moved for summary judgment of invalidity and noninfringement, arguing that: (1) the D'754 Patent is invalid because it is primarily functional

and contains no protectable ornamental features; (2) to the extent there are any features that are not purely functional, those features are obvious in view of the prior art; and (3) a comparison between the patented design and Systems' products reveals that Systems does not infringe.  Systems requested that the district court hold a hearing on the motion and construe the scope of the D'754 Patent claim.

The district court conducted a claim construction hearing on January 30, 2013.  *Id.* at 587.  Shortly thereafter, the court issued a written decision addressing several motions, including the parties' cross-motions for summary judgment.  In relevant part, the court construed the single claim of the D'754 Patent as "[t]he ornamental design of a lip and hinge plate for a dock leveler, as shown and described," including the seven figures (drawings) of the patent.  *Id.* at 588.  The court explained that "the broken lines in the figures do not form any part of the claim," and that:

> [t]he ornamental design of the lip and hinge plate as shown and described includes nine pairs of tear-drop shaped lugs, attached to the header plate and lip to form the hinge, and the pin that is threaded between the lug pairs.  The shape of the lug attached to the header plate is not identical to that attached to the lip, and is elongated as shown in Figures 6 and 7 to close the gap between it and the deck.

*Id.*

Next, the court noted that the design incorporates four primarily utilitarian elements: the lugs, the pin, the header plate, and the lip.  *Id.* at 589.  The court found that the "relative positions of the header plate and the lip which are at the front portion of the dock leveler are dictated by the function of a dock leveler; that is, to create a bridge between the truck and the loading dock."  *Id.*

And the "lugs and the pin form a hinge which is essential to the function of the dock leveler." *Id*. The court found, however, that there are ornamental aspects of the design: "[w]hile the header plate is used to tie the supporting beams and create a box type of structure, there are alternatives. There are dock levelers that do not have header plates, and there are dock levelers with partially open fronts, and other styles." *Id*. (internal citation omitted). And, there are hinges that have no lugs. The court further found that the "shape, spacing, pairing and the difference in shapes between the lugs attached to the header plate and the lip are also ornamental features of the '754 patent." *Id*.

Turning to the parties' motions for summary judgment, the court granted Nordock's motion with respect to anticipation, obviousness, prosecution estoppel, laches, equitable estoppel, and unclean hands. *Id*. at 611. The court found that summary judgment was not appropriate with respect to functionality, however. *Id*. at 605. In reaching this conclusion, the court noted that: (1) "Nordock's advertising touts the functional qualities of its lip, lug and header plate design;" (2) "there is a great variation in dock leveler design;" (3) there is a "genuine dispute of material fact regarding whether many elements in the design are non-functional;" and (4) "Nordock's design is not the only way to do things." *Id*.

## 2. Trial

The district court conducted a jury trial from March 18 through March 26, 2013, on the issues of infringement, validity, and damages. At trial, Nordock's damages expert—Dr. Stan V. Smith—testified that Systems' net profit for the sale of 1,514 hydraulic levelers (LHP/LHD) was $912,201. J.A. 6009; J.A. 6373. Systems' damages expert—Richard F. Bero—testified that "royalty was the proper form of damages, that $15 per allegedly infringing dock leveler was the appropriate amount of royalty, and

that, based on the 6,000 accused units, total damages were about $91,650." *Rule 59 Decision*, 2014 WL 3786277, at *4. In the alternative, Bero testified that Systems' profit on the accused lip and hinge plate was "less than $15 per unit, so lost profits would have been less than $91,650." *Id.*

At the close of Nordock's case in chief and again at the conclusion of all of the trial testimony, Systems moved for JMOL that the D'754 Patent is invalid because it is functional, and that no infringement could be found with respect to Systems' 6 ½ foot hydraulic dock leveler because there was no evidence of that leveler presented at trial. The district court denied those motions on the record and allowed the case to go to the jury.

The jury returned a mixed verdict, finding that Systems' LHP and LHD levelers infringed the D'754 Patent, but that the LMP and LMD levelers were not infringing. The jury awarded Nordock $46,825 as a reasonable royalty, and indicated on the verdict form that Systems' profits were $0. The jury also found that Systems failed to prove that the D'754 Patent is invalid. As discussed in more detail below, as soon as the verdict was returned, Systems indicated a desire to renew its earlier motions.

### 3. Written Post-Trial Motions

After trial, both parties filed motions to amend the judgment pursuant to Rule 59(e). Systems argued that, because there was no evidence presented at trial regarding its 6 ½ foot dock leveler, the jury's finding of infringement as to that particular leveler was unsupported by any evidence and must be discounted. *Rule 59 Decision,* 2014 WL 3786277, at *2. Systems did not file a written motion for JMOL. Nordock filed a motion to amend the judgment regarding damages, or in the alternative, for a new trial on damages. Specifically, Nordock argued that, pursuant to 35 U.S.C. § 289, it was entitled

to recover Systems' profits for its sales of the LHP and LHD levelers found to infringe.

