**2014-1762, -1795**

# United States Court of Appeals
# for the Federal Circuit

NORDOCK, INC.,

*Plaintiff–Appellant,*

*v.*

SYSTEMS INC, DBA PoweRamp, DBA DLM Inc, DBA McGuire,

*Defendant–Cross-Appellant.*

*Appeals from the United States District Court for the Eastern District of Wisconsin in Case No. 11-CV-0118, Judge Rudolph T. Randa.*

**BRIEF FOR PLAINTIFF-APPELLANT**

JEFFREY S. SOKOL
SOKOL LAW OFFICE
828 N. Broadway, Suite 400
Milwaukee, WI  53202
Telephone: (414) 272-7200
Facsimile: (414 272-7204

*Attorney for Plaintiff-Appellant*

NOVEMBER 10, 2014

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Nordock, Inc. v. Systems, Inc.

No.    2014-1762

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant, Nordock, Inc., certifies the following:

1.  The full name of every party represented by me is:

    NORDOCK, INC.

2.  The name of the real party in interest represented by me is:

    NONE

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are:

    NONE

4.  The names of all law firms and the partners or associates that appeared for the parties now represented by me in the trial court or are expected to appear in this court are:

    SOKOL LAW OFFICE
    JEFFREY S. SOKOL
    O'NEIL, CANNON, HOLLMAN, DEJONG AND LAING, S.C.
    GREGORY W. LYONS


November 10, 2014                    /s/ Jeffrey S. Sokol_____
                                     Jeffrey S. Sokol
                                     Counsel for Appellant

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ................................................................i

TABLE OF AUTHORITIES ................................................................v

STATEMENT OF RELATED CASES ....................................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE.............................................................2

STATEMENT OF FACTS ................................................................13

SUMMARY OF THE ARGUMENT ....................................................21

ARGUMENT ................................................................................22

I.    STANDARD OF REVIEW/RULE 59 STANDARDS .................................22

II.   DISTRICT COURT ERRED WHEN IT DENIED NORDOCK'S
      MOTION FOR A NEW TRIAL ON §289 DAMAGES ..............................25

      A.    Legal Standard....................................................................25

      B.    District Court Decision Was Clearly Erroneous ................................26

            1.    Manifest Weight of Credible Evidence Shows
                  Systems' Total Profits Were Over $600,000……………..……28

                  a.    Parties Agree Systems Sold Over 1,450
                        Infringing LHP/LHD Leveler Units……………..……28

                  b.    Article of Manufacture To Which Patented 'D754
                        Design Is Applied And Used Is A "Dock Leveler"……28

1.  'D754 Patent states and shows design is
applied to and used with a "Dock Leveler" ............29

2.  Trial evidence and testimony show
patented 'D754 design is applied to
and used with a "Dock Leveler" ..............................30

3.  Systems' assertion that "Article of Manufacture"
to which patented 'D754 design is applied and
used is a "Lip And Hinge Plate" lacks merit.............32

c.  Total Profits Are Based on "Gross Revenues".............. 33

d.  Gross Revenues For Systems' LHP/LHD Levelers
Were Over $3,600,000....................................................34

e.  Systems' Total Profits For LHP/LHD Levelers
Were Over $600,000........................................................35

2.  Trial Record Does Not Support Finding That
Systems' Total Profits Were $0 ................................................38

3.  District Court Reliance On Bero's "Cost Savings"
Methodology To Support Finding of $0 Profits Is Erroneous..39

a.  District Court Relied on Bero's "Cost Savings"
Methodology.................................................................39

b.  Total Profits Are Not Based On Asserted
"Cost Savings"..............................................................40

1.  Bero's "Cost Savings" Methodology is
Contrary to Congress' Intent for §289 ................42

2.  Bero's "Cost Savings" Methodology is
Contrary to §289 Jury Instructions......................43

c.  Bero Impermissibly Focused on Ornamental
Aspects of Patented 'D754 Design.................................44

4.      District Court Misinterpretation of Patent Damages Jury Instructions Is Error ..................................................45

        a.      District Court Misconstrued the Jury Instructions .........46

        b.      The Jury Instructions Conflict Under District Court Interpretation...................................................................49

5.      Systems' Closing Arguments Misled The Jury .......................50

6.      District Court Analysis Is Incongruous ...................................52

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..............................52

ADDENDUM

CERTIFICATE OF SERVICE CERTIFICATE OF COMPLIANCE WITH TYPE-COLUMN LIMITATIONS, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

# TABLE OF AUTHORITIES

**CASES** *Page(s)*

*Bergstrom v. Sears, Roebuck and Co.*,
    496 F. Supp. 476 (D. Minn. 1980 ................................................................37, 47

*Bernhardt L.L.C. v. Collezione Europa USA, Inc.*,
    436 F. Supp. 2d 739 (M.D.N.C. 2006) ..............................................................47

*Boyd v. Tornier, Inc.*,
    656 F.3d 487 (7th Cir. 2011) ..............................................................................24

*Byrd v. Blue Ridge Rural Elec. Coop., Inc.*,
    356 U.S. 525 (1958).............................................................................................24

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
    295 F. 3d 1277 (Fed. Cir. 2002) ...................................................................47, 48

*Cybor Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed.Cir. 1998) ..................................................................... 22-23

*Gasperini v. Ctr. for Humanities, Inc.*,
    518 U.S. 415 (199624

*Henry Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp.,*
    270 F.2d 635 (5th Cir. 1959.............................................................23, 33, 37, 47

*Javier v. City of Milwaukee*,
    670 F.3d 823 (7th Cir. 2012) ..............................................................................49

*Junker v. HDC Corp.*,
    2008 WL 3385819 (N.D. Cal. July 28, 2008) .............................................26, 29

*Mejia v. Cook County, Ill.*,
    650 F. 3d 631 (7th Cir. 2011) .............................................................................24

*Midwest Precision Servs., Inc. v. PTM Industries Corp.*,
887 F.2d 1128 (1st Cir. 1989)....................................................49, 50

*Montgomery Ward & Co. v. Duncan*,
311 U.S. 243 (1940).......................................................................24

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
138 F.3d 1437 (Fed. Cir.1998) ................... 23, 25, 26, 33, 34, 37, 41, 42, 48, 51

*Oiness v. Walgreen Co.*,
88 F.3d 1025 (Fed. Cir. 1992)(Unpublished Disposition)..................................24

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
2014 WL 4185297 (M.D. Fla. Aug. 22, 2014)..................................................25

*Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*,
250 F.Supp. 2d 333 (S.D.N.Y. 2003) .................................................37

*Romo v. Gulf Stream Coach, Inc.*,
250 F.3d 1119 (7th Cir. 2001) ........................................................24

*Schnadig Corp. v. Gaines Mfg. Co., Inc.*,
620 F.2d 1166 (6th Cir. 1980) ....................................................26, 33

*Sheldon v. Metro-Goldwyn Pictures*, Inc.,
106 F.2d 45 (2d Cir.1939), *aff'd*, 309 U.S. 390 (1940) ...........................37

*Shockley v. Arcan, Inc.*,
248 F.3d 1349 (Fed. Cir. 2001) ......................................................23

*Sosebee v. Astrue*,
494 F.3d 583 (7th Cir. 2007) ........................................................23

*United States v. Ford Motor Co.*,
463 F.3d 1267 (Fed. Cir. 2006) ......................................................41

*Weinberg v. Chicago*,
   310 F.3d 1029 (7th Cir. 2002) .........................................................23

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) ....................................................22, 23

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) ................................................22, 41

## STATUTES

28 U.S.C. §1295(a) ...........................................................................1

28 U.S.C. §331 ..................................................................................1

28 U.S.C. §1338(a) ...........................................................................1

35 U.S.C. §100, *et seq*....................................................................1

35 U.S.C. §289.........................................................................*passim*

## OTHER AUTHORITIES

H.R. Rep. No. 1966 at 1-3 (1886), *reprinted in* 18 Cong. Rec. 834 (1887)............52

## STATEMENT OF RELATED CASES

Defendant-Appellee filed a Cross Appeal No. 14-1795 in this appeal.

## JURISDICTIONAL STATEMENT

The District Court had federal question jurisdiction pursuant to 28 U.S.C. §§1331 and 1338(a) because this case arises under the patent statutes of the United States (35 U.S.C. §100, et seq.).

This Court has jurisdiction pursuant to 28 U.S.C. §1295(a), which provides this Court with exclusive jurisdiction over appeals where the District Court's jurisdiction was based, in whole or in part, on 28 U.S.C. §1338.

The July 31, 2014 Amended Judgment in a Civil Case ("7/31/14 Judgment") (A18-19) is a final judgment disposing of all parties' claims. The Notice of Appeal was filed on August 19, 2014. (A5742).

## STATEMENT OF THE ISSUES

1.    Did the District Court err when it adopted a finding that Systems' total profits under §289 were $0 for sales of over 1,450 infringing dock levelers?

2.    Did the District Court err by denying a motion for new trial to properly determine §289 damages when the manifest weight of the credible evidence showed that Systems' total profits were over $600,000?

3.    Did the District Court err by relying on a "cost savings" methodology to determine total profits contrary to the "gross revenue" methodology set forth in the §289 jury instruction?

4.    Did the District Court err when it interpreted the jury instructions to mean no determination of §289 damages was necessary even though the §289 instruction states that Nordock "seeks" Systems' profits and if you [the jury] find infringement and validity "you are to award" Nordock Systems' total profits?

## STATEMENT OF THE CASE

On January 28, 2011 plaintiff Nordock, Inc. ("Nordock"), a Canadian company filed suit against defendant Systems , Inc. ("Systems"), a Wisconsin company for infringing U.S. Patent No. D579,754 ("'D754 Patent"). (A42and 6321-26). The Complaint asserted that Systems, without authorization by Nordock, started making, advertising and selling LMP, LHP, LMD and LHD Series dock levelers with a lip, lug and header plate design covered by the 'D754 Patent. (A44). Systems' LHP and LHD levelers are hydraulically operated. Its LMP and LMD levelers are mechanically operated. [1,2] (A66-73).

---

[1] Systems' hydraulic LHP/LHD levelers are essentially the same. They have different identifying labels on them. Similarly, its mechanical LMP/LMD levelers are essentially the same. (A5557-58 and 6598).

[2] PoweRamp and DML are trade names of Systems. (A5799). The "H" stands for hydraulic, the "M" stands for mechanical, the "P" stands for PoweRamp and the "D" stands for the DML. (A5814-15).

On July 21, 2011, the District Court entered its Scheduling Order for the case, which reads in part as follows:

> 7. On or before **June 20, 2012**, the parties must notify each other of any expert witnesses they may call at trial, and must submit with that notice a report containing all the information required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, or the moving party will be barred from calling such witnesses as experts at trial.

> 8. On or before **July 20, 2012**, the parties must notify each other of any rebuttal expert witnesses they may call at trial, and must submit with that notice a report containing all the information required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, or the moving party will be barred from calling such rebuttal witnesses as experts at trial. (Emphasis supplied). (A85-87).

On September 8, 2011, a settlement conference was held that did not resolve the litigation. (A22 DE16).

Although Systems' president would not settle the case. (A574 and 579), Systems, without Nordock's authorization, continued to sell its accused hydraulic and mechanical dock levelers through trial. (A6684).

On June 14, 2012, Nordock filed a motion to compel the production of Systems' financial and profit records for its accused levelers. Nordock's motion also sought to supplement its expert report on §289 damages after Systems produced these records. (A23 DE21and A172-182).

On June 20, 2012, Nordock identified its damages expert, Dr. Stan Smith, and produced his expert report ("Original Smith Report"). (A768-779). His report

included lost profits and reasonable royalty opinions. As Systems had not produced its financial records, his report did not determine §289 damages.

Systems did not identify a damages expert or submit a damages expert report by the June 20, 2012 deadline. (A5553). On July 20, 2012, Systems identified its damages rebuttal expert, Richard Bero, and produced his rebuttal report. ("Bero Rebuttal Report"). (A6536-6657). The Bero Rebuttal Report does not state an opinion for §289 damages, but does provide Schedules 1.0, 2.0-2.2, 5.0-5.4 and 6.0 with the following financial information and a "gross revenues" methodology for determining Systems' net pretax profits for its hydraulic LHP/LHD and mechanical LMP/LMD levelers for the years 2009, 2010 and 2011:

> LHP/LHD and LMP/LMD Levelers/Units
> - Quantity/Units Sold
> - Average Sale Price (ASP)
> - Gross Revenue/Total Sales Revenue[3]
> - Cost of Goods Sold
> - Gross Profit
> - Sales, Administration & General Costs (SG&A)
> - **Net Pretax Profit/Operating Profit[4]**
> - Average Net Pretax Profit/Operating Profit Per Unit
>   (A6591-95 and 6617-43)

---

[3] The Bero Rebuttal Report uses "sales" for gross revenue.

[4] Bero's Rebuttal Report uses the term "operating profits" to indicate these amounts are net pretax profits. (A5543).