On July 31, 2014, the district court issued an order that: (1) denied Systems' Rule 59(e) motion; and (2) granted Nordock's Rule 59(e) motion with respect to pre-judgment interest and its entitlement to post-judgment interest under 28 U.S.C. § 1961, but denied it in all other respects. With respect to Systems' motion, the court found that "the trial testimony and exhibits support the jury's finding that Systems' 6-, 6 ½-, and 7-foot wide LHP/LHD levelers infringed Nordock's '754 Patent." *Id.* at *2.

Next, the court denied Nordock's motion as to § 289 damages "because the jury reasonably based its verdict on the evidence presented." *Id*. at *4. The jury was instructed that it "could award Nordock compensatory damages in the form of its own lost profits or a reasonable royalty, or it could recover Systems' profits as a measure of potential recovery with respect [to] the sale of each unit of an infringing product." *Id*. The court explained that "the jury heard testimony regarding lost profits, [but] it chose to award a reasonable royalty." *Id*. The court concluded, therefore, that the jury's verdict "was consistent with the instructions, and a reasonable basis exists in the testimony and evidence presented at trial to support the jury verdict." *Id*.

4. Final Judgment

On July 31, 2014, the district court entered an amended final judgment in favor of Nordock and against Systems in the amount of $46,825 for Systems' non-willful infringement of Nordock's D'754 Patent with regard to Systems' LHP and LHD Series dock levelers. The amended judgment awarded Nordock an additional $10,170.09 in prejudgment interest.

Nordock filed its notice of appeal and Systems filed its notice of cross-appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. NORDOCK'S APPEAL

On appeal, Nordock argues that the district court erred when it denied Nordock's motion for a new trial on § 289 damages. We apply regional circuit law in reviewing the denial of a motion for a new trial. *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 798 (Fed. Cir. 2010). In the Seventh Circuit, a denial of a request for a new trial is reviewed for an abuse of discretion. *Id.* (citing *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 543 (7th Cir. 2003)). The Seventh Circuit has indicated that a "new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414 (7th Cir. 2015) (internal citation and quotation marks omitted).

According to Nordock, a new trial is necessary "to determine § 289 damages as the District Court's decision's adopting a finding that Systems' profits are $0 or do not need to be determined is without factual or legal basis and is against the substantial weight of the credible evidence." Appellant Br. 21. Systems responds that the jury's award of $46,825 is supported by substantial evidence and should not be disturbed. As discussed below, we agree with Nordock that a new trial is necessary to address damages under 35 U.S.C. § 289.

When a patent is infringed, the patentee is entitled to "damages adequate to compensate for infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. There are two alternative categories of compensatory

damages available under § 284: "the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

In the case of design patent infringement, a patentee can recover damages under § 284 or under 35 U.S.C. § 289, which is entitled "[a]dditional remedy for infringement of design patent." *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1290 (Fed. Cir. 2002). Section 289 provides as follows:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

> Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but he shall not twice recover the profit made from the infringement.

35 U.S.C. § 289. Therefore, the plain language of the statute permits design patentees to claim either $250 or the infringer's "total profit" on sales of "any article of manufacture" to which the patented design was applied.

We have recognized that where, as here, "only a design patent is at issue, a patentee may not recover both infringer profits and additional damages under § 284." *Catalina Lighting*, 295 F.3d at 1291; *see also Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1310 n.1 (Fed. Cir. 2013) (en banc) ("An infringer's profits are, of

course, no longer an available remedy for the infringe-ment of a utility patent. *See* 35 U.S.C. § 284. Such prof-its, however, remain available in cases of design patent infringement. *See* 35 U.S.C. § 289."); *Signode Corp. v. Weld-Loc Sys., Inc.*, 700 F.2d 1108, 1113 n.6 (7th Cir. 1983) ("An infringer of a *design* patent is liable to the patent owner to the extent of his total profit or $250, whichever is greater, under 35 U.S.C. § 289."). According-ly, a design patentee can recover *either* (1) total profits from the infringer's sales under § 289, *or* (2) damages in the form of the patentee's lost profits or a reasonable royalty under § 284, *or* (3) $250 in statutory damages under § 289, whichever is greater. *See Catalina Lighting*, 295 F.3d at 1291.

At trial, the district court instructed the jury, in part, that:

> In this case, Nordock seeks Systems' profits from sales of products alleged to infringe the '754 De-sign Patent. If you find infringement, and do not find the '754 Design Patent is invalid, you are to award Nordock Systems' total profit attributable to the infringement. Systems' "total profit" means the entire profit on the sale of the article to which the patented design is applied, or with which it is used and not just the portion of profit attributable to the design or ornamental aspects of the patent.