The Bero Rebuttal Report includes Table 2 and 3 (A6551-52) and Schedule 2.1 (A6593) with the following profit information for Systems' LHP/LHD levelers from May 19, 2009 to October 11, 2011:

**LHP/LHD levelers**
- Quantity/Units Sold                                   622
- Gross Revenue/Sales Revenue          $1,564,952
- Net Pretax Profit/Operating Profit          **$269,196**
- Net Pretax Profit/Average Operating          **$433**

The Bero Rebuttal Report also includes Schedules 2.2 and 6.0 (A6594 and 6639-43) with the following profit information for the LHP/LHD levelers from 2009 to 2011:

**LHP/LHD levelers**
- Quantity/Units Sold                                   908
- Gross Revenue/Sales Revenue          $2,284,599
- Net Pretax Profit/Operating Profit          **$392,986**
- Net Pretax Profit/Average Operating          **$714**

Conspicuously missing from the Bero Rebuttal Report is any sales information for a "Lip and Hinge Plate" sold seperately from the dock levelers. While the report does include Schedules 4.0 to 4.3 (A6597-6600) with Systems' asserted "cost savings" to manufacture the accused levelers, the report does not equate these cost savings to Systems' profits for the levelers.

On August 10, 2012, Nordock moved to bar Systems from calling Mr. Bero as an expert witness for failing to disclose all the facts and information considered in preparing his expert report, and for failing to timely disclose his report on or

before June 20, 2012, each pursuant to Paragraph 7 of the Court's Scheduling Order. (A24-25 DE40, 41 and 55).

On October 5, 2012, the District Court ordered Systems to produce its financial records for its accused levelers, allowed Nordock's damages claim under § 289, and allowed Nordock to supplement the Original Smith Report to include §289 damages. (A27 DE77, A2303-08 and 2325). The Court also allowed Nordock to conduct a supplemental deposition of Mr. Bero at Systems' expense, but denied its motion to strike Mr. Bero as an expert witness. (A2318-2322 and 2326).

On November 5, 1012, Nordock produced Dr. Smith's first supplemental damages report ("First Supplemental Smith Report") (A4031-36), which included §289 damages based on a "gross revenue" methodology using Systems' financial information and the Bero Rebuttal Report. (A6536-6657).

On February 19, 2013, Systems requested that the District Court adopt the Intellectual Property Owners Association Proposed Design Patent Model Jury Instructions, Revised November 11, 2009. (A3754, 3760 and 3814-23), which included the following §289 damages instruction that read in part as follows:

> In this case, [the Plaintiff] has elected to seek [the Defendant]'s profit. If you find infringement, and do not find the [abbreviated patent number] design patent is invalid, **you are to award** [the Plaintiff] [the Defendant]'s total profit attributable to the infringement.
>
> [The Defendant]'s "total profit" means the entire profit on the sale of the article to which the patented design is applied, or with which it is

used and not just the portion of profit attributable to the design or ornamental aspects of the patent.  . . .

[The Plaintiff] is entitled to all profit earned by [the Defendant] that is attributable to the infringement. Profit is determined by deducting certain expenses from gross revenue. **Gross revenue** is all of [the Defendant]'s receipts from using the design in the sale of the infringing products. [The Plaintiff] has the burden of proving [the Defendant]'s gross revenue by a preponderance of the evidence. (Emphasis supplied). (A3823)

On February 19, 2013, pursuant to a further Nordock motion, the Court ordered Systems to supplement its financial records for its accused levelers for the years 2012 and 2013. (A28 DE127 and A3740-42). The order does not grant Systems a right to introduce a new damages opinion or a new "cost savings" methodology for determining §289 damages.

On March 14, 2013, Nordock produced Dr. Smith's second supplemental damages report ("Second Supplemental Smith Report"), which was entered into evidence at trial, and which includes Systems' 2012 and 2013 information in its "gross revenue" methodology to determine §289 damages. (A6360-75).

On March 9, 2013, Systems filed its proposed patent damage jury instructions to the Court (A4165 and 4200-11), including the following §289 instruction that reads in part as follows:

In this case, Nordock has elected to seek Systems' profit. If you find infringement, and do not find the '754 design patent is invalid, **you are to award** Nordock Systems' total profit attributable to the infringement. Systems' "total profit" means the entire profit on the sale of the article to which the patented design is applied, or with

which it is used and not just the portion of profit attributable to the design or ornamental aspects of the patent. . . .

Nordock is entitled to all profit earned by Systems that is attributable to the infringement. Profit is determined by deducting certain expenses from gross revenue. **Gross revenue** is all of Systems' receipts from using the design in the sale of the infringing products. Nordock has the burden of proving Systems' gross revenue by a preponderance of the evidence. (Emphasis supplied). (A4210).

On March 13, 2013, the District Court granted Systems' motion to bar Nordock's expert from giving an opinion on reasonable royalty damages. (A35 DE163, A4213, 4228-31).

A jury trial was held March 18-26, 2013. (A35 DE165, A4481-99). At trial, Nordock's expert, Dr. Stan Smith, gave testimony (A5994 and 6006-10) regarding his Second Supplemental Report (A6360-75) and presented a Summary Sheet (A5760-62 and 6426) for the following asserted damages:

- Nordock's Lost Profits
- Systems' Profits using "gross revenue" methodology

Systems contested lost profits and willful infringement. Systems' expert, Mr. Bero, gave a Slide Show Presentation (A6680-6717) on the following:

- Systems' Profits using "**gross revenue**" methodology.        (A6684-85)
- Reasonable Royalty using "**cost savings**" methodology.        (A6705-13)
- Systems' Profits using "**cost savings**" methodology.[5]        (A6713)

---

[5] While his gross revenue methodology is for the accused levelers as a whole, Mr. Bero's cost savings methodology is for the "Lip and Hinge Plate" portion of the accused levelers.

Bero testified that Systems' gross revenues were $13,778,591 and net profits were $1,876,344 on sales of 1,457 hydraulic LHP/LHD and 5,255 mechanical LMP/LMD levelers from 2009 to February 28, 2013. (A5476-77, 5528, 5531-32, 5535-36, 5543-44, 5550, 6684-85). As noted above, Mr. Bero calculated that Systems had an average profit of at least $433 on every accused hydraulic leveler it sold. (A6552). Multiplying Systems' **$433** profit/hydraulic leveler (A6552)[6] by the **1,457** hydraulic levelers sold (A6684-85), shows that Systems had net pretax profits of **$630,881** on its LHP/LHD levelers. Nordock's expert, Dr. Smith testified that Systems had net pretax profits of **$912,201** on sales of 1,514 LHP/LHD levelers. (A6009 and 6373).

Bero also gave a lengthy presentation on determining a reasonable royalty. (A5514-27, 55-56 and 6705-6713). He used a manufacturing "cost savings" methodology to determine a reasonable royalty. Based on asserted "cost savings" to manufacture the "Lip and Hinge Plate" portion of the levelers, Bero determined the reasonable royalty to be $15/leveler or $91,650 for the 6,110 levelers sold. During Bero's reasonable royalty presentation, he stated his "cost savings" methodology could also be used to determine Systems' total profits under §289 –

---

[6] The Bero Rebuttal Report does not explain why Table 3 lists an average profit of **$433**/hydraulic leveler and not the **$714**/hydraulic leveler of Schedule 6.0. If the latter were used, Systems' profit would be over **$1,000,000** from 2009-2011.

Systems' total profit being less than $15/leveler or less than $91,650 in total. (A5526 and 6713).[7]

Nordock requested a determination of both Nordock's lost profits and Systems' total profits during closing arguments (A6098-99 and A6426). Nordock's request for a determination of Systems' total profits is further shown in the jury instructions (A4540) and verdict (A5404). Nordock also requested a determination of willful infringement relative to §284 damages (A6101-04), but did not request a determination of "reasonable royalty" damages under §284.

The District Court's patent damages jury instructions (A4538-51) included a §289 instruction, which reads in part as follows:

> In this case, Nordock **seeks** Systems' profits from sales of products alleged to infringe the '754 Design Patent. If you find infringement, and do not find the '754 Design Patent is invalid, **you are to award** Nordock Systems' total profit attributable to the infringement. Systems' "total profit" means the entire profit on the sale of the article to which the patented design is applied, or with which it is used and not just the portion of profit attributable to the design or ornamental aspects of the patent. . . .

> Nordock is entitled to all profit earned by Systems that is attributable to the infringement. Profit is determined by deducting certain expenses from gross revenue. **Gross revenue** is all of Systems' receipts from using the design in the sale of the infringing products. Nordock has the burden of proving Systems' gross revenue by a preponderance of the evidence. (Emphasis supplied). (A4540).

---

[7] The Bero Rebuttal Report did not discuss this new "cost savings" methodology, which was referenced for the first time at the bottom of page 34 of his Slide Show Presentation during trial. (A6713). Contrary to the "source" listed on page 34, the Bero Rebuttal Report does not include a Schedule 1.0a and page 38 of his report discusses a reasonably royalty, not Systems' total profits.

On March 26, 2013, the jury returned a verdict (A5402-05) finding, inter alia, that:

- Systems' LHP/LHD levelers infringed the 'D754 Patent.
- Systems did not prove that the 'D754 Patent is invalid.
- Reasonable royalties:   $46,825. [8]
- **Systems' profits**:       **$0**.

On March 27, 2013, the District Court entered a Judgment on the jury's verdict in favor of Nordock and against Systems in the amount of $46,825 for a reasonable royalty for Systems' infringement of Nordock's 'D754 Patent with regard to its LHP/LHD Series dock levelers, plus costs. The District Court also permanently enjoined Systems from making, using, selling or importing its infringing LHP/LHD Series dock levelers. (A5400-01).

Nordock filed a Rule 59 motion seeking a proper determination of §289 damages or for a new trial on damages given that the manifest weight of the credible evidence did not show Systems' total profits on the infringing LHP/LHD levelers were $0. (A37 DE 180 and 190, A5575, 78-89 and 5626-34). Nordock also requested prejudgment and post-judgment interest.

The District Court's July 31, 2014 Decision and Order indicates that the "Burden of Proof Jury Instruction" did not require the jury to determine Systems'

---

[8] The Jury may have meant the $46,825 to be half of the $91,650 amount in Mr. Bero's Slide Presentation, as Systems' accused LHP/LHD hydraulic levelers were found to infringe and its accused LMP/LMD mechanical levelers were not found to infringe, and $91,650 / 2 = $45,825.

Profits under §289, but also went on to state that Page 69 of Bero's trial transcript supports a finding that "Systems Profits" for its infringing LHP/LHD levelers were $0. The Court stated as follows:

> Nordock's motion is denied because the jury reasonably based its verdict on the evidence presented. The jury received extensive damage instructions. (Jury Instructions, 39-50.) (ECF No. 166.) It was instructed that it could award Nordock compensatory damages in the form of its own **lost profits** or a reasonable royalty, **or** it could recover **Systems' profits** as a measure of potential recovery with respect the sale of each unit of an infringing product. (***Id. at 39***.) . . . (Emphasis supplied). (A7).

> Bero also testified that royalty was the proper form of damages, that $15 per allegedly infringing dock lever (sic) was the appropriate amount of royalty, and that, based on the 6,000 accused units, total damages were about $91,650. (***Id. at 69.***) Alternatively, according to Bero, **Systems' profit** on the accused products was less than $15 per unit, so **lost profits** would have been less than $91,650. (***Id.***) Although the jury heard testimony regarding lost profits, it chose to award a reasonable royalty. The jury was free to discredit Smith's testimony regarding Nordock's lost profits or find that Bero's testimony was more convincing and persuasive. (Emphasis supplied). (A8).

On July 31, 2014, the District Court entered an Amended Judgment similar to its March 27, 1013 Judgment, but also awarded Nordock $10,170.09 in prejudgment interest. (A18-19).

On August 19, 2014, Nordock filed a Notice of Appeal (A5742), followed by its Federal Circuit Docketing Statement requesting that the case be remanded for a new trial to properly determine §289 damages.

## STATEMENT OF FACTS

Dock levelers bridge the gap between a loading dock and the bed of a truck trailer. (A6271, 6289 and 6272-88). The levelers include a deck and a lip. (A6292). The rear end of the deck is hingably and flushly secured to the floor of the building. (A6292). The lip is hingably joined to the frontend of the deck. (A6292). When not in use, the deck is parallel to the building floor and the lip hangs pendent. (A6292). During use, the deck is raised and the lip is extended before bringing the deck down so that the lip rests on the bed of the trailer. (A6294-95 and 6272-88). The raising and lowering of the deck and the extension and retraction of the lip are either mechanically or hydraulically actuated. (A6289).

The loading dock leveler industry is dominated by three companies. Systems is one of those three companies. (A6687). Systems sold dock levelers with a front end having a "piano" style hinge for the past 50 years. (A5809, 6145-53 and 6190).

Dock levelers are sold with a variety of frontend designs as demonstrated in Nordock's September 20, 2012 motion for partial summary judgment, which included Exhibits C1-12 showing a variety of frontend designs. (A26 DE59-64, A1047, 1058, 1067-68). Brochures showing many of these levelers with their various frontend designs were presented at trial (A6133-84), and several were displayed as demonstrative exhibits. (A6185-90).