Jury Instructions at 41, *Nordock, Inc. v. Sys., Inc.*, No. 2:11-cv-118 (E.D. Wis. Mar. 25, 2013), ECF No. 166 ("*Jury Instructions*").

After the jury awarded Nordock $46,825 as a reason-able royalty and found that Systems' profits were $0, Nordock asked the court to amend the judgment regard-ing damages or order a new trial. In its motion, Nordock argued that Systems' own expert—Richard Bero—calculated a net operating profit of at least $433 per unit for the hydraulic levelers. The district court rejected

Nordock's arguments on grounds that the jury received extensive damages instructions and chose to award Nordock compensatory damages in the form of a reasonable royalty. *Rule 59 Decision*, 2014 WL 3786277, at *4.

On appeal, Nordock argues that: (1) the district court relied on Systems' legally deficient "cost savings" methodology to determine that Systems' profits were less than $15 per dock leveler; (2) the record is devoid of any evidence that Systems' profits on its sales of the infringing levelers was $0; and (3) the district court erred in its interpretation of the jury instructions. We agree with Nordock on each point.

## A. "Cost Savings Methodology"

Nordock argues that the district court's decision denying a new trial on damages was erroneous because it relied upon Bero's so-called "cost savings methodology." At trial, Bero testified that, "because Nordock had not established that it incurred lost profits, they were not applicable damages." *Rule 59 Decision*, 2014 WL 3786277, at *4. Bero opined that royalty damages were the proper form of damages, and that $15 per allegedly infringing dock leveler was appropriate. *Id.*

In the alternative, Bero testified that, "as an alternative form of damages, the profits associated with the lip and hinge plate—the ornamental design of the lip and hinge plate is approximately $15 or less per dock leveler." Tr. of Jury Trial–Test. of Richard Bero held on Mar. 21-22, 2013 at 15:19-23, *Nordock, Inc. v. Sys., Inc.*, No. 2:11-cv-118 (E.D. Wis. Mar. 25, 2013), ECF No. 178. Bero further explained that:

> The alternative is the profits attributable to—that Systems earned on its lip and hinge plate ornamental design. And the *cost savings* that Systems received as a result of using that design are something again less than $15 per unit. So on that lip

and hinge plate design the profitability attributa-
ble that Systems earned—this is defendant's prof-
its—was something less than $15 per unit. It's
the same number as the royalty damages. It's ac-
tually less than that.

Now again, I understand Nordock's position is
that it should get the entire dock leveler, and to
the extent that's the case the number would be,
you know, higher obviously.

*Id.* at 69:13-23 (emphasis added). Based on Bero's testi-
mony, the district court found that the jury was free to
select a reasonable royalty as the appropriate form of
damages. *Rule 59 Decision*, 2014 WL 3786277, at *4
(stating that, "according to Bero, Systems' profit on the
accused products was less than $15 per unit").

We conclude that the district court erred in relying on
Bero's "cost savings" methodology, rather than on the
gross profits methodology required by law and described
in the jury instructions. There are several problems with
this so-called "cost savings" approach. First, it is incon-
sistent with the fact that § 289 provides for recovery of
the infringer's total profits. Indeed, this court has inter-
preted § 289 to require "the disgorgement of the infring-
ers' profits to the patent holder, such that the infringers
retain no profit from their wrong." *Nike Inc. v. Wal-Mart
Stores, Inc.*, 138 F.3d 1437, 1448 (Fed. Cir. 1998). Profits
are based on gross revenue after deducting certain allow-
able expenses. *Id.* at 1447 (noting that the district court
subtracted certain expenses from revenues to arrive at a
profit figure). Consistent with this precedent, the district
court instructed the jury that:

Nordock is entitled to all profit earned by Systems
that is attributable to the infringement. Profit is
determined by deducting certain expenses from
gross revenue. Gross revenue is all of Systems'
receipts from using the design in the sale of the

> infringing products. Nordock has the burden of
> proving Systems' gross revenue by a preponder-
> ance of the evidence.

*Jury Instructions* at 41. Rather than using gross revenue
as a starting point, Bero used his "cost savings" methodol-
ogy, which was limited to the "lip and hinge plate" portion
of the dock levelers. In doing so, Bero ignored the fact
that total profits are based on the article of manufacture
to which the D'754 Patent is applied—not just a portion of
that article of manufacture.