On December 23, 2002, Denis Gleason, filed U.S. Patent Application No. 10/328,279 ("the '279 Application"), which issued as U.S. Patent No. 6,834,409 ("the '409 Patent"). (A6271-96)  The '409 Patent shows a dock leveler with a novel and ornamental lip, lug and header plate frontend design. The '279 Application was published on June 24, 2004 by the U.S. Patent and Trademark Office ("USPTO"). (A6271).  As shown in Figures 1-9 (A6272-83), the frontend of the leveler shown in Figures 10A-G (A6284-88) is physically and operationally integral to the leveler as a whole. The header plate is welded to the deck plate and deck beams. (A6292). The lip plate is hingably joined to the deck by lugs extending from the header plate, lugs extending from the lip plate, and a pivot rod passing through them. (A6292). The deck and lip move in unison during operation. (A6272-88 and 94-95).The lip and header plate are essential components of a dock leveler. Without the pivotally joined lip, the dock leveler will not perform its intended function of bridging the gap between the loading dock and the trailer bed. (A6272-83).

The '279 Application resulted in the following three patents to Nordock per an assignment by Mr. Gleason, the president of Nordock. (A1378 and 6328-29).

- U.S. Patent No. 6,834,409 issued December 28, 2004.    (A6271)
- U.S. Patent No. 7,013,519 issued March 21, 2006.    (A6297)
- U.S. Patent No. D579,754 issued November 4, 2008.    (A6321)

U.S. Design Patent No. D579,754 ("the'D754 Patent") shows and claims the ornamental design of a lip and hinge plate for a dock leveler, as shown and described. (A6321-26). The patent states the article of manufacture to which the 'D754 design is applied is a dock leveler. The patent is entitled "Lip and Hinge Plate for a Dock Leveler." (A6321). The claim states the ornamental design is for a dock leveler. (A6321). The descriptions of Figures 1-7 state the design is "for a dock leveler." (A6321). The patent illustrates and mentions additional components of a dock leveler, such as the deck, deck frame, drive brackets, drive bar opening and assist spring mounting bracket. (A6321-26). The patent further states that these components show the claimed design in its "condition of use." (A6321). The patent also references its parent '409 patent, which is entitled "Dock Leveler." (A6271 and 6321).

Systems admits it learned of the '279 Application in the spring or early summer of 2005 (A5810), and was fully aware of the '409 Patent before it began selling its accused levelers. (A5815-16). Systems started selling its accused hydraulic and mechanical levelers on the following dates: [9]

- LHP:    First Shipped October 21, 2005
- LMP:    First Shipped June 30, 2006
- LMD:    First Shipped July 30, 2008
- LHD:    First Shipped August 13, 2008.
  (A6411)

---

[9] Systems first marketed its accused levelers under the Neutron name. (A5816).

Systems makes these levelers in the United States. (A5476). Yet, Systems did not display its LHP/LHD and LMP/LMD levelers on its website until about 2009. (A6096).

Systems' average sale price for an LHP/LHD leveler is $2,516. Systems' average profit on the sale of an LHP/LHD leveler is at least $433. (A6552, 6593, 6595 and 6621). Its average sale price and average profit for its LMP/LMD levelers is $1,840 and $215, respectively. (A6552, 6593, 6595 and 6621).

On May 19, 2009, Nordock notified Systems of its infringement of the 'D754 Patent. (A6739-48). Many months of correspondence went unheeded, and Systems continued to make and sell its accused levelers. (A6684).

On January 28, 2011, Nordock brought suit for design patent infringement. (A21 DE1).

On June 18, 2012, Systems' president said he would not settle the case. (A574, 579). Still, Systems, without authorization from Nordock, continued making and selling its accused levelers. (A6684).

On June 20, 2012, Nordock's expert, Dr. Stan Smith, produced his Original Report (A768-79), which did not include an opinion on Systems' profits because Systems had not produced relevant financial information for the accused levelers.

On July 20, 2012, Systems' damages expert, Richard Bero, produced a rebuttal report ("Bero Rebuttal Report"). (A6536-6657). Tables 2 and 3 and

Schedule 2.1 of his report state Systems had gross revenues of $1,564,952 and net pretax profits of $269,196 on sales of 622 hydraulic LHP/LHD levelers between May 19, 2009 and October 11, 2011. (A6551-52 and 6593). Schedule 2.2 states Systems had gross revenues of $2,284,599 and a total net pretax profit of $392,986 on sales of 908 LHP/LHD levelers from 2009 to 2011. (A6594-95). Table 3 and Schedules 2.1, 2.2 and 5.0 further state that the LHP/LHD levelers had an average operating/net pretax profit of **$433/unit**. (A6552, 6593, 6595 and 6621).

The Bero Rebuttal Report improperly deducts $255,698 in general and administrative expenses ("G&A") for the accused hydraulic LHP/LHD levelers without itemizing these expenses. (A6623 and 6630). Mr. Bero testified that he did not know the specific items included in G&A. (A5542). Mr. Bero's above revenues, profits and average profits are for the LHP/LHD leveler units as a whole. The Bero Rebuttal Report does not apportion the revenue, profit and average profit amounts for the "lip and hinge plate" design of the levelers.

The Bero Rebuttal Report estimates a reasonable royalty of **$15/leveler**, which comes to $51,000 based on the 3,383 levelers sold from May 19, 2009 to October 11, 2011. (A6551-52 and 6570-79). Bero's reasonable royalty methodology is based on System's asserted "cost savings" in manufacturing the "Lip and Hinge Plate" portion of the accused levelers. (A6574).

(17)

On March 18-26, 2013, a jury trial was held in the U.S. District Court for the Eastern District of Wisconsin located in Milwaukee County. (A35 DE165).

Systems' witnesses Edward McGuire and Michael Pilgrim testified at trial. Neither testified that Systems' profits on its accused LHP/LHD levelers was $0. (A39 DE221 and A40 DE222).

Damages experts, Dr. Smith and Mr. Bero, also testified at trial. (A36 DE178, A39 DE220 and A40 DE224-226). Dr. Smith's testimony agreed with his Second Supplemental Smith Report finding Systems' gross revenues of $14,795,392 and net profits of $2,833,239 on sales of 7,197 LHP/LHD and LMP/LMD levelers, including gross revenues of $3,978,920 and net profits of **$912,201** on sales of 1,514 hydraulic LHP/LHD levelers. (A6009-10 and 6371-73).

Mr. Bero's trial testimony on §289 damages included two conflicting methodologies to determine Systems' profits. His first methodology is based on System's "gross revenues" for its accused levelers. This methodology coincides with the jury instructions and the Bero Rebuttal Report as it uses gross revenues less certain expenses to determine net profits. Using this methodology, Mr. Bero's Slide Show Presentation (A6685) and testimony (A5527-28, 5532, 5535-36, 5543-44 and 5550) stated that Systems' had gross revenues of $13,778,591 and net pretax profits of $1,876,344 on sales of 1,457hydraulic LHP/LHD and 5,255 mechanical LMP/LMD levelers. Multiplying Systems' above **$433** net pretax

profit/hydraulic leveler (A6552) by sales of 1,457 hydraulic LHP/LHD levelers[10] (A6684-85), Systems' had net pretax profits of **$630,881**.

The Bero Rebuttal Report does not discuss a "**cost saving**" methodology to determine Systems' profits. Mr. Bero's "cost savings" methodology was presented for the first time at trial. The methodology is at the bottom of page 34 of his 37 page Slide Show Presentation. (A6713). As best understood from his vague description, Mr. Bero's "cost savings" methodology is based on Systems' asserted "cost savings" for manufacturing the "Lip and Hinge Plate" portion of its accused levelers. Using this conflicting methodology, Mr. Bero testified that System's profits were less than $15/unit or less than $91,650. As discussed below, Mr. Bero's "cost savings" methodology conflicts with the Court's jury instruction for determining §289 damages. (A4540).

The trial record is void of any testimony that Systems' profits were $0. Systems' owners and officers did not testify that Systems' profits on its LHP/LHD levelers were $0. (A39 DE221 and A40 DE222). Dr. Smith testified that Systems' profits on its LHP/LHD levelers were $912,201. (A6009-10 and A6371-73). Even assuming arguendo, that Mr. Bero's "cost savings" methodology is legally proper,

---

[10] Mr. Bero's Slide Show Presentation indicates that Systems sold another 470 accused hydraulic levelers in 2012 and another 79 accused hydraulic levelers in 2013 by February 28, 2013. (A6684). Using Bero's average profit of $433/hydraulic unit, these additional infringing sales produced an additional $237,717 in net pretax profits, for a total net pretax profit of over **$600,000**.

Mr. Bero did not testify that Systems' profits on its LHP/LHD levelers were $0.

Under Mr. Bero's misguided "cost savings" methodology, the only way Systems'

profits on sales of 1,457 LHP/LHD levelers would be $0 is if the jury and District

Court believed Systems' asserted "cost savings" were $0.

Jury Instructions were presented for determining design patent damages.

(A4500 and 4538-51).  The Jury Instruction for §289 damages (Additional Remedy

for Design Patent Infringement – Defendant's Profits) states in part as follows:

> In this case, Nordock **seeks** Systems' profits from sales of products
> alleged to infringe the '754 Design Patent.  If you find infringement,
> and do not find the '754 Design Patent is invalid, **you are to award**
> Nordock Systems' total profit attributable to the infringement.
> Systems' "total profit" means the entire profi**t** on the sale of the article
> to which the patented design is applied, or with which it is used and
> not just the portion of profit attributable to the design or ornamental
> aspects of the patent. . .
>
> Nordock is entitled to all profit earned by Systems that is attributable
> to the infringement. Profit is determined by deducting certain
> expenses from gross revenue. **Gross revenue** is all of Systems'
> receipts from using the design in the sale of the infringing products.
> Nordock has the burden of proving Systems' gross revenue by a
> preponderance of the evidence. (Emphasis supplied). (A5440).

The jury found that Nordock's '754 Patent was valid, and that Systems'

LHP/LHD Series levelers were infringing. (A5402 and 5405). Notwithstanding

these findings, the jury further found:

- Reasonable Royalties:    $46,825    (A5404)
- **Systems' Profits**:        **$0**.        (A5404)

Judgment was entered on the jury's verdict in favor of Nordock and against Systems in the amount of $46,6825 for a reasonable royalty. (A5400-01). The District Court denied Nordock's Rule 59 motion seeking to amend the judgment regarding §289 damages, or in the alternative, for a new trial to properly determine §289 damages (A5575-89 and 5626-34), but issued an Amended Judgment awarding Nordock an additional $10,170.09 in prejudgment interest. (A18-19). Nordock filed its Notice of Appeal. (A5742).

## SUMMARY OF THE ARGUMENT

The exceedingly deficient damages award should be vacated and remanded for a new trial. A new trial must be granted to determine §289 damages as the District Court decision's adopting a finding that Systems' profits are $0 or do not need to be determined is without factual or legal basis and is against the substantial weight of the credible evidence.

First, the record is void of any evidence that Systems' profits on its sales of at least 1,457 infringing LHP/LHD levelers was $0.

Second, the manifest weight of the credible evidence, when applying the appropriate "gross revenue" methodology as set forth in the §289 jury instruction, shows Systems' profits were over $600,000 for the infringing LHP/LHD levelers.

Third, the District Court relied on Systems' legally deficient "cost savings" methodology to determine that Systems' profits on the "Lip and Header Plate"

portion of its infringing levelers are less than $15 per leveler. There is no legal basis for equating Systems' profits to its asserted "cost savings" for a portion of its infringing LHP/LHD levelers, and this methodology effectively nullifies Congress' enactment of §289.

Fourth, as the §289 Jury Instruction provides, Nordock seeks to recover §289 damages, and if you [the jury] find infringement you are to award Nordock Systems' total profits, the District Court erred in finding that a determination of §289 damages is not necessary based on its erroneous interpretation of another patent damages jury instruction.

## ARGUMENT

## I.    STANDARD OF REVIEW/RULE 59 STANDARDS

When reviewing damages in patent cases, the Federal Circuit applies regional circuit law to procedural issues and Federal Circuit law to substantive and procedural issues pertaining to patent law." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012), citing *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1318 (Fed.Cir. 2010) (internal citations and quotation marks omitted). A district court abuses its discretion when its decision is based on clearly erroneous findings of fact, is based on erroneous interpretations of the law, or is clearly unreasonable, arbitrary or fanciful. *Whitserve at* 26, citing *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1460

(Fed.Cir. 1998) (en banc). On post-trial motions for a new trial, district court judges must scrutinize the evidence carefully to ensure that the `substantial evidence' standard is satisfied. *Whitserve* at 26.

The Federal Circuit reviews the District Court's accounting methodology for determining patent damages based on an abuse of discretion and whether the district court's factual findings were clearly erroneous. *Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir., 1998). The Federal Circuit will remand a patent damage award back to the district court for recalculating or for a new trial when damages are based on speculative assumptions. *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001). The Federal Circuit does not need to defer to a district court's statutory interpretation unless the legal standards are based on underlying findings of fact, in which case the Court may reverse if the legal conclusions are clearly erroneous. *Id.* at 1357. The Seventh Circuit has found that when a district court reaches its conclusion because of its interpretation of relevant law, then the Court reviews that question of law *de novo* because a district court's application of an erroneous view of the law is by definition an abuse of discretion. *Sosebee v. Astrue*, 494 F.3d 583, 586 (7th Cir. 2007).