Systems maintains that Nordock is not entitled to re-
cover profits on the entire dock leveler, but rather only
those profits attributable to the "lip and hinge plate"
shown in the D'754 Patent. To the contrary, however, we
recently reiterated that apportioning profits in the context
of design patent infringement is not appropriate, and that
"Section 289 explicitly authorizes the award of total profit
from the article of manufacture bearing the patented
design." *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983,
1001-02 (Fed. Cir. 2015) (rejecting Samsung's attempt to
limit the profits awarded to the "portion of the product as
sold that incorporates or embodies the subject matter of
the patent"); *see also Nike*, 138 F.3d at 1441-42 (discuss-
ing the legislative history of § 289 and Congress's decision
to remove "the need to apportion the infringer's profits
between the patented design and the article bearing the
design").[1]

---

[1]     Decisions predating this court's formation similar-
ly concluded that § 289 authorizes the award of the in-
fringer's total profits. *See e.g., Schnadig Corp. v. Gaines
Mfg. Co.*, 620 F.2d 1166, 1171 (6th Cir. 1980) (Section 289
"provides a single measure of relief applicable to all cases
of design patent infringement," "assures that the profit to
the wrongdoer is fully extracted," and "place[s] the pa-

The D'754 Patent is entitled "Lip and Hinge Plate for a Dock Leveler," and makes clear that the claimed design is applied to and used with a dock leveler. And, as Nordock points out, the evidence and testimony at trial demonstrated that the levelers are welded together. Importantly, there was no evidence that Systems sold a "lip and hinge plate" separate from the leveler as a complete unit. Appellant Br. 30. We therefore reject Systems' attempts to apportion damages to the lip and hinge plate where it is clear that the article of manufacture at issue is a dock leveler. Systems' "article of manufacture" arguments also fail in light of the district court's § 289 jury instruction, which correctly stated that "Systems' 'total profit' means the entire profit on the sale of the article to which the patented design is applied, or with which it is used and not just the portion of profit attributable to the design or ornamental aspects of the patent." *Jury Instructions* at 41.

Bero used an improper methodology and his testimony was premised on an incorrect understanding of the relevant article of manufacture. This testimony confused and misled both the district court and the jury into believ-

---

tentee in the shoes of the infringer."). For example, in *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 495 (D. Minn. 1980), the court rejected the defendant's argument that a design patentee can only recover profits under § 289 "which are attributable to the design or ornamental aspects of the patent, rather than the entire profits on the sale of the patented article." *Id.* The court concluded that the use of the phrase "total profit" in the statute "undermines defendants' arguments, as it is unlikely that Congress would have used such all encompassing language if it intended that a design patentee could only recover profits attributable solely to the design or ornamental qualities of the patented article." *Id.*

ing that Nordock was only entitled to recover Systems' profits attributable to a small portion of the dock levelers at issue. Because no reasonable jury could have believed Bero's testimony that profits were less than $15 per unit, and because the district court erred in relying on Bero's "cost savings" methodology in denying Nordock's motion for a new trial on § 289 damages, we find it necessary to reverse and remand this case to the district court for a new trial on damages. On remand, Nordock is entitled to a proper determination of Systems' profits based on the appropriate gross revenue methodology, not the so-called "cost savings" approach.

### B. Evidence of Systems' Total Profits

Nordock also argues that there is no credible evidence that Systems' total profits for its sales of the infringing levelers were $0. We agree.

As noted, the jury found infringement with respect to 1,457 of Systems' hydraulic dock levelers. On the verdict form, the jury awarded Nordock a reasonable royalty of $46,825, and indicated that Systems' profits were $0. According to Nordock, however, the manifest weight of the evidence shows that Systems' profits were over $600,000 for its infringing LHP/LHD levelers.

First, Nordock points to Dr. Smith's testimony and expert report which indicated that Systems had net pretax profits of $912,201 on its sales of 1,514 LHP/LHD levelers. Appellant Br. 36. In his expert report, Bero found that Systems' operating profit per unit for its hydraulic levelers was $433. J.A. 6552. And, at trial, Bero's damages slide show indicated that Systems sold 1,457 accused hydraulic dock levelers. J.A. 6684. Taken together, therefore, Bero's report and testimony reveal that Systems' total profits on the infringing hydraulic levelers were at least $630,881. Based on this evidence of record, Nordock argues that Systems' total profit for the LHP/LHD levelers is either $630,881, using Bero's infor-

mation, or $912,201, using Dr. Smith's information. Under either formulation, the evidence showed that Systems' profits were over $630,000—a far cry from $0.

Next, Nordock argues that, even if the jury disregarded the experts' testimony with respect to gross revenue and relied on Bero's "cost savings" methodology, the jury should have found that Systems had *some* profits on its infringing LHP/LHD levelers—not $0. Appellant Br. 38. Indeed, Bero testified that Systems' use of the lug hinge saved roughly $5 per unit on the manufacture of the hydraulic levelers. J.A. 6707. Systems responds that the jury was free to discount Dr. Smith's opinion and adopt Bero's opinion that Systems' profits associated with "the ornamental design of the lip and hinge plate is approximately $15 or less per dock leveler." Appellee Response Br. 25.