Where clear and unambiguous, statutory language must be enforced as enacted, a court may not depart from its plain language. *Weinberg v. Chicago,* 310 F.3d 1029, 1035 (7th Cir. 2002). An appellate court may overturn a district court

for an abuse of discretion when the district court misapplies the law. *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011).

When this Court remanded a case for a new trial on lost profit damages due to a vague jury instruction, the Court reviewed the jury's findings for reasonableness under the substantial evidence standard of review. *Oiness v. Walgreen Co.*, 88 F.3d 1025 (Fed. Cir. 1992) (Unpublished Disposition).

In the Seventh Circuit, a motion for a new trial pursuant to Rule 59 simply requires that the moving party clearly establish that there was a manifest error of law or fact. *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1121 n. 3 (7th Cir. 2001). The Supreme Court has long recognized that a district court can grant a motion for a new trial if the verdict is against the weight of the evidence. *Mejia v. Cook County, Ill.*, 650 F. 3d 631, 633 (7th Cir. 2011) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996); *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540 (1958); *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

## II.    THE DISTRICT COURT ERRED WHEN IT DENIED NORDOCK'S MOTION FOR A NEW TRIAL ON §289 DAMAGES

### A.    Legal Standard

Under 35 U.S.C. §289, whoever during the term of a U.S. design patent applies the patented design to any article of manufacture for the purpose of sale shall be liable to the owner to the extent of his or her "total profit."  The statute provides that:

> Whoever during the term of a patent for a design, without license of the owner,
>
> (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his **total profit**, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.
>
> Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but he shall not twice recover the profit made from the infringement. (Emphasis supplied).

The intent of Congress to allow a more expansive recovery for design patent owners is exhibited in the plain language of the statute, which allows recovery of "total profit" from anyone who sells "any article of manufacture to which such design or colorable imitation has been applied." *Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1441 (Fed. Cir., 1998); *see also Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 2014 WL 4185297 (M.D. Fla. Aug. 22,

2014). Apportioning the infringer's total profits between the patented design and the article bearing the design is not appropriate. *Id*.  Rather, a patent holder is entitled to the entire profit obtained by the infringer as a result of sales of the item with the infringing design. *Junker v. HDC Corp.*, 2008 WL 3385819 (N.D. Cal. July 28, 2008).

Profits are based on "gross revenue" after deducting certain allowable expenses. *Henry Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp.*, 270 F.2d 635, 642 (5th Cir. 1959)); *Schnadig Corp. v. Gaines Mfg. Co.*, 620 F.2d 1166, 1173, 206 USPQ 202, 210 (6th Cir. 1980); *Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir., 1998). Total profits are based on net pretax profits. The statute requires the disgorgement of the infringer's profits to the patent holder such that the infringer retains no profit from their wrong. *Nike v. Wal-Mart* at 1448.

## B.    The District Court Decision Was Clearly Erroneous

The District Court's reasoning in denying Nordock a new trial to properly determine §289 damages is flawed for four reasons. First, the trial record contains no credible evidence that Systems' total profits were $0 for its sales of over 1,457 infringing LHP/LHD levelers. Second, the manifest weight of the credible evidence shows that Systems' total profits were over $600,000 for the infringing LHP/LHD levelers. Third, the District Court's decision relies on Systems' expert's

"cost savings" methodology to determine total profits, which is contrary to the §289 jury instruction's stated "gross revenue" methodology for determining total profits. Fourth, the District Court's misinterpretation of the patent jury instructions renders them in conflict and negates the clear intent of the federal statute.

The District Court should have recognized three points set forth in its Jury Instructions when considering whether or not to grant a new trial. The §289 Jury Instruction reads in part as follows:

> In this case, Nordock **seeks** Systems' profits from sales of products alleged to infringe the '754 Design Patent.  If you find infringement, and do not find the '754 Design Patent is invalid, **you are to award** Nordock Systems' total profit attributable to the infringement. Systems' "total profit" means the entire profit on the sale of the article to which the patented design **is applied**, or with which it **is used** and not just the portion of profit attributable to the design or ornamental aspects of the patent. . . .

> Nordock is entitled to all profit earned by Systems that is attributable to the infringement. Profit is determined by deducting certain expenses from gross revenue. **Gross revenue** is all of Systems' receipts from using the design in the sale of the infringing products. Nordock has the burden of proving Systems' gross revenue by a preponderance of the evidence. (Emphasis supplied). (A4540).

First, the District Court should have recognized that the §289 instruction states that Nordock seeks Systems profits, and if infringement and validity are found, the jury is to award Nordock Systems' total profits. Second, Systems' total profits under §289 are based on Systems' gross revenue less certain allowable expenses. Third, Systems' total profit is the entire profit on the sale of the article to

which the patented design is applied, or with which it is used and not just the

portion of profit attributable to the design or ornamental aspects of the patent.

**1.     Manifest Weight Of Credible Evidence Shows Systems' Total Profits Were Over $600,000**

The manifest weight of the credible evidence shows that Systems' total

profits were over $600,000 for its infringing LHP/LHD levelers.

**a.     Parties Agree Systems Sold Over 1,450 Infringing LHP/LHD Levelers**

The parties agree that Systems sold over 1,450 infringing LHP/LHD leveler

units. Mr. Bero found that Systems sold at least 6,712 accused levelers, including

1,457 infringing LHP/LHD levelers. (A6685). Dr. Smith found that Systems sold

7,197 accused levelers, including 1,514 infringing LHP/LHD levelers. (A6363 and

6373).

Quantity of LHP/LHD Levelers Sold
- Bero:     **1,457**
- Smith:    **1,514**

**b.     Article of Manufacture To Which Patented 'D754 Design Is Applied And Used Is A "Dock Leveler"**

35 U.S.C. §289 bases damages on an infringer's total profits for the article

of manufacture to which the patented design is applied. The §289 damages Jury

Instruction mirrors the statues and reads in part as follows:

> Systems' "total profit" means the entire profit on the sale of the article to which the patented design **is applied**, or with which it **is used** and not just the portion of profit attributable to the design or ornamental aspects of the patent. . . .

. . . Gross revenue is **all of Systems' receipts** from using the design in the sale of the i**nfringing products**. (Emphasis supplied). (A4540).

Total profits are based on the article of manufacture to which the patented 'D754 patent is applied or used, not just a portion of that article of manufacture. *Junker v. HDC Corp.*, 2008 WL 3385819 (N.D. Cal. July 28, 2008). Based on the facts of the case, the article of manufacture is clearly a dock leveler, and Systems' total profits should have been based on its sales of over 1,457 infringing LHP/LHD levelers.

### 1.  Patented 'D754 Design is applied to a "Dock Leveler"

The 'D754 patent clearly states the article to which the patented design is applied and used is a dock leveler. (A6321-26). The 'D754 Patent is entitled "Lip and Hinge Plate for a **Dock Leveler**." The claim for the 'D754 patent states "I Claim: The ornamental design of a lip and hinge plate for a dock leveler as shown and described." The descriptions for Figures 1-7 of the 'D754 Patent state the patented design is "for a dock leveler." (A6321). The 'D754 Patent also illustrates that the claimed design is applied to and used with a dock leveler. The patent clearly shows various additional dock leveler components, such as the deck, deck frame, drive brackets, drive bar opening and assist spring mounting bracket.  The 'D754 Patent further states that these components show the claimed design in its "condition of use." (A6321.) In addition, the 'D754 Patent references its parent

'409 Patent (A6321), which is entitled "**Dock Leveler**." (A6271). In all, the 'D754

Patent refers to the patented design for a dock leveler nine times, and illustrates

various additional dock leveler components to show its condition of use.

### 2. Trial evidence and testimony show patented 'D754 design is applied to and used with a "Dock Leveler"

Nordock's brochures for its levelers show the patented 'D754 design applied

to and used with a dock leveler. (A6718-27). Systems' brochures for its infringing

LHP/LHD levelers show the patented 'D754 design is applied to and used with a

dock leveler. (A6191-95 and 6199-6202). The brochures are for dock levelers. The

brochures show the levelers as an integral finished product with the patented

'D754 design as an integral and essential part of that product. The leveler

components are welded together and operate in unison. (A6272-88, 91-92 and 94-

95). Systems' and Nordock's officers testified that the levelers are assembled and

welded together on fixtures and jigs. (A5621-24, 5771, 5781, 5792 and 5802).

Photographs of the LHP/LHD leveler entered into evidence at trial show its

header/hinge plate welded to the deck and deck frame (A6343), as well as the lugs

welded to the header and lip plates, and the deck welded to its frame, side plates

and rear header. (A6331-45). Demonstrative exhibits including these photos were

also entered into evidence and displayed at trial. (A6346-49).

Similarly, Systems presented no testimony that it sold a "Lip and Hinge

Plate" apart from the leveler as a complete unit.  Systems also presented no

evidence that the frontend of the leveler could be used for some product other than a dock leveler. Systems' own expert, Mr. Bero, even understood that the patented 'D754 design is an essential part of the dock leveler. On cross examination, Mr. Bero said that the sale of a leveler without its frontend (i.e., "Lip and Hinge Plate") would be unusual. Mr. Bero stated as follows:

> Q. Let me rephrase. Can a dock leveler manufacturer -- let me frame it in the form of a question. Do you know if a dock leveler manufacturer can actually sell a dock leveler without the front end? Just take it off and sell it. Would they be able to do that?
>
> A. Without any front end?
>
> Q. Yeah. Do you know if they could do that?
>
> A. (No response.)
>
> Q. Would there be a market for it?
>
> A. Maybe as a replacement part. I can't imagine -- I mean, it would seem a little unusual. (A5568).

Bero's Rebuttal Report also makes no mention of any "Lip and Hinge Plate" sales apart from the levelers as a finished product. Schedule-after-schedule of the Bero Rebuttal Report refers to each leveler as a unit. (A6551-52, 6591-93 and 6617-53). Thus, the manifest weight of the evidence, and certainly the substantial weight of the credible evidence, is that the patented 'D754 design is applied to and used with a dock leveler.

### 3. Systems' assertion that "Article of Manufacture" to which patented 'D754 design is applied and used is a "Lip And Hinge Plate" lacks merit

Systems' response to Nordock's motion for a new trial on §289 damages asserts that there is a distinction between the term "article of manufacture" in §289 statute and the word "product" in the §289 jury instruction. (A5610 an15-17). As best understood, Systems seems to assert the "article of manufacture" is the "Lip and Header Plate" and the product is the infringing LHP/LHD levelers. Thus, according to Systems, Systems' total profits should be limited to the portion of the leveler formed by the "Lip and Hinge Plate." Systems' assertion lacks merit.

First, Systems' assertion contradicts the plain language of the District Court's §289 jury instruction (A4540), not to mention the model §289 instruction and the §289 instruction that Systems proposed for this case. (A3823 and 4210). Each specifically states:

> . . . Profit is determined by deducting certain expenses from gross revenue. Gross revenue is **all of Systems' receipts** from using the design in the sale of the infringing **products**. . . (Emphasis supplied).

Thus, even assuming arguendo, that there is a distinction between the term "article of manufacture" and the word "product," Systems' total profits are still properly based on the "gross revenue" on all of Systems' receipts for the infringing LHP/LHD levelers.

Second, Systems' assertion flies in the face of its brochures (A66-73, 6191-95 and 6199-6202) and photographs (A6331-45) of its levelers show them welded together and sold as a unit. The brochures show and describe finished LHP/LHD leveler units. The brochures do not indicate that the "Lip and Hinge Plate" are sold separately, and Systems presented no evidence indicating that it sold them separately. Systems' assertion is also contrary to its expert's report (A6536-6657) tabulating unit sales, revenue, and profits for the levelers as a whole, and testimony of its officers describing its levelers as being welded together. (A5792 and 5802). The Bero Rebuttal Report continually refers to sales of LHP/LHD levelers, but does not mention separate sales for the "Lip and Hinge Plate." Systems' officers did not testify that Systems sold a "Lip and Hinge Plate" separately. Instead, Systems' vice president of sales and marketing testified that the levelers are sold as a "unit," such as a hydraulic unit, air unit, mechanical unit or competing unit. (A5854, 97, 99, 5905, 14 and 20). Systems' attorney even referred to its levelers as units at trial. (A5889 and 92).

**c.    Total Profits Are Based on "Gross Revenues"**

Profits are properly based on "gross revenue" after deducting certain allowable expenses. *Henry Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp.*, 270 F.2d 635, 642 (5th Cir. 1959)); *Schnadig Corp. v. Gaines Mfg. Co.*, 620 F.2d 1166, 1173, 206 USPQ 202, 210 (6th Cir. 1980); *Nike, Inc. v. Wal–Mart*

*Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir., 1998). The statute requires the

disgorgement of the infringer's profits to the patent holder, such that the infringer

retains no profit from their wrong. *Nike v. Wal-Mart* at 1448.

The §289 jury instruction properly adopts a "gross revenue" methodology,

and reads in part as follows:

> Nordock is entitled to all profit earned by Systems that is attributable
> to the infringement. **Profit is determined by deducting certain
> expenses from gross revenue.** Gross revenue is **all of Systems'
> receipts** from using the design in the sale of the **infringing products**.
> Nordock has the burden of proving Systems' gross revenue by a
> preponderance of the evidence. (Emphasis supplied). (A4540).