While Systems is certainly correct that the jury is entitled to believe one expert over the other, as previously discussed, Bero's attempt to limit profits to only the "lip and hinge plate" is inconsistent with § 289. Nordock is entitled to a determination of Systems' *total* profits for the sale of the levelers found to infringe. Because there is no credible evidence that Systems' profits on its sales of the 1,457 infringing levelers were $0, we conclude that the jury's verdict was "against the manifest weight of the evidence" such that a new trial is warranted. *Glickenhaus*, 787 F.3d at 414.

## C. Jury Instructions

Finally, Nordock argues that the district court misinterpreted the "Patent Damages Burden of Proof" jury instruction "to mean that if there was a determination of damages under § 284, then there need be no determination of damages under § 289." Appellant Br. 46. The district court correctly instructed the jury as follows:

> For design patents, Nordock can prove either ac-
> tual damages, known as compensatory damages,
> or it may prove Systems' profits as its measure of
> potential recovery with respect to the sale of each
> unit of an infringing product. As compensatory
> damages, Nordock may prove either its own lost
> profits, or a reasonable royalty for the design pa-
> tent. Nordock is not entitled to recover both com-
> pensatory damages and Systems' profits on the
> same sale.

*Jury Instructions* at 39. As previously discussed, the
court also instructed the jury that "[i]f you find infringe-
ment, and do not find the '754 Design Patent is invalid,
you are to award Nordock Systems' total profit attributa-
ble to the infringement." *Id.* at 41.

   Based on these instructions, Nordock contends that it
"is entitled to Systems' total profits for the infringing LHP
and LHD levelers under § 289 because these profits are
greater than the amount found under § 284 and are in
excess of the minimum fixed by § 289." Appellant Br. 47.
Systems responds that Nordock waived any objections it
might have had to the court's instructions by failing to
object to them when given. Systems further argues that,
under the district court's instructions, "the jury had the
option of awarding either a reasonable royalty or Systems'
profits." Appellee Response Br. 46.

   Counsel for Nordock conceded at oral argument that
he did not object to either the burden of proof instruction
or the § 289 instruction because they are accurate state-
ments of the law. Instead, counsel maintains on appeal
that the district court misinterpreted the jury instructions
to read out § 289. Oral Argument at 1:50-2:17, *available
at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=
2014-1762.mp3 ("We didn't object to the 289 jury instruc-
tion because it specifically states that Systems' profits
w[ere] to be determined by gross revenues. We have no

problem with that at all.  With respect to the jury instruc-
tion—the burden of proof jury instruction—I believe it
reads correctly.  The judge is misinterpreting it to basical-
ly read out § 289.").

The record reveals that both the district court and the
jury were confused with respect to the interplay between
§ 284 and § 289.  In its decision denying Nordock's motion
for a new trial on damages, the district court explained
that the jury was instructed that it could award Nordock
compensatory damages "*or* it could recover Systems'
profits as a measure of potential recovery with respect [to]
the sale of each unit of an infringing product."  *Rule 59
Decision*, 2014 WL 3786277, at *4 (emphasis added).  The
court then recognized Dr. Smith's testimony that Systems'
profits on the sale of the infringing products were
$845,954, and Bero's contrary calculation that Systems'
profits would have been less than $91,650.  *Id.*  Though
the court acknowledged that there was evidence of Sys-
tems' profits (as distinct from the evidence of Nordock's
lost profits), it explained that, "the jury heard testimony
regarding lost profits, [but] it chose to award a reasonable
royalty.  The jury was free to discredit Smith's testimony
regarding Nordock's lost profits or find that Bero's testi-
mony was more convincing and persuasive."  *Id.*

The district court blended its discussion of Nordock's
compensatory damages with the evidence of Systems'
profits.  In doing so, the court overlooked a critical point:
the fact that Nordock could recover only one type of
damage on each sale—either (1) Nordock's lost profits or a
reasonable royalty *or* (2) Systems' total profits—did not
absolve the jury of its obligation to determine the amount
of Systems' total profits for purposes of determining
damages under § 289.  To the extent the district court
believed that the jury could simply choose between award-
ing damages under § 284 or § 289, it is incorrect.  As the
court's jury instructions correctly stated, if the jury finds
infringement, and does not find the D'754 Patent invalid,

it is "to award Nordock Systems' total profit attributable to the infringement." *Jury Instructions* at 41. Only where § 289 damages are not sought, or are less than would be recoverable under § 284, is an award of § 284 damages appropriate. On remand, the court will have an opportunity to revisit and restructure its jury instructions on damages consistent with this opinion so as to provide the jury with a clear and appropriate understanding of its obligation to determine Systems' profits pursuant to § 289.