The District Court's decision ignores Mr. Bero's and Dr. Smith's "gross

revenue" methodology for determining Systems' profits under §289. This gross

revenue methodology is found in Bero's Rebuttal Report (A6552-53, 6591-95 and

A6617-43), his trial testimony (A5476-77, 5528, 5535-36, 5543-44, 5550), his

Slide Presentation (A6684-85), as well as Dr. Smith's Second Supplemental

Report (A6371-73) and testimony. (A6009-10).

### d.    Gross Revenues For Systems' LHP/LHD Levelers Were Over $3,600,000

Gross revenues were determined by both Systems' and Nordock's damages

experts. Mr. Bero found that Systems had gross revenues of $13,778,591 on sales

of 1,457 LHP/LHD and 5,255 LMP/LMD levelers. (A6685, 5544 and 5550).

Multiplying Systems' average sale price of $2,516 for the hydraulic levelers in

Bero's Rebuttal Report (A6595) and sales of 1,457 LHP/LHD levelers (A6684-85), Systems had gross revenue of $3,665,812 for the LHP/LHD levelers. Dr. Smith's found Systems had gross revenues of $14,795,392 on sales of 7,197 LHP/LHD and LMP/LMD levelers, including gross revenues of $3,978,920 on sales of 1,514 LHP/LHD levelers. (A6009-10 and 6363 and 6373).

Gross Revenues for LHP/LHD levelers
- Bero:    **$3,665,812**
- Smith:    **$3,978,920**[11]

**e.    Systems' Total Profits For LHP/LHD Levelers Were Over $600,000**

The manifest weight of the credible evidence is that Systems' total profits on infringing sales of LHP/LHD levelers were over $600,000. Mr. Bero found that Systems had gross revenues of $13,778,591 and net pretax profits of $1,876,344 on sales of 1,457 LHP/LHD and 5,255 LMP/LMD levelers. (A6685, 5528, 5532, 5535-36, 5543-44 and 5550). Multiplying Systems' profit of **$433/unit** (A6552) and sales of 1,457 LHP/LHD levelers (A6684-85), Systems had net pretax profits of $630,881 for the LHP/LHD levelers .[12] Dr. Smith's testimony and report states that Systems had gross revenues of $14,795,392 and net profits of $2,833,239 on sales of 7,197 LHP/LHD and LMP/LMD levelers including gross revenues of

---

[11] The sum of the annual net sales in Table 16S-2 equals $3,978,920. (A6373).

[12] The Bero Rebuttal Report shows that Systems' $433 profit/unit on its LHP/LHD hydraulic levelers is greater than the $215 profit/unit on its LMP/LMD mechanical levelers. (A6593). The $280 profit/unit in Bero's Slide Show Presentation is based on $1,876,344 total profits for 6,712 total accused units sold, and thus is a weighted average for the hydraulic and mechanical levelers.

$3,978,920 and net pretax profits of $912,201 on sales of 1,514 LHP/LHD

levelers. (A6373 and 6009-10).

<u>Total Profit for LHP/LHD levelers</u>
- Bero:    **$630,881**
- Smith:   **$912,201**

The difference in total profit is largely due to the larger amount of general

and administrative ("G&A") deducted by Mr. Bero. For example, Mr. Bero

deducted $1,519,427 in SG&A or about 11% of gross revenue (A6685), while Dr.

Smith deducted $825,965 in sales and general and administrative ("SG&A")

expenses or about 5.5% of gross revenue. (A6373). Contrary to Systems' burden of

establishing the appropriateness of the deductions (A4540), Mr. Bero did not know

what the specific G&A deductions were.  The following passage is insightful:

> Q. And do you know if in your calculation of G&A is Mr. McGuire's salary included in that?
>
> A. I don't know.
> Q. Do you know if his secretary's salary is included in G&A in your calculations?
>
> A. I don't know.
>
> Q. Do you know if legal fees are included in the G&A in your calculations?
>
> A. I don't know. It's not broken out in detail.
>
> Q. Do you know if office supplies are included in the G&A of your calculation?
>
> A. I would assume so but I don't know. (A5542).

Systems carried the burden of proof to establish the "nature" and "amount"

of G&A to be appropriately deducted from the total profits of its infringing LHP

and LHD levelers. [13] *Bergstrom*, 496 F. Supp. at 497 (D. Minn. 1980); *Henry*

*Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp.*, 270 F.2d 635,

643 (5th Cir. 1959)).

This Court has held that overhead expenses (e.g. G&A) should not be

deducted when the defendant "failed to present any supporting evidence" and

merely "sought to deduct these expenses on a pro rata basis as a percentage." *Nike*,

138 F.3d at 1447. Courts have noted that district courts must carefully consider the

deduction of overhead expenses, since, for design patent cases, "authority on the

calculation of fixed expenses is scant." *Rocket Jewelry Box, Inc. v. Quality Int'l*

*Packaging, Ltd.*, 250 F.Supp. 2d 333, 341 (S.D.N.Y. 2003).  Courts have held that

it is the proper role of the district court to determine the categories of fixed

expenses that are deductible and to fairly allocate a portion of the fixed expenses to

the infringing item. *Id.* at 341 (citing *Sheldon v. Metro-Goldwyn Pictures*, 106 F.2d

45, 54 (2d Cir.1939), *aff'd*, 309 U.S. 390 (1940)).  Courts routinely resolve any

doubts regarding an infringer's failure to present adequate proof of its fixed

overhead costs in favor of the plaintiff. *Id.* Thus, a new trial on §289 damages is

appropriate because the manifest weight of the credible evidence establishes that

Systems' total profits on its infringing LHP/LHD levelers is over $600,000.

---

[13] The District Court's reliance on Bero's "cost savings" methodology to determine
Systems' profits, and its finding that the jury instructions do not require a
determination of Systems profits, renders a review of the appropriateness of
Systems' expenses all but meaningless.

2. **Trial Record Does Not Support Finding That Systems' Total Profits Were $0**

The trial record is void of any legitimate basis for finding Systems' total profits on its sales of 1,457 LHP/LHD levelers were $0.[14]

- Bero did not say $0 total profits.                                    (A36 DE178)
- Smith did not say $0 total profits.              (A39-41 DE220, 224-226)
- Systems' officers did not say $0 total profits.          (A39-40 DE221-222)
- Systems' closing arguments do not assert $0 total profits.      (A41 DE228)

Even assuming arguendo, that Mr. Bero's "cost savings" methodology for determining total profits is credible, Mr. Bero testified that Systems' saved about $5 (A6707-08) on the manufacture of the levelers with an average sale price of $2,516. (A6595). Even if the jury disregarded both Mr. Bero's and Dr. Smith's "gross revenue" methodologies, and believed Systems' had cost savings and relied on Mr. Bero's "cost savings" methodology, then the jury still should have found Systems had some profits on its infringing LHP/LHD levelers. It did not. (A5404).

Furthermore, a total profit of $0 lacks common sense and reason. Systems' officers and Mr. Bero did not testify that the accused levelers were a loss leader. (A36 DE178, A39 DE221 and A40 DE222). To the contrary, Mr. Bero repeatedly testified that Systems' profits on the accused levelers were $**1,800,000**. (A5528,

---

[14] For reasons discussed below, Mr. Bero's "cost savings" methodology to determine that Systems total profits on the accused levelers were less than $91,650 is not credible evidence.

5532, 5535-36 and 5550). Accordingly, there is simply no credible evidence that

Systems' total profits on sales of over 1,450 infringing LHP/LHD levelers were $0.

### 3. District Court Reliance On Bero's "Cost Savings" Methodology To Support Finding of $0 Profits Is Erroneous

The District Court's denial of a new trial is erroneous because its decision

relied on Mr. Bero's erroneous determination of §289 damages.

### a. District Court Relied on Bero's "Cost Savings" Methodology

The District Court's following statement relied on Mr. Bero's legally

deficient "cost saving" methodology to determine Systems' total profits were $0:

> Bero also testified that royalty was the proper form of damages, that
> $15 per allegedly infringing dock lever was the appropriate amount of
> royalty, and that, based on the 6,000 accused units, total damages
> were about $91,650. (***Id*. at 69**.) Alternatively, according to Bero,
> **Systems" profit** on the accused products was **less than $15 per unit,**
> so lost profits would have been **less than $91,650**. (***Id***) (Emphasis
> supplied). (A8)

The District Court's decision cites to Page 69 of Mr. Bero's trial testimony

regarding Systems' profits being less than $15/unit. Yet, the only portion of Mr.

Bero's trial testimony on Page 69 pertaining to Systems' profits reads as follows:

> . . . So a royalty is a proper form of damages. The accused units: 6,000
> units; royalty rate: $15 a unit; total damages are about $91,650.
>       The alternative is the **profits** attributable to – that Systems
> earned on its lip and hinge plate ornamental design. And the **<u>cost
> savings</u>** that Systems received as a result of using that design are
> something again **less than $15 per unit**. So on that lip and hinge plate
> design the profitability attributable that Systems earned — this is
> defendant's profits — was something less than $15 per unit. It's the
> same number as the royalty damages. It's actually less than that.

> Now again, I understand Nordock's position is that it should get the entire dock leveler, and to the extent that's the case the number would be, you know, higher obviously. (Emphasis supplied). (A5526).

The District Court relied on Mr. Bero's improper "cost savings" methodology on page 69 of his trial transcript (A5526) to find something in the record to support a finding that Systems' total profits on sale of over 1,457 infringing LHP/LHD levelers were $0. Yet, even this statement does not establish a profit of $0; it merely establishes an upper limit of Systems' profits. Accordingly, the District Court's reliance on this methodology to deny Nordock's request for a new trial on §289 damages cannot stand, and must be remanded. Mr. Bero's "cost savings" methodology is contrary to the §289 jury instruction and flies in the face of Congress' intent when enacting §289.

**b.    Total Profits Are Not Based On Asserted "Cost Savings"**

Bero's "cost savings" methodology undermines the federal statute. Under this "cost saving" methodology, every infringer that asserts it had no cost savings in adopting an infringing design would have free reign to avoid §289 damages, even when that infringer made $1,000,000 or $10,000,000 in total profit on the sales of its infringing goods. Bero's "cost saving" methodology completely undermines the Congressional intent of §289 and renders the statute meaningless. A methodology that defeats the very intent of Congress in enacting a federal statue is contrary to law and does not give rise to credible evidence. A District Court's

reliance on such a methodology is an abuse of discretion. *United States v. Ford Motor Co.*, 463 F.3d 1267, 1285 (Fed. Cir. 2006) (holding that  the trial court's determination may be overturned if it is based upon an erroneous construction of the law, based upon fact findings that are clearly erroneous, or if the record contains no evidence upon which the trial court could have rationally based its decision).

In addition, Bero Rebuttal Report (A6536-6657) and Systems' proposed jury instructions (A3823 and A4210) never pose that System's total profits are or could be determined by Systems' asserted "cost savings" in manufacturing its accused levelers. Therefore, the jury was not instructed on this novel theory and any award of damages on this basis would be improper. *Wordtech Sys., Inc. v. Integrated Network Solutions Inc.*, 609 F.3d 1308, 1318-22 (Fed. Cir. 2010). Even if properly asserted, Systems and its damages expert cited no legal authority for this "cost savings" methodology. Indeed, the concept of such an award is contrary to the fundamental purpose of §289 damages – to put the patent owner in the position of the infringer. *Nike v. Wal–Mart*, at 1441. There being no support in the law or evidence (let alone substantial evidence) for Systems' "cost savings" methodology for determining its total profits, the District Court erred in relying on this methodology in denying Nordock's motion for a new trial on §289 damages.

### 1. Bero's "Cost Savings" Methodology is Contrary to Congress' Intent for §289

The statute requires the disgorgement of the infringer's profits to the patent holder, such that the infringer retains no profit from their wrong. *Nike v. Wal-Mart*, at 1448. Yet, Mr. Bero gave the following testimony:

> And then the actual -- next bar is "Systems' accused dock leveler profits." What did Systems actually earn on the **entire dock levelers**? My number as I showed I think on Slide Number 6 was about **$1.8 million** from 2009 through February of this year.

> Dr. Smith, by not including any variable general and administrative expenses, has a number that's about a million dollars higher than mine when he looks at it from that perspective.

> And then the sliver on the right is approximately that **$100,000** for the profit associated with the **lip and hinge plate design** that Systems earned. . . . (Emphasis supplied). (A5528).

> The alternative damages, defendants profits are again approximately 90,000 to 105,000 depending on when you start.

> Again, Nordock's position is it's a whole machine, whole dock leveler. In that case my number would be higher. It would be in the $1.8 million range, something like that. (Emphasis supplied). (A5532).

On cross examination, Mr. Bero stated Systems should get to keep the profit on the sale of its infringing levelers. The following two passages are insightful:

> Q.    How much profit did you calculate that Systems made on the sale of its accused levelers?

> A.    On the levelers?

> Q.    Yes.

> A.    I believe on my Chart Number 6 it was approximately **$1.8 million**. But, that is from the period of 2009, January of 2009

through February of 2013. So if you add a couple of months or subtract a couple of months that number would move a little bit.