## II. SYSTEMS' CROSS-APPEAL

Systems cross-appeals from the district court's decisions denying its motion for JMOL that the D'754 Patent is invalid as purely functional. Systems also argues that the district court erred in denying its motion for JMOL of non-infringement with respect to the 6 ½ foot dock leveler. We address these issues in turn.

### A. Validity

As a threshold matter, Nordock argues that Systems did not preserve the issue of validity for appeal because it did not raise it in a Rule 50 or Rule 59 motion. According to Nordock, because Systems failed to file a motion contesting the sufficiency of the evidence with respect to the validity of the D'754 Patent, this court should reject Systems' cross-appeal challenging validity in its entirety.

Systems responds that it moved for JMOL that the D'754 Patent is invalid twice before the case went to the jury and again after the verdict was reached and read in open court. As explained below, because we find Systems' Rule 50(b) motion inadequate, we conclude that Systems has not preserved its validity arguments for appeal.

Rule 50 of the Federal Rules of Civil Procedure "sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial and establishes two stages for such challenges—prior to submission

of the case to the jury, and after the verdict and entry of judgment." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 399 (2006). Rule 50(a) allows a party to challenge the sufficiency of the evidence before the case is submitted to the jury. Under that rule, the district court can enter judgment against a party who has been fully heard on an issue during a jury trial if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a).

After the verdict and entry of judgment, the losing party may renew its challenge to the sufficiency of the evidence under Rule 50(b). "A party's failure to comply with Rule 50(b) forecloses any challenge to the sufficiency of the evidence on appeal." *Consumer Prods. Research & Design, Inc. v. Jensen*, 572 F.3d 436, 437 (7th Cir. 2009). "A postverdict motion is necessary because '[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." *Unitherm*, 546 U.S. at 401 (citation omitted). Absent a Rule 50(b) motion, "an appellate court is 'powerless' to review the sufficiency of the evidence after trial." *Ortiz v. Jordan*, 562 U.S. 180, 189 (2011) (citing *Unitherm*, 546 U.S. at 405).

"[T]here is no requirement that [a] Rule 50 motion be in writing and be filed with the court; oral motions, in which a party specifically invokes the rule, or perhaps even colloquy with the court, fulfill the requirements of Rule 50 in some instances." *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 156 (4th Cir. 2012). Accordingly, although "the better practice is for the motion to be in writing . . . an oral motion on the record will suffice." *Moran v. Raymond Corp.*, 484 F.2d 1008, 1010 n.1 (7th Cir. 1973). If counsel moves for JMOL before the case is submitted to the jury, counsel "must specify the judgment

sought and the law and facts that entitled the movant to the judgment." Fed. R. Civ. P. 50(a)(2). After the verdict, counsel must sufficiently renew the same. Fed. R. Civ. P. 50(b).

Here, at the close of Nordock's case in chief, counsel for Systems orally moved for JMOL that the D'754 Patent is invalid. Counsel stated that:

> We have elicited from the witnesses that have testified that they are unable to identify any ornamental features in the drawings that are part of the patent in dispute here. Nobody has been able to point to anything with specificity. The only answer we were able to get was these things are – it's the overall appearance, but Professor Visser himself testified under oath that the general configuration of a dock leveler with an articulated hinge, et cetera, is, in fact, functional.

> Mr. Gleason himself testified at deposition that the entire hinge is functional. And, in fact, the witnesses provided by the plaintiff have confirmed themselves that the design, the alleged design is functional. Nobody's been able to argue anything ornamental. Point to anything ornamental. For that reason we believe that no reasonable jury could find that this patent is anything other than functional and hence invalid.

Tr. of Jury Trial Excerpt: Def.'s Mot. at Close of Pl.'s Case held on Mar. 21, 2013 at 4:12-5:5, *Nordock, Inc. v. Sys., Inc.*, No. 2:11-cv-118 (E.D. Wis. Apr. 3, 2015), ECF No. 234. The district court denied Systems' motion with respect to validity, finding that "the jury should consider it." *Id.* at 15:20.

Before the case went to the jury, Systems' counsel renewed its motions for JMOL on the record. With respect to functionality, counsel maintained that "there's an

absence of any evidence that anything is ornamental." Tr. of Jury Trial–Vol. 6 held on Mar. 25, 2013 at 1234:25-1235:1, *Nordock, Inc. v. Sys., Inc.*, No. 2:11-cv-118 (E.D. Wis. Apr. 3, 2015), ECF No. 233. Counsel further argued that, "[i]f you remove each of the admittedly functional elements of the drawing, you end up with a blank sheet of paper." *Id.* at 1235:8-10. The court denied Systems' motion, concluding that a reasonable factfinder could determine that the overall design is not dictated by function. *Id.* at 1240:6-10.