Q.    Okay. Of that total $1.8 million you think that Nordock is entitled to $91,000 of that, correct?

A.    Exactly.

Q.    **Who gets to keep the rest?**

A.    Who gets to keep the rest?

Q.    Of the 1.8 million profits you calculated.

A.    **I would presume that would be Systems.**
      (A5535-36).

Q.    And your bottom line position is that Systems sold approximately $14 million of product; is that correct?

A.     It's approximately $14 million, that's correct.

Q.    And made **$1.8 million** in profits, correct?

A.    Operating profits, that's correct. (A5550).

## 2.   Bero's "Cost Savings" Methodology is Contrary to Jury Instructions

Mr. Bero's "cost savings" methodology adopted by the District Court conflicts with the Court's §289 jury instruction. (A4540). First, instead of using Systems' "gross revenue" as a starting point, Mr. Bero used Systems' asserted "cost savings" as a starting point. Second, his "cost savings" methodology is limited to the "Lip and Hinge Plate" portion of the levelers, thereby reducing profits by a factor of twenty.[15] The Bero Rebuttal Report and his testimony provide no legitimate basis to effectively apportion away 95% of the leveler profits. Mr. Bero's "cost savings" methodology fails to consider the fact that the "Lip and

---

[15] $1,8,76,344 divided by $91,650 equals 20.47.

Hinge Plate" is an integral and essential part of a dock leveler. The "Lip and Hinge Plate" are physically welded to and operates in unison with the entire leveler. (A6272-88, 94-95 and 6331-45). Mr. Bero's "cost savings" methodology also flies in the face of his own Rebuttal Report, which provides Tables 2 and 3 and schedule-after schedule identifying the entire leveler as a unit. (A6551-52, 6591-93 and 6617-53). The Bero Rebuttal Report, Slide Presentation, and trial testimony provide no data regarding the "Lip and Hinge Plate" being sold separately, or an accused leveler being sold without a "Lip and Hinge Plate." Mr. Bero admitted on cross examination that it would be "unusual" to sell the accused levelers without a frontend including the Lip and Hinge Plate. (A5568). Instead, the Bero Rebuttal Report is replete with references to the unit sales, unit revenues and unit profits. (A6551-52, 6591-93 and 6617-53).

**c.    Bero Impermissibly Focused on Ornamental Aspects of Patented 'D754 Design**

Mr. Bero's following testimony on page 69 of his trial transcript impermissibly focuses on the ornamental aspects of the lip and hinge plate.

> The alternative is the profits attributable to – that Systems earned on its lip and hinge plate **ornamental** design. (Emphasis supplied). (A5526).

This statement runs counter to the following direction in the §289 jury instruction:

> Systems' "total profit" means the entire profit on the sale of the article to which the patented design is applied, or with which it is used and **not just the portion of profit attributable to the design or ornamental aspects of the patent**. (Emphasis supplied). (A4540).

Although the jury instruction specifically prohibits focusing the determination of Systems' total profits on the ornamental aspects of the patented design, Mr. Bero testified that he did just that. A District Court's reliance on a legally baseless methodology that runs contrary to the jury instruction is an abuse of discretion.

**4.    District Court's Misinterpretation of Patent Damages Jury Instructions Is Error**

Responsive to Nordock's motion for a new trial, the District Court found there was no need to determine §289 damages due to its misinterpretation of the "Patent Damages Burden of Proof" Jury Instruction.  The District Court stated as follows:

> Nordock's motion is denied because the jury reasonably based its verdict on the evidence presented. The jury received extensive damage instructions. (Jury Instructions, 39-50.) (ECF No. 166.) It was instructed that it could award Nordock compensatory damages in the form of its own lost profits or a reasonable royalty, **or** it could recover Systems'' profits as a measure of potential recovery with respect the sale of each unit of an infringing product. (*Id*. at 39.) (Emphasis supplied). (A7).

The "Patent Damages Burden of Proof" instruction reads in part as follows:

> For design patents, Nordock can prove either actual damages, known as compensatory damages, **or** it may prove Systems' profits as its measure of potential recovery with respect to the sale of each unit of an infringing product. As compensatory damages, Nordock may prove either its own lost profits, or a reasonable royalty for the design patent. Nordock is not entitled to recover both compensatory damages and Systems' profits on the same sale. (Emphasis supplied). (A4538).

The §289 damages instruction reads in part as follows:

> In this case, **Nordock <u>seeks</u> Systems' profits** from sales of products alleged to infringe the '754 Design Patent. **If you find infringement, and do not find the '754 Design Patent is invalid, <u>you are to award</u>** Nordock Systems' total profit attributable to the infringement. (Emphasis supplied). (A4540).

## a.    District Court Misconstrued the Jury Instructions

The District Court erroneously interpreted the "Patent Damages Burden of Proof" instruction to mean that if there was a determination of compensatory damages under §284, then there need be no determination of damages under §289. The plain meaning of the "Patent Damages Burden of Proof" instruction is that Nordock can prove compensatory damages and/or Systems' total profits. The title of the instruction states its purpose. It is a "burden of proof" instruction. Nordock had the burden to prove compensatory and/or Systems' total profits damages. Nordock did not have to prove both.

Still, Nordock could not collect for both on the same sale. This is made plain by the sentence stating that Nordock is not entitled to recover both compensatory damages and Systems' profits on the same sale. Although the "Totaling the Damage Award" instruction is silent on this point (A4551), the concept is repeated in the "Design Patent Damages – Lost Profits" instruction, which reads in part as follows:

> As previously explained, Nordock may not recover both Systems'
> profits and compensatory damages on each sale of an infringing
> product. (A4542).

The §289 instruction clearly requires a determination of Systems' total profits. The other patent instructions clearly allow the jury to determine Systems' total profits and compensatory damages, but do not allow Nordock to collect twice for the same sale.

Owners of U.S. design patents are entitled to collect damages for the greater of the amount found under §284 and §289. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F. 3d 1277, 1290-91 (Fed. Cir. 2002); *Henry Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp.*, 270 F.2d 635, 642 (5th Cir. 1959)); *Bergstrom v. Sears, Roebuck and Co.*, 496 F. Supp. 476, 493-95 (D. Minn. 1980); *Bernhardt v. Collezione*, 436 F. Supp. 2d 739, 740-42 (M.D.N.C. 2006). Nordock is entitled to Systems' total profits for the infringing LHP and LHD levelers under §289 because these profits are greater than the amount found under §284 and are in excess of the minimum fixed by §289. In *Catalina*, this Court reversed the award of a reasonable royalty and allowed the plaintiff to recover the infringer's profits under §289 because it was more than the reasonable royalty under §284. *Catalina*, 295 F. 3d at 1291-92. In accordance with *Catalina*, Nordock is, as a matter of law, entitled to Systems' profits for the LHP and LHD levelers under §289 because this amount is greater than the reasonable royalty determined by the jury under §284.

*Id*. In accordance with *Catalina*, Nordock does not seek both Systems' total profits under §289 and a reasonable royalty under §284.

Further confirmation of the meaning of the jury instruction is found in the §289 damages instruction. The "Additional Remedy for Design Patent Infringement – Defendant's profit" instruction reads in part as follows:

> **If you find infringement, and do not find the 'D754 Patent is invalid, <u>you are to award</u> Nordock Systems' total profit** attributable to the infringement. (Emphasis supplied). (A4540).

This instruction does not state you [the jury] "may" award Nordock Systems total profit. This instruction also does not state the jury is "only" to award Nordock Systems' profits if you do not award any compensatory damages. Nor does this instruction state that the jury is only to award Nordock Systems' profits "if" it does not award Nordock the smaller reasonable royalty requested by Systems. In the present case, it was Systems, not Nordock, that requested a reasonable royalty award. (A6122).

The District Court's interpretation of the jury instruction is contrary to Congress' intent in enacting §289. The statute requires the disgorgement of the infringer's profits to the patent holder, such that the infringer retains no profit from his or her wrong. *Nike v. Wal-Mart*, at 1448. The District Court's interpretation of the jury instructions run particularly afoul to Congress' intent for §289 given the facts of this case. Here, a determination needs to be made whether Nordock should

be allowed to seek recovery of over $600,000 for Systems' profits on sales of over 1,457 infringing levelers as Congress intended, or whether its recovery will be limited to the $46,825 reasonable royalty Systems' asserted for those infringing levelers. As Congress' intent should be paramount. this case must be remanded for a new trial to determine §289 damages. If the District Court's interpretation is allowed to stand, it will eliminate Nordock's request for §289 damages and effectively negate the federal statute.

**b.    The Jury Instructions Conflict Under District Court Interpretation**

The District Court's interpretation of the Jury Instructions renders them in conflict. Assuming arguendo that the "Patent Damages Burden of Proof" instruction allows the jury to avoid a determination of Systems' total profits, then the §289 instruction's express statement that if you find infringement and validity, then "you are to award" Nordock Systems' total profits is in clear conflict with the other patent damages instruction.

When a jury is given conflicting jury instructions, a new trial is appropriate. *Javier v. City of Milwaukee*, 670 F.3d 823, 828 (7th Cir. 2012). In *Javier*, the Seventh Circuit found the damages instructions conflicting, and remanded the case back to the trial court to properly determine damages. *Id*., at 833. Similarly, in *Midwest Precision v. PTM Industries*, the Court was reviewing a damages award for breach of contract and tortuous interference. *Midwest Precision Servs., Inc. v.*

*PTM Industries Corp.*, 887 F.2d 1128, 1137 (1st Cir. 1989).The Court found the damages instructions conflicting, and remanded the case back to the trial court to properly determine damages. *Id.* at 1137. According to the Court, "[a] jury cannot be expected to apply mutually conflicting jury instructions, where each set makes sense independent of the other." *Id.*

**5.    Systems' Closing Arguments Misled the Jury**

Systems' closing statements continued to mislead the jury apportioning the lip and hinge plate from the dock leveler as a whole and on properly determining Systems total profits based on a "gross revenue" methodology. Systems' argued as follows:

> Second point. I think this one is very, very important here. Alternative damages**. Defendant's profits.** Defendant's profits. Now, unlike Dr. Smith, Mr. Bero asked the question profits on what? Not simply Systems' profits on anything. It's profits on what? The answer to that question is provided by the ornamental patent itself. **It's not an entire dock leveler. It's the ornamental design of a lip and hinge plate.** A lip and hinge plate. That's what you see here. A lip and hinge plate. Not entire dock leveler. And again, stating the obvious -- been through this many times -- there's no dock leveler shown in here. Mr. Bero made proper calculations**.** Said what were Systems' profits on the lip and hinge plate? Not on the entire dock leveler. He made an effort to make that calculation. Doesn't really matter because that comes up to be less than $15 per unit. **So whether you go on the $15 per unit reasonable royalty, or the dock leveler--the profits on the lip and hinge plate, which comes out to less than that, you still wind up with around 90-some Thousand Dollars**. We talked a little bit there's (indiscernible) earlier. Fine. You add 10, 15,000 bucks to that. Get up into the hundred thousand and change. **But Mr. Bero did the calculation properly**. (A6122-23).

Nordock pointed out the above discrepancy in its closing statement. (A6104). In *Nike*, this Court explained the rule that "the patentee could recover only the proportionate amounts that were proven to be attributable to the patented feature" no longer applies to design patents. *Nike v. Walmart* at 1441-42. This is because Congress provided a separate remedy for design patent infringement. *Id*. A House of Representatives Report explained that "[i]t is expedient that the infringer's entire profit on the article should be recoverable," for "it is not apportionable," and "it is the design that sells the article." H.R.Rep. No. 1966 at 2-3 (1886), *reprinted in* 18 Cong. Rec. 834 (1887). The Act of 1887, specific to design patents, removed the apportionment requirement when recovery of the infringer's profit was sought. *Nike v. Walmart* at 1441-42.

Systems' closing argument is also contrary to the §289 jury instruction requiring the total profit to be determined by "gross revenue." Systems consented to the Court's adoption of this gross revenue methodology. Yet, the $91,650 to which Mr. Bero testified on page 69 of his trial transcript is not based on gross revenue. (A5526). Thus, contrary to the jury instruction the District Court just adopted and Systems just accepted, Systems continued to assert its "cost savings" methodology.

**6.      District Court's Analysis Is Incongruous**

Finally, as best understood, the District Court's analysis appears incomplete. (A8). The decision does not find that Systems' profits were less than $91,650. Instead, the decision finds that Systems' "**lost profits**" were less than $91,650. While the amount of Nordock's lost profits are relevant in determining whether to award a reasonable royalty or lost profits under §284, Nordock's lost profits are irrelevant when determining the amount of Systems' profits on its infringing LHP/LHD levelers under §289, provided Nordock does not collect twice - once under §284 and once under §289 for the same infringing sale.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the forgoing reasons, this case should be remanded to the District Court for a new trial on damages to determine Systems' "total profits" for the sales of its over 1,450 infringing LHP/LHD levelers.

Dated this 10th day of November, 2014.

**SOKOL LAW OFFICE**
Counsel for Plaintiff, Nordock, Inc.

/s/Jeffrey S. Sokol
Jeffrey S. Sokol

**P.O. ADDRESS:**
828 North Broadway
Milwaukee, WI  53202
414.272.7200 (telephone)
414.272.7204 (facsimile)

# ADDENDUM

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NORDOCK, INC.,**

         Plaintiff/Counterclaim-Defendant,

   **v.**                     **Case No. 11-C-118**

**SYSTEMS, INC.,**

         Defendant/Counterclaimant.