Because counsel for Systems specifically addressed the insufficiency of the evidence with respect to the ornamental features of the D'754 Patent, we conclude that these motions were sufficient under Rule 50(a). The question, therefore, is whether Nordock's post-trial motion was sufficient to preserve the issue for appeal pursuant to Rule 50(b). "Because the sufficiency of post-judgment motions is a procedural matter not unique to patent law, the law of the Seventh Circuit sets the standard by which we judge the adequacy of" Systems' motion. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1347 (Fed. Cir. 2005).

Rule 7(b)(1) of the Federal Rules of Civil Procedure requires that motions must "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B). The Seventh Circuit has determined that the rule's standard for particularity means "reasonable specification." *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001) (quoting *Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977)). "The purpose of the particularity requirement in Rule 7 is to afford notice of the grounds and prayer of the motion to both the court and to the opposing party, providing that party with a meaningful opportunity to respond and the court with enough information to process the motion correctly." *Registration Control Sys., Inc. v. Compusystems, Inc.*, 922 F.2d 805, 807 (Fed. Cir. 1990).

The record reveals that, after the jury reached its ver-dict, the district court asked counsel whether there were any post-trial motions. At that point, counsel for Systems had the following exchange with the court:

> MR. MANN: Well, I guess at this point, Judge, just as a routine matter whatever motions we made during the trial, JMOL and so forth, we would renew those motions to the extent that they are necessary. . . .
>
> Everything we made we renew. I'm not sure what that is, but just for the record whatever we said before—
>
> THE COURT: Yeah, and everything the Court said about those is the same also, so—
>
> MR. MANN: Okay. Fair enough, Judge.

Tr. of Jury Trial–Vol. 7 held on Mar. 26, 2013 at 1305:12-1306:5, *Nordock, Inc. v. Sys., Inc.*, No. 2:11-cv-118 (E.D. Wis. Apr. 3, 2015), ECF No. 235. Thereafter, although Systems filed a Rule 59(e) motion with respect to in-fringement, it did not file any post-verdict motion as to validity.

We conclude that counsel for Systems failed to renew the motion for JMOL as to validity with sufficient particu-larity to satisfy the Seventh Circuit's "reasonable specifi-cation" standard. *Fort James*, 412 F.3d at 1347 (quoting *Martinez*, 556 F.2d at 819-20). While there is no require-ment that a Rule 50(b) motion be in writing, it is counsel's responsibility to ensure that the record is sufficiently clear for both the district court and the appellate court reviewing the record to understand the grounds therefor. Merely renewing "whatever w[as] said before" is inade-quate, particularly when qualified with the statements that the renewal is only "to the extent necessary" and that counsel is unaware of what the motions were. We there-

fore may not consider Systems' challenge to the sufficiency of the evidence with respect to validity.

Even if we were to consider Systems' arguments, however, we would conclude that substantial evidence supports the jury's finding that Systems failed to prove that the D'754 Patent is invalid.  It is well established that a design patent "only protects the novel, ornamental features of the patented design."  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).  If a patented design is "primarily functional rather than ornamental, the patent is invalid."  *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) (citation and quotation marks omitted).  The determination of whether a patented design is dictated by function "must ultimately rest on an analysis of its overall appearance." *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997).  We have recognized that assessing various factors may help determine whether a claimed design, as a whole, is dictated by functionality:

> whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

*PHG Techs.*, 469 F.3d at 1366 (quoting *Berry Sterling,* 122 F.3d at 1456); *see also High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1315 (Fed. Cir. 2013) ("Assessing [these five] factors may help determine whether a claimed design, as a whole, is 'dictated by' functional considerations.").

Here, the testimony and evidence at trial demonstrated that: (1) Nordock intended the design to be distinctive

and ornamental; (2) the header plate is not necessary to the function of a dock leveler; (3) there is a wide range of alternate designs available, including an open lug frontend design and a standard piano hinge design; and (4) the alternate designs available achieve the same utilitarian purpose as the patented design. *See* Tr. of Jury Trial–Vol. 2 held on Mar. 19, 2013 at 152:24-153:8, *Nordock, Inc. v. Sys., Inc.*, No. 2:11-cv-118 (E.D. Wis. Feb. 6, 2015), ECF No. 231; *see also* Tr. of Jury Trial–Vol. 1 held on Mar. 18, 2013 at 59:21-60:7, *Nordock,* No. 2:11-cv-118 (E.D. Wis. Feb. 6, 2015), ECF No. 230. On this record, there was substantial evidence from which a jury could conclude that the claimed design is not dictated by function.