## DECISION AND ORDER

      On March 27, 2013, a jury returned a special verdict finding that Defendant Systems, Inc. ("Systems") infringed on Plaintiff Nordock, Inc.'s ("Nordock") U.S. Design Patent Number D579,754 (the "'754 Patent") for a lip, lug, and hinge plate for dock levelers, with respect to Systems' hydraulic dock levelers (the "LHP" and "LHD" levelers). The jury awarded Nordock $46,825 as a reasonable royalty for the sale of the infringing LHP and LHD levelers. The jury also found that Systems' mechanical dock levelers (the "LMP" and "LMD" levelers) did not infringe on Nordock's patent. Both parties filed motions for amendment of the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (ECF Nos. 179 & 180) and motions for orders to show cause (ECF Nos. 195 & 199). The motions are addressed herein.

### Rule 59(e) Standard

      The Federal Court of Appeals applies regional circuit law in reviewing the denial of a motion for a new trial. *Silicon Graphics, Inc. v. ATI Techs., Inc.,* 607 F.3d

784, 798 (Fed. Cir. 2010). To prevail on a Rule 59(e) motion, "a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Blue v. Hartford Life & Accident Ins. Co.,* 698 F.3d 587, 598 (7th Cir. 2012) (internal quotation marks omitted). The Seventh Circuit has defined "manifest error" as "the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted).

A Rule 59(e) motion "is not a fresh opportunity to present evidence that could have been presented earlier." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.,* 733 F.3d 761, 770 (7th Cir. 2013). In other words, Rule 59(e) "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996).

Rule 59(e) permits a court to amend a judgment. However, it is not a proper vehicle through which to amend the answers provided by a jury on a verdict form because the verdict form is not part of the judgment entered by the Clerk of Court. *See Frazier v. Boyle,* 206 F.R.D. 480, 491-92 (E.D. Wis. 2002).

"Rule 59(a), in a bit of a circular way, allows new trials in cases where new trials have been traditionally allowed at law." *ABM Mktg., Inc. v. Zanasi Fratelli, S.R.L.,* 353 F.3d 541, 543 (7th Cir. 2003) (citing Fed. R. Civ. P. 59(a)). A "motion for a new trial should succeed only if the verdict is against the manifest weight of the

- 2 -

A2

evidence." *Id.* at 545 (quotation and citation omitted); *see also Aero Prods. Int'l, Inc. v. Intex Recreation Corp.,* 466 F.3d 1000, 1016-17 (Fed. Cir. 2006) ("In the Seventh Circuit, a trial court may grant a new trial 'where the verdict is against the clear weight of the evidence,' while the court's ruling on a motion for a new trial is reversed only where there is a clear abuse of discretion.") (citation omitted).

To satisfy this standard, the movant must demonstrate that no rational jury could have rendered a verdict against it. *See King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006). When making this evaluation, the Court views the evidence in a light most favorable to the non-movant and cannot re-weigh the evidence or make credibility determinations. *Id.* The Court will sustain the verdict where a reasonable basis exists to support the jury's verdict. *Id.* "A new trial may be granted only if the jury's verdict is against the manifest weight of the evidence," *id.*, or if the trial was "unfair to the moving party." *Miksis v. Howard,* 106 F.3d 754, 757 (7th Cir. 1997).

### Systems

Systems seeks amendment of the judgment contending that no evidence was presented at trial regarding its accused 6½-foot dock levelers and therefore the jury's finding of infringement as to those dock levelers is unsupported by any evidence and must be discounted.

Having considered the testimony and evidence submitted at trial, the Court denies Systems' motion because, viewed in the light most favorable to Nordock, the trial testimony and exhibits support the jury's finding that Systems' 6-, 6½-, and 7-foot

- 3 -

wide LHP/LHD levelers infringed Nordock's '754 Patent.

Nordock's '754 Patent pertains to the "front end" of a dock leveler.  (Trial Exs. 18, 35, 36 and 85.)  The jury was shown views of the front end of Systems' 6- and 7-foot wide LHP/LHD levelers and compared those views to the corresponding views and overall appearance of the '754 Patent.  (Trial Exs. 12-13, 31-37, 85, 1004 and 1009.)  The jury was also shown evidence (Trial. Ex. 12, Tab 1, Bates No. BERO 0532.) and heard testimony from Denis Gleason ("Gleason), the president and CEO of Nordock, that the 6-foot leveler and the middle 6-foot portion of the 6½- and 7-foot levelers are the same.  (Opp'n to Systems' Mot. Alter or Amend, Ex. A (Gleason Trial Tr.) 4:19 to 5:9.) (ECF No. 189-1.)  This is because the three different widths of levelers are made on the same welding fixture.  One set of fixtures is used for "the entire range of dock leveler sizes and capacities" for a particular model.  (Gleason Trial Tr. 3:14-16).  Thus, the middle 6-foot portion of a 7-foot wide leveler is identical to a 6-foot leveler.  (Gleason Trial Tr. 4:24-25 and Tr. 6:3-9).  Systems offered no evidence to the contrary, and the jury could reasonably infer from the use of the same welding fixtures that there is no significant difference between the 6-, 6½- and 7-foot wide levelers.

Systems' brochures showed 6- and 7-foot LHP/LHD levelers, but not its 6½-foot levelers.  (*See* Trial Exs. 12-14.)  In addition, Nordock and other manufacturers had brochures showing their 6- and 7-foot levelers (*See* Trial Exs. 1-11), and none of them showed a 6½-foot leveler.  The jury could reasonably infer from the omission of

- 4 -

the 6½-foot leveler from Nordock's, Systems' and third party brochures that the 6½-foot levelers are substantially similar to the 6- and 7-foot levelers.

Circumstantial evidence can support a finding of infringement. *Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1362 (Fed. Cir. 2006) (citing *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1272 (Fed. Cir. 1986) (holding that circumstantial evidence of extensive sales and dissemination of an instruction sheet can support a finding of direct infringement by the customer); *Alco Standard Corp. v. Tenn. Valley Auth.,* 808 F.2d 1490, 1502–03 (Fed. Cir. 1986) ("Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive.")). Thus, the Court concludes that a reasonable basis exists to support the jury's verdict of infringement with respect to the 6½-foot dock levelers. Systems' motion for Rule 59 relief is denied.

### Nordock

Nordock seeks amendment of the judgment pursuant to Rule 59(e) to include 35 U.S.C. § 289 damages resulting from Systems' unauthorized infringement of the '754 Patent or, in the alternative, a new trial on damages. Nordock contends that the jury verdict failed to compensate Nordock for its § 289 damages. Nordock also requests an award of pre- and post-judgment interest as sought by its Complaint.

*Damages*

With respect to damages in patent cases, regional circuit law applies to procedural issues and Federal Circuit law applies to substantive and procedural issues

- 5 -

A5

"pertaining to patent law." *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1318 (Fed. Cir. 2010) (citing *Aero Prods. Int'l,* 466 F.3d at 1016; *see also Fiskars, Inc. v. Hunt Mfg. Co.,* 279 F.3d 1378, 1381 (Fed. Cir. 2002) (noting that Federal Circuit law controls "the distinctive characteristics of patent damages law")).

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." *Catalina Lighting, Inc. v. Lamps Plus, Inc.,* 295 F.3d 1277, 1289 (Fed. Cir. 2002) (quoting 35 U.S.C. § 284 (1994)). A design patentee may recover damages under 35 U.S.C. § 284 or under 35 U.S.C. § 289, entitled "Additional remedy for infringement of design patent," which states:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.
>
> Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but he shall not twice recover the profit made from the infringement.

*Id.* at 1290.

A reasonable royalty is the statutory floor for damages in an infringement case. See 35 U.S.C. § 284. *Versata Software, Inc. v. SAP Am., Inc.,* 717 F.3d 1255, 1267

- 6 -

(Fed. Cir. 2013) cert. denied, 134 S. Ct. 1013 (2014).  A reasonable royalty may be calculated using one of two baselines: "an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant." *Id*. (citations omitted).  "The hypothetical negotiation seeks to determine the terms of the license agreement the parties would have reached had they negotiated at arm's length when infringement began." *Id.*

Nordock's motion is denied because the jury reasonably based its verdict on the evidence presented.  The jury received extensive damage instructions.  (Jury Instructions, 39-50.) (ECF No. 166.)  It was instructed that it could award Nordock compensatory damages in the form of its own lost profits or a reasonable royalty, or it could recover Systems' profits as a measure of potential recovery with respect the sale of each unit of an infringing product.  (*Id*. at 39.)  The jury was also informed that Nordock was entitled to recover no less than a reasonable royalty (*Id*. at 40) and instructed: "[i]n determining a reasonable royalty, you should assume that Nordock would have been willing to allow System [sic] to make; use; or sell *the patented invention* and that Systems would have been willing to pay Nordock to do so. (*Id*. at 49.) (Emphasis added.)

The jury heard testimony from Nordock's damages expert, Dr. Stan V. Smith ("Smith"), and Systems' damages expert, Richard Bero ("Bero").  Smith testified that Systems' profits on the sale of the infringed lug and pin design were $845,954.  (*See* also Trial Ex. 49.)  Bero testified that because Nordock had not established that it

- 7 -

A7

incurred lost profits, they were not applicable damages. (*See e.g.* Bero Trial Tr., 14-15) (ECF 178.) Bero also testified that royalty was the proper form of damages, that $15 per allegedly infringing dock lever was the appropriate amount of royalty, and that, based on the 6,000 accused units, total damages were about $91,650. (*Id*. at 69.) Alternatively, according to Bero, Systems' profit on the accused products was less than $15 per unit, so lost profits would have been less than $91,650. (*Id.*) Although the jury heard testimony regarding lost profits, it chose to award a reasonable royalty. The jury was free to discredit Smith's testimony regarding Nordock's lost profits or find that Bero's testimony was more convincing and persuasive.

After finding that half of the accused products (the LHP and LHD levelers) were infringed upon, the jury made an approximate calculation of half the amount of reasonable royalties to which Bero had testified, and awarded that sum. The jury's verdict was consistent with the instructions, and a reasonable basis exists in the testimony and evidence presented at trial to support the jury verdict.

*Interest*

Nordock also seeks an award of prejudgment and post-judgment interest. Nordock seeks an award of $69,288 in prejudgment interest for May 2009 through March 2013 on its claimed lost profits of $845,954. Nordock's calculations are based on the corporate composite bond rate with monthly compounding. Nordock has provided charts showing prejudgment interest amounts based on the corporate composite bond rate, the prime rate, and variations of the prime rate. (Ex B to

- 8 -

A8

Nordock's Mem. Amend. J.) (ECF No. 181-2.)  Systems did not respond to the interest

portion of Nordock's motion.

Under 35 U.S.C. § 284, prejudgment interest ensures adequate compensation

for the infringement.  *Oiness v. Walgreen Co.,* 88 F.3d 1025, 1033 (Fed. Cir. 1996)

(citing *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655-56 (1983);

*Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1389,  (Fed. Cir.

1983)).  Prejudgment interest has no punitive, but only compensatory, purposes.  *Id.*

Interest compensates the patent owner for the use of its money between the date of

injury and the date of judgment.  *Id*.  The question of the rate at which such an award

should be made is a matter left to the sound discretion of the trier of fact.

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.,* 862 F.2d 1564, 1580 (Fed. Cir.

1988).  The question of whether it is appropriate to compound prejudgment interest is

also a matter within a district court's discretion.  *Gyromat Corp. v. Champion Spark*

*Plug Co.,* 735 F.2d 549, 557 (Fed. Cir. 1984).

Nordock indicates that if it had to borrow money it would have been required

to pay at least the corporate composite bond rate.  Nordock also states that it typically

re-invests its profits into the company.   Nordock's requests are not outside the

parameters of rates or compounding that have been allowed by district courts.  Thus,

as a matter of discretion, the Court will allow Nordock to recover prejudgment

interest from May 2009 through March 2013 at the corporate composite bond rate

compounded monthly.  However, such interest will be calculated on the damage

- 9 -

A9

award amount of $46,825.

Nordock also requests post-judgment interest. As noted in *Transmatic, Inc. v. Gulton Indus., Inc.,* 180 F.3d 1343, 1347 (Fed. Cir. 1999), 28 U.S.C. § 1961, the post-judgment interest provision states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment." *Id.* (quoting 28 U.S.C. § 1961). An award of post-judgment interest is required by § 1961. *Transmatic* held that the determination of the correct dividing line for calculating pre- and postjudgment interest is governed by regional circuit law and § 1961 because it is not a question unique to patent law. *Id*. at 1347-48.

Nordock's motion requests amendment of the judgment to include an award of post-judgment interest. However, *Goodwall Const. Co. v. Beers Const. Co.,* 991 F.2d 751, 759 (Fed. Cir. 1993) and *Mathis v. Spears,* 857 F.2d 749, 760 (Fed. Cir. 1988), cases cited by Nordock in support of its request, do not address whether the award of post-judgment interest should be included in the judgment and whether regional or circuit law applies to the issue. The Court's research did not disclose any decisions of the Federal Circuit Court of Appeals addressing the issues. However, the composition of a judgment is not an issue unique to patent cases. *See Transmatic*, 180 F.3d at 1347-48. Therefore, this Court will apply regional circuit law.