## B. Infringement

Systems also argues that the district court erred by denying its motion for JMOL of non-infringement of the 6 ½ foot dock leveler. To the extent Systems cross-appeals from the district court's denial of its motion for JMOL of non-infringement, that argument was not properly preserved for appeal for the same reason discussed in the context of Systems' motion for JMOL of invalidity: counsel's Rule 50(b) motion was insufficient. Although Systems did not file a post-verdict motion with respect to validity, it did file a Rule 59(e) motion seeking to amend the judgment on grounds that no evidence was presented at trial regarding the accused 6 ½ foot dock levelers. The district court denied that motion, and Systems' notice of cross-appeal indicated that it was appealing from several adverse rulings, including the district court's denial of its Rule 59(e) motion. *See* Notice of Cross Appeal, *Nordock, Inc. v. Systems, Inc.*, No. 2:11-cv-118 (E.D. Wis. Aug. 29, 2014), ECF No. 215. Therefore, although Systems' infringement arguments on appeal are framed in the context of JMOL, we are reviewing the district court's denial of Systems' Rule 59(e) motion to alter or amend the judgment. We apply regional circuit

law in reviewing a motion under Rule 59(e). *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1378-79 (Fed. Cir. 2003). The Seventh Circuit reviews the denial of a Rule 59(e) motion for abuse of discretion. *Zivitz v. Greenberg*, 279 F.3d 536, 539 (7th Cir. 2002).

To prevail on a Rule 59(e) motion to amend the judgment, a party must "'clearly establish' (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Blue v. Hartford Life & Accident Ins. Co*., 698 F.3d 587, 598 (7th Cir. 2012) (citing *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006)). The Seventh Circuit has described "manifest error" as "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co*., 224 F.3d 601, 606 (7th Cir. 2000). Importantly, Rule 59(e) is not a vehicle for reasserting previously rejected arguments. *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) ("Yet we have held that a Rule 59(e) motion is not to be used to 'rehash' previously rejected arguments . . . .").

The district court denied Systems' motion to amend on grounds that "the trial testimony and exhibits support the jury's finding that Systems' 6-, 6 ½-, and 7-foot wide LHP/LHD levelers infringed Nordock's '754 Patent." *Rule 59 Decision*, 2014 WL 3786277, at *2. The court explained that the patent pertains to the "front end" of a dock leveler, and the jury saw evidence and heard testimony from Nordock's president and CEO that "the 6-foot leveler and the middle 6-foot portion of the 6 ½- and 7-foot levelers are the same." *Id.* Because Systems offered no evidence to the contrary, the court concluded that a jury could reasonably infer that there is no significant difference between the three sizes of levelers. *Id.* And, because both Systems' and Nordock's brochures showed only the 6 and 7 foot levelers, the court found that the jury could reasonably infer from the omission of the 6 ½-foot leveler

that it is "substantially similar to the 6- and 7-foot levelers." *Id.*

Systems does not rely upon newly discovered evidence. Instead, it argues that Nordock presented zero evidence at trial regarding Systems' 6 ½ foot dock leveler. According to Systems, Nordock's technical expert admitted that he did not review any actual Systems dock leveler in preparing his report, and instead relied on Systems' brochures, none of which included pictures of the 6 ½ foot leveler. Systems also points to testimony from its Vice President—Mike Pilgrim—who identified differences in construction that make the 6 ½ foot leveler distinct from both the 6 and 7 foot versions.

We conclude that the district court did not abuse its discretion by denying Systems' motion to amend the judgment with respect to infringement. Even if there was no direct evidence presented for the 6 ½ foot dock leveler, the jury could reasonably infer infringement based on the evidence submitted at trial. We have recognized that a "patentee may prove direct infringement . . . by either direct or circumstantial evidence." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006). Indeed, "[t]here is no requirement that direct evidence be introduced, nor is a jury's preference for circumstantial evidence over direct evidence unreasonable *per se.*" *Id.* Given the trial testimony that the middle 6-foot portion of each leveler is identical, the jury could have reasonably inferred that all three sizes of the accused dock levelers infringed the D'754 Patent. We, thus, conclude that Systems failed to establish that the court "committed a manifest error of law or fact." *Blue*, 698 F.3d at 598.

## Conclusion

For the foregoing reasons, we conclude that the district court erred in denying Nordock's motion for a new trial to assess damages pursuant to 35 U.S.C. § 289. We

therefore vacate the jury's damages award and remand for a new trial on damages.  With respect to Systems' cross-appeal, we affirm the district court's decisions denying Systems' motion for JMOL as to validity and its Rule 59(e) motion with respect to infringement of the 6 ½ foot dock leveler.  Accordingly, we affirm in part, vacate in part, and remand for further proceedings.

### AFFIRMED IN PART, VACATED IN PART, AND REMANDED