The Court of Appeals for this circuit has observed, "[c]ivil litigants who win money judgments in district courts are entitled to post judgment interest" by statute.

- 10 -

A10

Consequently, a judgment awarding post-judgment interest is redundant.  *See Pace Commc'ns, Inc. v. Moonlight Design, Inc.,* 31 F.3d 587, 591 (7th Cir. 1994).

Based on the foregoing, while Nordock is entitled to and has been paid some post-judgment interest (*see* Systems Tender to Nordock of Satisfaction of J. [ECF No. 193]), in accord with the case law of this circuit the judgment will not be amended to provide for post-judgment interest.  Nordock's Rule 59(e) motion is granted as to prejudgment interest in the amount of $10,170.09 and its entitlement to post-judgment interest and denied in all other respects.

### Motions for an Order to Show Cause

Although each party requests an order to show cause regarding contempt, neither party addresses the law relating to contempt proceedings.  Regional circuit law governs contempt proceedings that do not raise issues unique to patent law."  *Energy Recovery, Inc. v. Hauge,* 745 F.3d 1353, 1356 (Fed. Cir. 2014) (citing *Schaefer Fan Co., Inc. v. J & D Mfg.,* 265 F.3d 1282, 1289 (Fed. Cir. 2001)).  The proponent of the civil contempt motion has the following burden:

> To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply.

*Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v.*

- 11 -

A11

*Nat'l Spiritual Assembly of Baha'is of U.S., Inc.,* 628 F.3d 837, 847 (7th Cir. 2010) (quoting *S.E.C. v. Hyatt,* 621 F.3d 687, 692 (7th Cir. 2010)).[1]  Additionally, with respect to non-parties, the movant has the burden of showing that the non-parties were bound by the injunction.  *Id.*

*Systems' Request*

Systems seeks an Order directing Nordock to show cause why it should not be held in contempt for: (1) misrepresenting the terms of the Court's March 27, 2013,[2] injunction to Systems' distributors, (2) harassing Systems' distributors by falsely accusing them of being in violation of that injunction and demanding information from them; and (3) interfering with Systems' business relationships with its distributors. Systems provides copies of six letters sent by Nordock.  (Pilgrim Decl., Exs. A-F.) (ECF Nos. 198, 198-1 to 198-6.)  The company names of the six distributors to whom Nordock sent letters include the name "Fairborn."

The six letters are similar in content.  Each states that the Court has permanently enjoined Systems from selling its infringing LHP and LHD dock levelers, that a copy of the Court's order and the patent are enclosed, and informs the distributor that the order is binding on them.  The letter also asserts that the distributor continues

---

[1]*S.E.C. v. First Choice Management Services, Inc.*, 678 F.3d 538, 544-45 (7th Cir. 2012), questioned the use of the clear and convincing standard in civil contempt, but declined to try to solve that "puzzle."  Absent further binding decisions on the issue, the clear and convincing standard remains applicable.

[2] The Court has corrected System's typographical error.  2013 is the year the injunction issued.

- 12 -

A12

to offer the infringing LHP leveler, encloses copies of "Fairborn's website pages" listing the infringing LHP leveler, demands that the distributor confirm in writing that the information has been or will be promptly removed from the website. Lastly, the letter requires the distributor to provide information regarding any post-March 27, 2013 LHP leveler sales, shipments, and customer requests, regardless of whether or not sales were made.

The injunction issued in this case states, "Systems, Inc., is **PERMANENTLY ENJOINED** from making, using, selling or importing its LHP and LHD Series dock levelers." (J.) (ECF No. 171.) The injunction does not require that Systems give notice of the injunction. The injunction does not bar any conduct by Nordock.

Nordock could have contacted Systems with its concerns about the distributors or sought modification of the permanent injunction to require that Systems give notice of the injunction to its distributors. While Nordock had options other than its direct contact with Systems' distributors, it is not in violation of any command of the injunction. Furthermore, Nordock's inclusion of the judgment provided the distributors with the exact provisions of the injunction.

Systems has not shown that the alleged contemnor, Nordock, violated an unambiguous command of the injunction. *See Nat'l Spiritual Assembly of Baha'is,* 628 F.3d at 847. Thus an order to show cause against Nordock for misrepresenting the injunction and wrongfully contacting Systems' distributors is not warranted. Based on the foregoing, Systems' request for an order to show cause is denied.

- 13 -

A13

*Nordock's Counter-Request*

Nordock's counter-motion asserts that the Court should issue an order to show cause why Mike Pilgrim ("Pilgrim"), an officer and owner of Systems, Fairborn USA and Fairborn Equipment, should not be held in contempt of the Court's permanent injunction.  It asserts that Systems and Pilgrim used their longstanding relationship with Fairborn USA and Fairborn Equipment to continue "marketing" the infringing LHP levelers by Exhibit H to its motion, a printout of material posted on the website of "Fairborn Equipment Company Inc." that shows five categories of information regarding the LHP levelers:  literature; spec sheets; pit details; architectural details; and the owner's manual.

Pilgrim is responsible for marketing dock levelers manufactured by Systems.  Pilgrim has a longstanding relationship with the two Fairborn companies and is an officer of both companies.  With respect to Exhibit H, Gleason avers that the first four categories listed would be used only for marketing the infringing LHP dock levelers and not for anything else.  (Gleason Decl. dated June 20, 2014, ¶ 5.) (ECF No. 205-1.)

Because Nordock seeks an order to show cause against three non-parties, the first issue is whether the injunction is binding on Pilgrim Fairborn USA and Fairborn Equipment.  Rule 65(d) of the Federal Rules of Civil Procedure, which governs injunctions and temporary restraining orders, codifies both the general principle that an injunction binds only the parties, and the exceptions to that principle.  *Nat'l Spiritual Assembly of Baha'is,* 628 F.3d at 847.  The Rule provides: "(2) Persons Bound. The

- 14 -

A14

order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."  Fed. R. Civ. P. 65(d)(2).

By its terms Rule 65(d) makes injunctions binding on the parties to the underlying action and their "officers, agents, servants, employees, and attorneys," even if those "officers, agents," etc. are not named as parties to the litigation, provided that they have actual notice of the injunction by personal service or otherwise.  Fed. R. Civ. P. 65(d)(2)(B).  This is based on the idea that "[a]n order issued to a corporation is identical to an order issued to its officers, for incorporeal abstractions act through agents."  *Nat'l Spiritual Assembly of Baha'is,* 628 F.3d at 848 (citation omitted).  Thus Pilgrim, an officer of Systems who had actual notice of the injunction, is bound by the injunction.  Pilgrim was also an officer of Fairborn USA and Fairborn Equipment, and he knew or should have known about exhibit H.  (*See* Gleason Decl. ¶ 6.)  Thus, Fairborn USA and Fairborn Equipment are arguably bound by the injunction.  *See Nat'l Spiritual Assembly of Baha'is,* 628 F.3d at 848.

However, the injunction prohibits Systems from making, using, selling or importing its LHP and LHD Series dock levelers.  Neither Fairborn USA nor Fairborn Equipment make, use, sell, or import Systems' LHP and LHD Series dock levelers.  The uncontroverted declarations of Pilgrim and Edward McGuire ("McGuire"), Systems' president, also establish that upon hearing the jury's verdict, the two men

- 15 -

A15

immediately contacted Systems' manufacturing personnel and instructed them to substitute a piano-style hinge for the lug-hinge structure in all LHP and LHD levelers to be manufactured and/or shipped from that date forward. (ECF Nos. 197 & 198.) McGuire and Pilgrim also contacted buyers who had placed orders for LHP or LHD levelers and informed them that the levelers they had ordered would be supplied, at no extra cost, with piano-style hinges rather than lug-style hinges. Furthermore, at no time between March 26, 2013, and the May 2, 2014, date of the declarations has Systems made, sold, offered for sale or shipped an LHP or LHD leveler having a lug-style hinge. Since March 26, 2013, every LHP and LHD leveler made, sold, offered for sale or shipped has included a piano-style hinge rather than a lug-style hinge. Furthermore, Pilgrim has not made, used, sold, or imported Systems' LHP and LHD Series dock levelers.

In its own filings Nordock stated that the first four categories of documents shown in Exhibit H could only be used for marketing, but Nordock has not shown that the injunction unambiguously prohibits marketing. As such, Nordock has not shown that any of the alleged contemnors, Pilgrim, Fairborn USA, and Fairborn Equipment, violated an unambiguous command of the injunction. *See id* at 847. Therefore, Nordock's motion for an order to show cause why Pilgrim, Fairborn USA, and/or Fairborn Equipment should not be held in contempt is denied. Additionally, the Court notes that according to a January 23, 2014, letter from outside counsel to Fairborn USA and Fairborn Equipment, the "infringing material" was ordered removed from

- 16 -

A16

Fairborn Equipment's website. (ECF No. 199-10.)

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

Systems' Rule 59(e) motion (ECF No. 179) is **DENIED**;

Nordock's Rule 59(e) motion (ECF No. 180) is **GRANTED** with respect to pre-judgment interest in the amount of $10,170.09 and its entitlement to post-judgment interest under 28 U.S.C. § 1961, and **DENIED** in all other respects;

The Clerk of Court is **DIRECTED TO ENTER** an amended judgment stating that Nordock shall recover $10,170.09 from Systems in prejudgment interest;

Systems' motion for an order to show cause (ECF No. 195) is **DENIED**; and

Nordock's motion for an order to show cause (ECF No. 199) is **DENIED.**

Dated at Milwaukee, Wisconsin, this 31st day of July, 2014.

BY THE COURT:

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 17 -

A17

AO 450 (Rev. 5/85) Judgment in a Civil Case ⊗

# United States District Court
EASTERN DISTRICT OF WISCONSIN

**NORDOCK, INC.,**

               Plaintiff-Counterclaim Defendant,

                                       **AMENDED**
                              **JUDGMENT IN A CIVIL CASE**

               v.                         CASE NUMBER: **11-C-118**

**SYSTEMS, INC.,**

               Defendant-Counterclaimant.

☒    **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒    **Decision by Court.**  This action came on for consideration and a decision has been rendered.

    **IT IS ORDERED AND ADJUDGED**

Nordock, Inc.'s motion for partial summary judgment as to the validity and enforceability of its design patent, United States Patent No. D579,754, is **GRANTED** as to the following defenses:  anticipation; obviousness; prosecution estoppel; laches; equitable estoppel; and unclean hands.

Systems, Inc.'s motion for summary judgment dismissing all of Nordock, Inc.'s claims is **DENIED.**

Nordock, Inc.'s claims for unfair competition and unfair trade practices are withdrawn and therefore **DISMISSED WITH PREJUDICE**.

**Judgment is entered on the jury's verdict in favor of Nordock, Inc. and against Systems, Inc. in the amount of $46,825.00 for reasonable royalties** for Systems' non-willful infringement of Nordock, Inc.'s  D579,754 patent with regard to Systems' LHP and LHD Series dock levelers, **plus costs.**

**Nordock, Inc. shall recover from Systems, Inc. $10,170.09 in prejudgment interest.**

A18

Systems, Inc., is **PERMANENTLY ENJOINED** from making, using, selling or importing its LHP and LHD Series dock levelers.

The jury determined that Systems, Inc. did not prove that Nordock, Inc.'s D579,754 patent is invalid. Therefore, Systems, Inc.'s, declaratory judgment counterclaim is **DISMISSED WITH PREJUDICE.**

This action is hereby **DISMISSED**.

| | |
|---|---|
|     **July 31, 2014** |   **JON W. SANFILIPPO** |
| Date | Clerk |
| |  s/ Linda M. Zik |
| | (By) Deputy Clerk |

*APPROVED:*

*Hon. Rudolph T. Randa*
*U.S. District Judge*

A19

**United States Court of Appeals**
**for the Federal Circuit**
*Nordock, Inc. v. Systems Inc.*, 14-1762, -1795

**CERTIFICATE OF SERVICE**

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by NELSON KINDER + MOSSEAU PC SOKOL LAW OFFICE, Attorneys for Appellant to print this document.  I am an employee of Counsel Press.

On **November 10, 2014** counsel for Appellant has authorized me to electronically file the foregoing **Brief for Plaintiff-Appellant** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Philip P. Mann                          John Whitaker
(principal counsel)                     Whitaker Law Group
Mann Law Group                          1218 Third Avenue, Suite 1809
1218 3rd Avenue, Suite 1809             Seattle, WA 98101
Seattle, WA 98101                       206-436-0900
206-436-0900                            john@wlawgrp.com
phil@mannlawgroup.com

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

November 10, 2014                       /s/ Elissa Matias
                                        Counsel Press

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

   X   The brief contains <u>12,496</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   X   The brief has been prepared in a proportionally spaced typeface using <u>MS Word 2013</u> in a <u>14</u> point <u>Times New Roman</u> font or

_____ The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.


<u>November 10, 2014</u>          <u>/s/Jeffrey S. Sokol</u>_____
Date                               Jeffrey S. Sokol
                                     *Counsel for Appellant, Nordock, Inc.*